IN THE CIRCUIT COURT OF THE NINTH
JUDICIAL CIRCUIT IN AND FOR ORANGE
COUNTY, FLORIDA

CHRISTIAN CAMPBELL,
LAURIE ANNE CAMPBELL, and
ISEABAIL CAMPBELL (a minor child)

      PLAINTIFFS,

vs.                                     CASE NO.:

ORLANDO POLICE DEPARTMENT,
ORLANDO ROLON (in his capacity as former Orlando Police Chief),
THE CITY OF ORLANDO,
JOHN W. MINA (in his capacity as Sheriff of Orange County),
DEPARTMENT OF CHILDREN AND FAMILIES,
DETECTIVE JENNIFER WING (an individual in her capacity as a OPD Detective),
SERGEANT STEVEN FARRIS (an individual in his capacity as a OPD Sergeant),
BAYLOR ANDERSON (an individual in her capacity as an DCF Investigator),
SKYLER SAUNDERS (an individual in his capacity as a DCF employee),
JENNIFER THOMAS (an individual in her capacity as a DCF employee),
AMANDA DION (an individual in her capacity as a DCF employee),
KIRSTEN TEANY (an individual in her capacity as a DCF employee), and
JANE AND JOHN DOES 1-50 (an individual in their capacities as a DCF employees and OPD
Officers)

      DEFENDANTS.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

> **TRIGGER WARNING:**
> **THIS DOCUMENT CONTAINS HIGHLY GRAPHIC INFORMATION OF A SEXUAL
> NATURE INCLUDING ALLEGATIONS OF CHILD SEXUAL ASSAULT, MOLESTATION
> AND CHILD PORNOGRAPHY.**

COMES NOW, Plaintiffs, CHRISTIAN CAMPBELL, LAURIE ANNE CAMPBELL and

(Minor Child) **ISEABAIL CAMPBELL** (hereinafter referred to as "Plaintiffs"), by and through

their undersigned counsel and hereby sues Defendants, ORLANDO POLICE DEPARTMENT

(hereinafter referred to as "Defendant OPD"), ORLANDO ROLON, in his official capacity as

Orlando Police Chief (hereinafter referred to as "Defendant Chief"); THE CITY OF ORLANDO,

a municipal corporation (hereinafter referred to as "Defendant Orlando"); JOHN W. MINA, in

his official capacity as Sheriff of the County of Orange (hereinafter referred to as "Defendant

Sheriff"); THE DEPARTMENT OF CHILDREN AND FAMILIES, a legal subdivision of the

State of Florida (hereinafter referred to as "Defendant DCF"), DETECTIVE JENNIFER WING,

in her individual capacity (hereinafter referred to as "Defendant Wing"); SERGEANT STEVEN

FARRIS, in his individual capacity (hereinafter referred to as "Defendant Farris"); BAYLOR

ANDERSON, in her individual capacity (hereinafter referred to as "Defendant ANDERSON");

SKYLER SAUNDERS, in his individual capacity (hereinafter referred to as "Defendant

Saunders"); JENNIFER THOMAS, in her individual capacity (hereinafter referred to as

"Defendant Thomas"); AMANDA DION, in her individual capacity (hereinafter referred to as

"Defendant Dion"); KIRSTEN TEANY, in her individual capacity (hereinafter referred to as

"Defendant Teany"); and JOHN AND JANE DOES 1-50, in their individual capacities

(hereinafter referred to as "Defendant Does"); (All Defendants will hereinafter collectively be

referred to as "Defendants"), and herein requests judgment against all Defendants and states as

follows:

## PARTIES

1. Plaintiffs were residents of Orlando, Florida and at all material times herein were

    residents of Orange County, Florida.

 

2

2. Defendant OPD is the municipal law enforcement agency responsible for law enforcement within the city limits of Orlando and is responsible for the policies and conduct of its agency and officers.



3. Defendant Chief is being sued in his official capacity as Chief of Police for Orlando, Florida and was responsible for the policies and conduct of its officers. Orlando Police Department is the law enforcement agency for the City of Orlando (hereinafter referred to as "OPD"). A suit against Defendant Chief in his official capacity is a suit against the OPD.



4. In 1998, the OPD formed the Internet Crimes Against Children Task Force (hereinafter referred to as "ICAC") which works with the National Center for Missing and Exploited Children (hereinafter referred to as "NCMEC") and the FBI along with supervising agents from Defendants Sheriff and Chief. The ICAC is not a separate legal entity and is not distinct from the entities of which it is comprised.

5. Defendants OPD, Chief, Sheriff, Wing, Farris and Does work concurrent with and in connection with the task force.

6. Defendant Orlando is a municipal corporation situated in Orange County, Florida founded in 1875 and incorporated and operating under a charter since 1885. The city is responsible for services for law enforcement.

7. Defendant Sheriff is being sued in his official capacity as Sheriff of Orange County, Florida and is responsible for the policies and conduct of its officers. Orange County Sheriff's Department is the law enforcement agency for Orange County. A suit against Defendant Sheriff in his official capacity is a suit against the OCSD.



8. Defendant DCF is a state agency of Florida and an organization under the government of the State of Florida, created, operating and existing by virtue of the Constitution and laws of the State of Florida, and is empowered to act by the State though it's governing body, officials, employees and official bodies. Shevaun Harris, is currently Secretary of DCF, and her predecessor, Chad Poppell, maintained and operated the agency with agents, servants and employees acting on behalf of the Secretary of the DCF, State of Florida, or her predecessor, Chad Poppell, who at all times material hereto were acting within the course and scope of their employment or acting outside the course and scope of their employment with deliberate indifference to the rights and safety of others.

 

9. Defendant Wing is a detective who is employed by Defendant Chief through Defendant OPD, works with the ICAC task force, is over the age of 18 and on information and belief is a resident in or conducts business in Orange County, Florida and is being sued in her individual capacity.

 

10. Defendant Farris is a sergeant who is employed by Defendant Chief through Defendant OPD, works with the ICAC task force, is over the age of 18 and on information and belief is a resident in or conducts business in Orange County, Florida and is being sued in his individual capacity.[1]



11. Defendant Anderson is a child protective investigator who is employed by Defendant DCF, is over the age of 18 and on information and belief is a resident in or conducts business in Orange County, Florida and is being sued in her individual capacity.

---

[1] Picture of Sgt. Farris was obtained from a news article where he shot a 34-year-old woman in 2016, prior to his joining of the ICAC SVU. https://www.wesh.com/article/orlando-police-release-video-of-officers-shooting-carjacking-suspect/4449131



12. Defendant Saunders is employed by Defendant DCF, is over the age of 18 and on information and belief is a resident in or conducts business in Orange County, Florida and is being sued in his individual capacity.



13. Defendant Thomas is employed by Defendant DCF, is over the age of 18 and on information and belief is a resident in or conducts business in Orange County, Florida and is being sued in her individual capacity.



14. Defendant Dion is employed by Defendant DCF, is over the age of 18 and on information and belief is a resident in or conducts business in Orange County, Florida and is being sued in her individual capacity.



15. Defendant Teany is General Counsel for Defendant DCF, is employed by Defendant DCF, is over the age of 18 and on information and belief is a resident in or conducts business in Orange County, Florida and is being sued in her individual capacity.



16. Defendants Jane and John Does are believed to be employed by Defendants Chief, Sheriff and DCF are over the age of 18 and on information and belief are residents in or conducts business in Orange County, Florida and are being sued in their individual capacity.

   

  





















## VENUE AND JURISDICTION

17. This action is proper in the Circuit Court in and for Orange County, Florida as all material facts of this cause of action occurred in Orange County, Florida and this where the cause of action accrued.

18. This is an action for damages in excess of Fifteen Thousand and 00/100 Dollars ($ 15,000.00), exclusive of attorneys' fees and costs.

19. Pursuant to §768.28(6)(a) Florida Statutes, Plaintiffs have notified Defendants Chief, Sheriff, Orlando, OPD and DCF of their claims six months or more prior to the filing of

this action and said claims were not resolved. Plaintiffs have fully complied with §768.28(6)(a), including providing notice and service.[2]

20. Concurrent jurisdiction is conferred in the Circuit Court in and for Orange County, by 28 U.S.C. §1331, to decide cases presenting a question arising under the Constitution and the laws of the United States, and by 28 U.S.C. §1343(a)(3) and (4), to redress the deprivation, under color of law, of any right, privilege or immunity secured by the United States Constitution.

21. Jurisdiction is conferred in the Circuit Court in and for Orange County, Florida, by Article V, Section 5(b) of the Florida Constitution to hear all state law claims including claims under the Constitution of the State of Florida.

22. This is an action brought pursuant to 42 U.S.C. §1983, which provides:

> "Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory . . . subjects or causes to be subjected any citizen of the United States or others person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or others proper proceeding for redress."

23. All conditions precedent to the filing of this action have occurred, accrued, or have been waived as a matter of law.

### FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

24. On March 24, 2020, the National Center for Missing and Exploited Children (NCMEC) received a cybertip regarding solicitation and possible distribution of child pornography.[3]

25. MAPA Breelle Hunter of the FBI was assigned the case for further investigation.[4]

---

[2] A true and correct copy of the Notices and their Service Cards are attached hereto as composite Exhibit "A".
[3] Cybertip #66460350.
[4] FBI Case number 305A-HQ-3852150-SBP.

26. The cybertip was initiated by a member of the public and included a single chat conversation between the complainant and suspects from a Fetlife.com account.

27. The singular chat were from an account named "Kristina Slut" and included conversations related to alleged sexual acts with a child.[5]

28. What is obvious from the chat submitted was that no images/videos were ever disclosed or disseminated nor was there ever any images/videos transmitted that depicted the acts described in the single chat.

29. What is more obvious from the single chat is that it seems to be an attempt to solicit the other individual into sending videos of child pornography before the suspect was willing to send over the video described in the chat.

30. What is even more abundantly obvious from the single chat is that the alleged victim was a verbal child and not a nonverbal child. This is indicated in the chat affixed to the fraudulent search warrant stating, "we do it all the time she loves it" and "she asks for it." Plaintiff, a minor child, was a nonverbal 18-month-old and it would have been impossible for the Plaintiffs' minor child to communicate any such information indicated in the single chat.[6]

31. To reiterate, there was NEVER any images/videos sent by either the alleged suspect or complainant that depicted child pornography. While the nature of the conversation in itself was disturbing it was not illegal and without any actual video/image accompanying the chat there was absolutely no crime committed and no grounds for which a legal search or search warrant could be issued.

---

[5] Composite Exhibit "B"
[6] Composite Exhibit "B"

32. What is additionally obvious in the singular chat is a "targeted ads" which typically appear within the location of one or both the parties in the chat. Those "targeted ads" are for Saint Joseph's College in Indianapolis, IN.[7]

33. According to the sworn affidavit by Defendant Wing, she stated that she viewed the Fetlife account where the chat originated and the account had an image of a white adult female, completely nude and reported age of 24.[8]

34. None of the Plaintiffs are or were aged 24 at the time of the alleged chat.

35. According to the sworn affidavit by Defendant Wing, MAPA Hunter obtained a subpoena for the account associated with the chat named "HumanPocketPussy" on April 15, 2020.[9]

36. On June 23, 2020, subpoena #598618 was returned as having an email address of christianccampbell@gmail.com.

37. MAPA Hunter then obtained a subpoena for that email address on June 24, 2020.[10]

38. On June 29, 2020, Google fulfilled the subpoena request which included several IP addresses from the IP activity log.

39. It is important to note that the alleged IP activity, alleged to be from the Plaintiffs, was only active from December 10, 2019 to June 23, 2020 despite Plaintiffs' having internet and IP activity long before and after the alleged usage dates in Defendant Wing's sworn affidavit.[11]

40. Plaintiffs' IP address was intentionally selected because of the similar names to Plaintiffs and the email address obtained by subpoena #598618.

---

[7] Defendant OPD Case No. 2020-221714, Exhibit "B" pages 11-13.
[8] Defendant OPD Case No. 2020-221714, Exhibit "B" page 14.
[9] Defendant OPD Case No. 2020-221714, Exhibit "B" page 14.
[10] FBI Subpoena # 614348, Exhibit "B" page 14.
[11] Defendant OPD Case No. 2020-221714, Exhibit "B" pages 14.

41. Upon further subpoena's it was allegedly determined that the single chat originated at Plaintiffs' home, in the jurisdiction of the City of Orlando and the case was "re-entered" into the Internet Crimes Against Children Data System (IDS) and "reassigned" to Defendant OPD.[12]

42. According to the sworn affidavit of Defendant Wing, she attests she was assigned the case for further investigation on July 16, 2019. Which would have been virtually impossible considering July 16, 2019 was PRIOR to the cybertip being filed on March 24, 2020 with the NCMEC.[13]

43. In August 2020, an exact date which is not specified in Defendant Wing's affidavit, Defendants OPD and Wing allegedly verified the address of Plaintiffs via the Orlando Utilities Commission (OUC). Plaintiffs assume the exact date of that verification predates the August 4th sworn affidavit by Defendant Wing, being on or between August 1-4, 2020.

44. Pursuant to the sworn affidavit of Defendant Wing, she attests that she believed the IP addresses, arbitrarily chosen from the list of IP addresses from the FBI, belonged to the Plaintiffs.

45. Defendant OPD then began surveillance of Plaintiffs' home and surveillance commenced and continued prior to the search warrant being obtained and executed.[14]

46. On August 4, 2020, Defendants Wing and Farris sought a search warrant for various items in Plaintiffs' home.

---

[12] It is unclear from the sworn affidavit why the words "reentered" and "reassigned" are used if the tip and investigation originated with the FBI.
[13] Defendant OPD Case No. 2020-221714, Exhibit "B" pages 7 and 15.
[14] Defendant OPD Case No. 2020-221714, Exhibit "B" page 15.

47. On August 4, 2020, Judge Wayne Shoemaker signed the search warrant based on the
information and representations presented by Defendants Wing and Farris.



48. In Defendant Wing's affidavit, relied upon by Judge Shoemaker, Defendant Wing
intentionally makes several misstatements of fact in order to obtain the search warrant.

49. The first misstatement of fact in Defendant Wing's affidavit is that she knew "from
training and experience, that there is a database list, known to the enforcement to
correspond to specific images of child pornography." That the images "had previously
been identified as either suspected or known images of child pornography and were
cataloged by the NCMEC and/or the Wyoming Internet Crimes against Children's task
force." There were NO images that existed or were ever disseminated in the chat
therefore it would be impossible for Defendant Wing to make the assertion that such
images/videos were within the database list, known to law enforcement, or had been
previously identified as suspected or known images of child pornography by either law
enforcement, NCMEC or the Wyoming Internet Crimes task force. Upon information and
belief this is boilerplate language used by Defendant OPD's officers to obtain baseless
warrants for these types of crimes.

50. The next misstatement of fact in Defendant Wing's affidavit is that the images, which did
not exist nor ever existed, were "suspected or known, are either one in which the child
victim and the image is actually known to law enforcement due to a reported case of
abuse, or the image has been viewed by other members of law enforcement who are able
to confirm by training and experience that the content of the image and video is

16

pornographic, that the child depicted is a real child (not generated by computer
technology, but either a movie or an image that predates the capacity for photo
manipulation) and that the child and the image is clearly and obviously under the age of
18. Upon information and belief this is boilerplate language used by Defendant OPD's
officers to obtain baseless warrants for these types of crimes.

51. Since there were ZERO images/videos contained in the chat received by Defendants OPD
and Wing it was impossible for Defendant Wing to have asserted, in a sworn affidavit
nonetheless, that there was images/videos of a real child, that the content of the image or
video was pornographic and that the child in the image was obviously under 18.

52. Defendant Wing made other misstatements of fact regarding her training and experience
regarding IP addresses, the specific date, time, name, physical address of the IP address,
P2P networks, MD4 digital signatures, SHA algorithm, eDonkey networks and computer
software. Upon information and belief this is boilerplate language used by Defendant
OPD's officers to obtain baseless warrants for these types of crimes.

53. Defendant Wing made further misstatements of fact including that the chat originating
from "Kristina Slut" on Fetlife was from the husband-and-wife Plaintiffs named herein.

54. Defendant Wing made further misstatements of fact including that she knew that the IP
address and files belonged to Plaintiffs because "two files are not identical with a
precision that greatly exceeds 99.999 percent certainty." Somehow Plaintiffs found
themselves in that .001 percent range in this instance. Upon information and belief this is
boilerplate language used by Defendant OPD's officers to obtain baseless warrants for
these types of crimes.

55. Defendant Wing's intentional misstatement regarding the IP address is further known
    because the alleged single chat, the subject of her affidavit, commenced on the app KIK
    which is known to law enforcement as having end to end encryption and does not require
    email verification for use.[15]

56. Defendant Wing also attested that she had investigated over 220 sexually related or
    internet-based crimes between her appointment to the ICAC taskforce between January
    2020 and August 2020.

57. Defendant Wing made further misstatements of facts in her affidavit when she stated that
    she was involved "in search warrants of this type and has consulted with many
    experienced investigators who have used this method of investigation. Nearly every case
    was verified through the following means: 1) Evidence of child pornography was found
    on the computer. 2) If no images of child pornography were found on the computer,
    interviews of person using those computers verified that child pornography had been
    present at one time, but, have been deleted or the computer with the child pornography
    have been removed from the premises. In rare cases, it was determined that the suspect
    accessed the customers unsecure wireless router and thereby downloaded child
    pornography using his IP address. In such cases, the unsecured wireless router was an
    instrumentality of the crime. Subject to seizure and that it aided in the receipt and
    distribution of child pornography and potentially contain data logs and 3) Images were
    moved from a computer and stored on other media." Upon information and belief this is
    boilerplate language used by Defendant OPD's officers to obtain baseless warrants for
    these types of crimes.

---

[15] Exhibit "C" - KIK for law enforcement guide

58. In fact, there was never any evidence of child pornography found on Plaintiffs' computer, wireless router, or found to been stored on other media or had previously been deleted or removed from Plaintiffs' devices or premises.

59. Defendant Wing inflated her affidavit with boilerplate terminology, which Plaintiffs believe is common practice within Defendant OPD, that did not speak to her experience, training or the nature of the underlying issue which the search warrant was sought and used this boilerplate terminology in an, successful, attempt to entice the Judge into signing the search warrant.

60. Upon information and belief Defendant Wing, aided by Defendant Farris, made these intentionally false representations to the Ninth Judicial Circuit in an effort to increase her profile and further her career within ICAC SVU.

61. What is more interesting is it seems the tactic of filing false and fraudulent sworn affidavits DID advance her career has worked as Defendant Wing's star has risen within the OPD as she has been featured in several interviews regarding internet-based child pornography crimes.[16]

62. Plaintiffs believe Defendants Wing, Farris, OPD, Chief and Does worked together to misrepresent facts and use boilerplate terminology in order to obtain a search warrants on innocent individuals, like Plaintiffs, and that this is common practice of the Orlando Police Department.

63. On August 4, 2020, Judge Shoemaker of the Ninth Judicial Circuit Court signed Defendant Wing's fraudulent search warrant.

---

[16] https://x.com/OrlandoPolice/status/1519397954129387521 and https://www.youtube.com/watch?v=UEFf848gtf4

64. On August 6, 2020, officers from Defendants OPD and Sheriff executed the warrant on

Plaintiffs residence.[17]

 

65. Prior to the execution of the illegal search warrant on Plaintiffs' home, Plaintiffs were

undergoing serious renovations to upgrade their home from a 2-bedroom one bathroom

home to a four-bedroom two-bathroom home to accommodate for their growing family.

 

---

[17] Composite Exhibit "B"

 

66. A SWAT team with rifles and guns drawn executed the warrant on Plaintiffs' home on the

morning of August 6, 2020, at approximately 9:37 am in a gross, extreme, negligent and

excessive use of force.

 

67. The SWAT team pointed their loaded firearms at the heads of both Plaintiffs Christian

and minor child when they illegally entered Plaintiffs' home.

 

  

68. The minor child Plaintiff's bedroom was facing the front porch where Plaintiff Christian

   saw them as they demanded he come out as their assault rifles and numerous firearms

   were pointed at his and his minor child's head.

69. When SWAT entered into the home the minor child Plaintiff had just awaken from

   overnight sleeping, was still in her overnight diaper and was being lifted from her crib by

   her father. Defendants OPD and Does refused to let Plaintiffs or any other person change

   the minor child out of her overnight diaper and forced the minor child to remain in her

   soiled diaper for several hours while Plaintiffs were illegally detained and Defendants

   illegally searched and seized Plaintiffs' person and property.

70. In addition to personally being terrified, Plaintiffs pet dogs were also terrified by the

   armed SWAT team entering the home and the pets defecated on the floor of the home

   from being so frightened.

71. SWAT then surrounded Plaintiffs' home and entered into the back of the home, despite

   Plaintiffs already being detained in the front yard of the home.








72. Once SWAT entered the home Defendants OPD, Wing, Sheriff, Chief and Does
disconnected Plaintiffs internal cameras by disconnecting Plaintiffs internet connection.
Upon information and belief Defendants believed they had also disconnected the exterior
cameras as well but were unsuccessful because the exterior cameras were hard wired and
thusly continued filming. Had those exterior cameras not been hardwired Plaintiffs would
have had no proof of the illegal and excessive force used upon them when their persons
and property was illegally searched and seized.

73. Approximately a few blocks away from Plaintiffs' residence Defendants OPD, Chief, Sheriff and Does stopped Plaintiff Laurie, in unmarked vehicles claiming she had run a stop sign. Defendants forced her out of her vehicle by gunpoint, seized her phone, demanded she unlock her cell phone over her objection telling her she had no other recourse but to comply. Further, Defendants OPD, Chief, Sheriff and Does then placed Plaintiff Laurie in the back of their unmarked police vehicle, ensuring her detainment and then seized her vehicle. Additionally, Defendants OPD, Chief, Sheriff and Does removed a legal firearm in Plaintiff's vehicle which was not listed in the fraudulent search warrant, nor was it accounted for in the seizure manifest and was never returned to Plaintiff.

74. Plaintiff Laurie was not at the home during the execution of the warrant as she was en-route to the vet as her dog required emergency surgery. Due to the events of that day the pet did not receive emergency treatment and subsequently died shortly thereafter.



75. Defendants OPD, Sheriff and/or Does then drove Plaintiff Laurie's vehicle back to her home and parked it in her driveway.



76. Plaintiff Christian was dragged out of his home by several armed individuals, collectively

Defendant Does, and illegally detained for hours without being able to contact legal

representation, his wife or his minor child from approximately 9:37 am to 1:30 pm.



77. Plaintiff Laurie was also detained for the same amount of time and was unable to

communicate with her husband or tend to the 18-month-old minor child Plaintiff.



78. Defendants OPD, Wing, Farris, Sheriff, Chief and Does refused to let Plaintiffs

communicate with each other, their minor child or legal counsel during their illegal

search, seizure and detainment of Plaintiffs.

 

79. The minor child Plaintiff was not given water and was only given popcorn, a choking hazard to an 18-month-old child, during the entire detainment period of the minor child Plaintiffs' parents. Further, the child was forced to stay in the same soiled diaper during the entire time of her parents' illegal detainment. The diaper was so soiled that the child's onesie became soaked in urine as well.

80. Prior to executing the search warrant Defendants closed off Plaintiffs street so that cars were unable to pass. It was not until after the SWAT left Plaintiffs private property that cars and neighbors were able to resume down the street, where Defendants intercepted them informing them Plaintiffs were child molesters and pornographers. Additionally, Plaintiffs were left detained and bound in the front yard of their home for all of their neighbors and passersby to see.

 

81. Defendants OPD, Chief, Sheriff and Does then went door to door defaming Plaintiffs by telling their neighbors that Plaintiffs were involved in child pornography and were sex criminals.[18]

82. Defendants OPD, Chief, Sheriff and Does then contacted Defendant DCF to take possession of the Plaintiffs' minor child, despite no evidence of the minor child, or any child for that matter, being subjected to or a victim of child sexual abuse or pornography.

83. Defendants OPD, Wing, Farris, Sheriff, Chief and Does then made false statements to Defendant DCF about the condition of Plaintiffs' home and the condition of their minor child asserting Plaintiffs' home and the minor child was unkempt due to her soiled diaper, and the Plaintiffs were unfit due to the defecation of the dogs in the home and the mud present throughout the home, which was tracked in by the numerous officers who entered Plaintiffs' home illegally. Defendants made these false statements to DCF to ensure the minor child was removed from the home as they knew they had no evidence of any crime committed by Plaintiffs especially not a crime of child molestation or pornography.

---

[18] Exhibit "F"

84. Defendants OPD, DCF and Does then forced Plaintiffs to sign, under duress, an
"emergency plan" where the minor child Plaintiff was remanded to the custody of the
minor child's grandparents.

85. It is important to note that the grandmother of the minor child was a senior citizen who
was undergoing chemotherapy treatments for cancer and then abruptly forced to care for
an 18-month-old child unnecessarily. Plaintiffs were, and had always been, fit to care for
their child and there was never any evidence to support removal of the minor child from
their custody.



86. Employees/agents from Defendant DCF then forced the 18-month-old minor child be
subjected to unlawful and unnecessary medical exams including taking pictures of the
minor child's naked body and private parts without the consent and against the will of the
minor child and the minor child's parents.

87. Plaintiffs were subsequently stripped of custody of their 18-month-old minor child for a
period of five months and were further forced to intrusive and constant, unsubstantiated,
visits from Defendant DCF for an additional year after the return of their minor child.

88. The forced, intrusive, constant, and unsubstantiated visits from Defendant DCF occurred
two to three times per week for an additional year once the minor child was returned to
the custody Plaintiffs.

89. Defendant Anderson, during the period when the minor child was removed from the
custody of Plaintiffs, met with Plaintiff Laurie at a coffee shop on Edgewater offering to
aid Plaintiff in the return of her minor child if she would "flip" on her husband, Christian,
and say that he did in fact use the child to produce and engage in child pornography.
Plaintiff Laurie refused. Plaintiffs believe Defendant engaged in this behavior due to her
desire to join law enforcement as Defendant Anderson has since joined the OPD.

90. Defendant Teany made false statements to the Ninth Judicial Circuit Court by delaying
Plaintiffs, unfounded, case telling the Court DCF was still awaiting evidence from
Defendant OPD which Defendant Teany knew was never coming. Defendant Wing had
made it known to Defendant Teany that no further investigation was commencing on
Plaintiffs, or their seized items, predominately because of the arrest of another individual
in Indiana and because the OPD was busy investigating cyber murders instead.

91. Defendant Teany attempted to entice Plaintiffs into signing a plea bargain with Defendant
DCF, in an attempt to absolve DCF from liability. Defendant told Plaintiffs agreeing to
the plea would be the only way they would get custody of their child prior to Christmas.
Plaintiffs refused.

92. Immediately after the illegal search and seizure on Plaintiffs person and property they
were without cell phones and internet connection, so they went to a friend's business in
order to contact legal representation for assistance.

93. Plaintiffs immediately hired and retained two separate attorneys, one for Defendant DCF
to regain custody of their child and one for any potential criminal case initiated by
Defendant Wing's falsified search warrant.

94. Plaintiffs spent upward of $30,000 retaining these attorneys immediately after the illegal search, seizure and detainment by Defendants.

95. Plaintiffs, personally, did not receive any further communication from Defendants Wing, OPD, Sheriff and Chief until November 2021. Plaintiffs' former counsel was informed that the police made an arrest elsewhere, in Indiana, regarding the crime Plaintiffs were alleged to have committed. Plaintiffs did not receive any other information regarding the name of the individual arrested or any other information relating to the arrest of any individual in Indiana for the purported crime alleged to have been committed by Plaintiffs.

96. Despite Defendant Wing's assertions in her affidavit, it became obvious that Defendant OPD lacked a computer forensic team in their department to complete forensics on Plaintiffs seized items and intentionally delays forensics on the items illegally seized from Plaintiffs home.

97. Upon information and belief, based on the login logs from the devices seized, no forensics ever occurred on Plaintiffs electronics by Defendants.

98. At no point were Plaintiffs ever charged, arrested or prosecuted for child sexual abuse or child pornography.

99. Defendants OPD, Chief, or Sheriff gave Plaintiffs a search warrant inventory list that did not include several items taken from Plaintiffs' home including new, unopened laptops and a legally owned and registered firearm. The list given to Plaintiffs was barely legible and did not include accurate descriptions of the items seized.[19]

---

[19] Exhibit "D"

100.    Furthermore, Defendants OPD, Chief, or Sheriff seized Plaintiff Christian's cell

phone which has never been returned.

101.    The property Defendants OPD, Chief, or Sheriff did return were all damaged

beyond repair.





102.    Defendants OPD, Chief, or Sheriff have not returned other items included and not

included on the search warrant inventory list including a legally owned firearm and

Plaintiff Christian's personal cellular phone.

103.    On one occasion, after it was determined by overwhelming evidence Plaintiffs

committed no crime and another individual in Indiana was alleged to have been arrested,

the city attorney contacted Plaintiffs to come into evidence in order to regain custody of

their firearm. The city attorney attempted to force Plaintiff Laurie into signing a

document which would hold Defendants OPD, Chief, Sheriff and Does harmless for their

illegal taking of Plaintiff's property. Plaintiff refused to sign such waiver and took a

picture of the document before it was removed from Plaintiff's possession.[20]

---

[20] Exhibit "E"

104.    Plaintiffs believe they were targeted by Defendants OPD, Wing, Farris, Sheriff, Chief and Does due to Plaintiffs religious beliefs and his position as Chief Technology Officer at a major software firm. Several times during Plaintiffs detainment Defendants made comments to Plaintiffs that Catholics were the type who engaged in child molestation and that Plaintiff Christian was smart but not smarter than Defendants.

105.    Due to the overwhelming shock, stress, and emotional distress Plaintiffs continue to live in fear of law enforcement.

106.    Due to the overwhelming shock, stress, and emotional distress Plaintiffs were compelled to sell their home where the illegal search, seizure and detainment occurred.

107.    Furthermore, due to fear of retaliation of Defendants Orlando, OPD, Chief, Sheriff, Wing, Farris and Does Plaintiffs were forced to relocate completely out of the City limits of Orlando.

## COUNT I
## FALSE DETAINMENT
(Defendants OPD and Sheriff)

  

 

108.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if
fully set forth herein.

109.    On August 4, 2020, based on knowingly false representations made by Defendant
Wing in her sworn probable cause affidavit, Defendants OPD and Sheriff obtained an
illegal and fraudulent search warrant signed by Judge Shoemaker of the Ninth Judicial
Circuit Court.

110.    Plaintiffs allege that the Judge did not read or thoroughly review Defendant
Wing's sworn probable cause affidavit. If the Judge would have reviewed it he would
have determined there was no probable cause because the images/videos depicting
pornography of a real child (and not one computer generated) who was under the age of
18 were absent and were never distributed or attached to single chat which was the
subject of the probable cause affidavit submitted by Defendant Wing.

111.    Defendant Wing alleged, under oath in her affidavit that, she had been assigned
the case file on July 16, 2019 despite the fact that the cybertip was not reported to the
NCMEC until March 24, 2020.

112.    Additionally, Defendant Wing alleged under oath in her affidavit that she had
been assigned the case file on July 16, 2019 despite the fact that she herself had not been
assigned to ICAC SVU until January 2020.

113.    Further, Defendant Wing alleged under oath in her affidavit that she had
determined from training and experience that the images/videos had been viewed by
members of law enforcement who were able to confirm the content of the image/video
was pornographic, that the child was a real child (not generated by computer technology)
and that the child in the image was under the age of 18. This was a knowingly false
statement considering there was never any images/videos viewed by her or any other
member of law enforcement because no images/videos were ever present in the single
chat submitted to the NCMEC.

114.    None of allegations advanced in Defendant Wing's sworn affidavit were true and
these misrepresentations were material and were knowingly and intentionally falsely
made by Defendant Wing and Farris in order to gain a search warrant. Essentially
Defendants were on a "fishing" expedition and knew had they been truthful to the Court,
as they are required to be, the Court would have found no probable cause and would not
have issued a search warrant. Furthermore, NO charges were ever filed against Plaintiffs
in relation to the allegations made by Detective Wing in her sworn probable cause
affidavit.

115.    The representations made in Defendant Wing's probable cause affidavit were
knowingly false, the search and detention of Plaintiffs was not based on a valid process of
the Court, and furthermore, no probable cause ever existed for the search, seizure and
detention of the Plaintiffs.

116.    The actions of Defendants Wing, and Farris, were taken in bad faith or with
malicious purpose or with wanton, reckless and willful disregard for both Plaintiffs'
rights and for the truth. Moreover, Defendants Wing and Farris had specific, subjective
knowledge that Plaintiffs had not engaged in the conduct alleged in her sworn affidavit.
Despite this knowledge, Defendant Wing did purposely cause Plaintiffs search and
detainment to be effectuated.

117.    At all times, Defendants Wing and Farris knew or should have known that the
charges of child molestation and pornography were false, and that no probable cause
existed to request a search warrant for Plaintiff's.

118.    On August 6, 2020, Defendant OPD, through its employees and agents acting in
the course and scope of their duties as police officers caused Plaintiffs to be deprived of
their freedom and liberty and restrained the Plaintiffs in their movements at the scene of
their residence and illegally detained Plaintiffs' from approximately 9:37 am to 1:30 pm.

119.    Defendant OPD through its agents and employees, and acting under color of state
law, unlawfully restrained Plaintiffs against their will by causing Plaintiffs to be detained
and deprived of their liberty on August 6, 2020 by numerous law enforcement officers
acting within the scope of their employment with Defendant. Although they thought they
possessed justification or authority for said detention that authority and justification was
knowingly fraudulently obtained.

120.    Additionally, Defendant OPD, through its employees and agents acting in the
course and scope of their duties as police officers, caused the minor child Plaintiff to be
deprived of her freedom and liberty and detained the minor child despite the minor child
being the alleged victim. Defendant further detained the minor child by illegally and

unreasonably engaging Defendant DCF to remove the minor child from the custody of
her parents knowing that no such illegal or unlawful behavior occurred.

121.    Plaintiffs did not consent to the aforementioned actions of Defendant OPD, its
employees and agents, and said actions were against the will of Plaintiffs.

122.    The restraint of Plaintiffs by Defendant OPD, through its employees and agents
acting in the course and scope of their duties was unlawful and was not based upon any
lawfully issued process of the Court. Therefore, Defendant did not have a valid warrant
for Plaintiffs or even a valid basis to obtain a warrant as the singular conversation alone
was not criminal nor an act in which a warrant could have been obtained.

123.    Defendant's actions, including obtaining a fraudulent warrant, detaining Plaintiffs
against their will, seizing Plaintiffs' persons, property and minor child were done for the
purposes of confining Plaintiffs and constitute an unlawful restraint.

124.    Plaintiffs were, at all times pertinent, aware of this unlawful restraint.

125.    As a direct and proximate result of the false detainment, Plaintiffs have suffered
injuries and damages, both professionally and personally.

126.    As a direct and proximate result of Defendants actions, through its employees and
agents for which Defendant is responsible, Plaintiffs have suffered damages, which
include physical inconvenience, physical discomfort and pain, physical suffering, loss of
time, loss of income, loss of personal items, loss of business, mental suffering,
embarrassment, humiliation, disgrace and injury to their feelings and reputation, the
physical and emotional aspects of which are continuing to this day and are likely to
continue in the future.

WHEREFORE, for the foregoing reasons, Plaintiffs, respectfully requests this Court to enter judgment against Defendants and requests the following: an award of compensatory damages for personal indignity, dishonor, humiliation, damage to their professional and personal reputation, mental anguish and distress, an award of lost benefits, an award of prejudgment interest, an award of attorney's fees and costs and such additional or alternative relief as the court may deem just and proper. Plaintiffs reserve the right to amend his claim for punitive damages in the future, should such a claim become viable.

## COUNT II
## FALSE DETAINMENT
(Defendant DCF)

127.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if fully set forth herein.

128.    This is an action against Defendant DCF for false detainment. This Count is pled in the alternative and at all times pertinent hereto, Defendants were acting inside the course and scope of their employment with Defendant DCF.

129.    Plaintiffs are entitled to relief against Defendant in that its officers, employees, or agents acting in the course and scope of their employment with DCF, intentionally and unlawfully detained and restrained the minor child Plaintiff against her will, deprived the minor child Plaintiff and her parents of liberty without any reasonable cause, and maintained such a complete restrain and deprivation for an excessive and unreasonable period of time.



130.    This unlawful restraint of the Plaintiffs liberties was assisted by Defendants OPD,

Chief, Sheriff, Saunders, Anderson, Thomas, Dion, Teany and Does by confining the

minor child to an area in which the minor child, nor the parents of the minor child, did

not wish to be confined and by compelling the minor child to go where she, or her

parents, did not wish to go.

131.    The minor child Plaintiff was further restrained by Defendants, through its agents

and employees by use of coercive words, threats of force as well as actual force, and

immediate means of coercion against minor child Plaintiffs' parents so that the Plaintiffs

were restrained and deprived of their liberty. Defendants restrained the minor child

without any justification and in the absence of probable cause. Defendant DCF conducted

no independent investigation into whether any criminal conduct had occurred, nor did

they have any evidence that any criminal conduct had already occurred to justify their

unreasonable restraint on Plaintiffs.

132.    At all times material to this action the minor child Plaintiff was restrained against

her will and the will of her parents and without consent. The minor child was not free to

leave her place of confinement, including not being fed and left to fester in a soiled

diaper for a grossly extended period of time.

133.    As a direct and proximate cause of Defendants actions, Plaintiffs have been

damaged. Damages include mental anguish, pain and suffering, bodily injury, loss of

capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost

employment opportunities, lost wages, and the loss of other emoluments. These damages

have occurred at present, in the past and will most likely occur in the future. Defendants

are jointly and severally liable to Plaintiffs.

WHEREFORE, for the foregoing reasons, Plaintiffs, respectfully requests this Court to enter

Judgment against Defendant DCF for damages and costs in the prosecution of this matter and

such other further relief as this Court deems just and proper under the circumstances. Plaintiffs

reserves the right to amend his claim for punitive damages in the future, should such a claim

become viable.

## COUNT III
## FALSE AND UNLAWFUL DETAINMENT
(Defendant Orlando)

134.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if

fully set forth herein.

135.    On August 6, 2020, Defendants Wing, Farris, Chief, Sheriff and Does, did, in the

course and scope of their employment as an employee and/or agent of the City of

Orlando, effectuate the detainment of Plaintiffs by illegally detaining Plaintiffs and

depriving them of their liberties.

136.    Plaintiffs did not consent to the aforementioned actions of Defendant Orlando's

agents and employees and said actions were against the will of Plaintiffs.

137.    At all times, Defendant Orlando knew or should have known that the charges

made against Plaintiffs were false and that no probable cause existed.

138.    There was never any probable cause, whatsoever, to grant a search warrant or to

detain Plaintiffs.

139.    There was never any probable cause to search and seize of Plaintiffs' person,

property or minor child.

140.    There was never any probable cause to remove the minor child Plaintiff from the

custody of Plaintiffs.

141.    There was never any probable cause to remove Plaintiff Laurie from her vehicle
and stop her from seeking emergency services to aid her pet dog.

142.    There was never any probable cause to detain Plaintiffs in handcuffs and place
them in the front yard of their home.

 

143.    The search, seizure and detainment of Plaintiffs by Defendant Orlando's
employees and agents was unlawful and unreasonable.

144.    The totality of the circumstances surrounding the search, seizure and detainment
of Plaintiffs further confirm an unreasonable and unlawful detainment.

145.    Moreover, Defendant Orlando, through its officers, agents, representatives and
employees, negligently failed to investigate the sufficiency and truthfulness of the
material facts of Defendant Wing's affidavit before seeking a defective search warrant for
Plaintiffs persons and property.

146.    As a direct and proximate result of the false detainment of Plaintiffs by
Defendant's employees and agents, for which Defendant Orlando is vicariously liable,
Plaintiffs suffered damages which include mental suffering, embarrassment, humiliation,
disgrace, injury to their feelings and reputation, and loss of enjoyment of life which is
permanent and/or continuing in nature.

147.    Defendant Orlando's violations of Plaintiffs civil and constitutionally protected

rights have caused injury and damage to Plaintiffs for which they are entitled to

compensation.

WHEREFORE, Plaintiffs demands judgment against the Defendant Orlando for

compensatory damages and costs of this action and requests a jury trial on all issues so triable.

Plaintiffs reserve the right to amend his claim for punitive damages in the future, should such a

claim become viable.

### COUNT IV
### MALICIOUS PROSECUTION
(Defendants Orlando, OPD, Wing, and Does)

148.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if

fully set forth herein.

149.    Defendants owed a duty of care to its citizenry in general, and specifically owed a

duty of care to Plaintiffs.

150.    On August 20, 2020, Defendant Wing, with malicious purpose, and acting in

concert with the other Defendants, caused prosecution to be instituted against Plaintiffs

by Defendant OPD and DCF. Further, Defendant Wing's actions caused prosecution to

be unnecessarily continued against Plaintiffs. [21]

151.    Said prosecution was instituted and initiated by Defendant Wing without probable

cause as to the facts observed by Defendant Wing prior to having Plaintiffs persons and

property search, seized, detained, and their child removed from their custody. The matters

known to Defendant Wing before instituting the aforementioned prosecution would not

---

[21] OPD Case Number 2020-221714 and Ninth Judicial Circuit Court for Orange County Case No. DP20-433.

have warranted a reasonable person to believe that Plaintiffs had engaged in or

committed any criminal offense. Further, the prosecution of Plaintiffs was instituted by

Defendant Wing with no reasonable likelihood of success. In fact, NO charges were ever

filed against Plaintiffs for child molestation or child pornography. Moreover, the account

of the facts reported in the probable cause affidavit by Defendant Wing were both false

and misleading.

152.    Eventually, there was a bona fide termination of the proceedings against Plaintiffs

by Defendant DCF in favor of the Plaintiffs.

153.    Additionally, an individual in Indiana was allegedly arrested for the crimes

Defendant Wing accused Plaintiffs' of in November 2021.

154.    No prosecution of Plaintiffs by any governmental agency would have been

initiated or pursued if not but for the actions of Defendant Wing.

155.    There was never any probable cause for any judicial proceedings to commence

against Plaintiffs.[22]

156.    Additionally, Defendant Wing provided false and misleading information to

Defendant DCF which resulted in the alienation of minor child Plaintiff from her parents.

The information Defendant Wing provided to Defendant DCF was fabricated and

malicious.

157.    Defendant Wing acted with malice when she instituted the aforesaid prosecution,

which is implied by the lack of probable cause. Express malice was shown by the

---

[22] Ninth Judicial Circuit Court for Orange County, Case No. DP20-433.

reckless disregard for the rights of Plaintiffs by Defendants Wing and Does when they
demonstrated their personal animosity and hostility toward Plaintiffs for being Catholic
and Plaintiff Christian's position as a software executive.

158.     Plaintiffs' detainment and prosecution became known to other persons as a result
of Defendants Wing, Chief, Sheriff and Does actions by directly informing neighbors of
Plaintiffs that they were being prosecuted for child pornography and molestation,[23]
detaining Plaintiffs on the front lawn of their home, as well as making Plaintiffs case
discoverable to the public records of Orange County and available to public scrutiny
online to anyone with access to the internet.

159.     Prosecution of Plaintiffs was instituted without probable cause by Defendant
Wing and the facts known by Defendant would not have warranted a reasonable person to
believe that any criminal offense had been committed by Plaintiffs.

160.     There was an absence of probable cause to obtain a search warrant, detainment
and prosecution of Plaintiffs.

161.     On or about November 2021, the prosecution against Plaintiffs was terminated in
favor of Plaintiffs. Allegedly the true perpetrator was arrested in Indiana, as was evident
that the perpetrator was located in that jurisdiction from the targeted ads in the single chat
submitted in Detective Wing's sworn affidavit. The arrest of the individual in Indiana
constituted a bona fide termination of proceedings before Defendant OPD and DCF in

---

[23] Exhibit "F"

favor of Plaintiffs, proving concretely there was never any probable cause against
Plaintiffs.

162.    Defendant Wing acted maliciously and in bad faith against the Plaintiffs at all
times mentioned herein. No prosecution, in any sense of the word, of Plaintiffs would
have occurred if not but for the actions of Defendant Wing.

163.    As a direct result of Defendant Wing's actions, Plaintiffs have suffered damages,
which include physical inconvenience, physical discomfort and pain, loss of time, loss of
income, loss of personal items, loss of business, mental suffering, embarrassment,
humiliation, anxiety, disgrace, injury to their feelings and reputation, loss of enjoyment of
life, the emotional and physical aspects which are continuing to this day and are likely to
continue into the future. Moreover, Plaintiffs suffered emotional and mental pain and
suffered and continues to suffer from this pain and suffering to this day, and all of these
said injuries are permanent and/or continuing in nature. Plaintiffs also suffered damages
as the result of her being forced to hire counsel and incur attorneys' fees and costs to
defend themselves from such malicious prosecution by Defendants.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully requests this Court enter
judgment against Defendants for damages and costs in the prosecution of this matter, expenses
incurred in defending the prosecution and continued prosecution and for such other and further
relief as this Court deems just and proper under the circumstances. Plaintiffs further demands
judgment against the Defendants for compensatory damages and costs of this action and requests
a jury trial on all issues so triable. Plaintiffs reserve the right to amend their claim for punitive
damages in the future, should such a claim become viable.

## COUNT V
## MALICIOUS PROSECUTION
(Defendants Orlando, OPD and DCF)

164.     Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if fully set forth herein.

165.     The Defendants, through its agents and employees, and acting under color of state law, instigated the prosecution of Plaintiffs. Legal process was instituted against Plaintiffs by Defendant OPD, Orlando and DCF based exclusively upon the false and malicious accusations made by Defendant Wing and the request by Defendant Wing to investigate the matter.

166.     A review of the single chat included in Defendant Wing's probable cause affidavit demonstrates that there was never any images/videos depicting child pornography or child molestation, especially not any committed by Plaintiffs or involving Plaintiffs' minor child. However, against all common sense and decency Defendant Wing initiated proceedings against Plaintiffs before the Ninth Judicial Circuit without any probable cause to do so.[24]

167.     Defendants Wing, OPD, Orlando, and DCF's attempt to prosecute Plaintiffs for child molestation and child pornography were based solely on false material facts provided by Defendant Wing and constitutes malice. The investigation and proceedings were with wrongful and willful intent to injure Plaintiffs.

168.     Defendant OPD, in November 2021, closed the case initiated by Defendant Wing against Plaintiffs as an individual in Indiana was alleged to have been arrested for the

---

[24] Ninth Judicial Circuit Court for Orange County, Case No. DP20-433 and 2020-221714.

same crime stated to have been perpetrated by Plaintiffs. Plaintiffs were never provided

any information as to the alleged individual who was arrested for the crime in Indiana.

169.     As a direct and proximate result of Defendants' malicious attempt to prosecute

Plaintiffs, Plaintiffs were caused to suffer injuries and damages, both professionally and

personally.

WHEREFORE, Plaintiffs demand judgment against Defendants and requests the following:

an award of compensatory damages for personal indignity, dishonor, humiliation, damage to

Plaintiffs' professional and personal reputation, mental anguish and distress, an award of lost

wages and other lost employment benefits, an award of prejudgment interest, attorneys' fees and

such additional or alternative relief as the Court may deem just and proper. Plaintiffs reserve the

right to amend their claim for punitive damages in the future, should such a claim become viable.

**COUNT VI**
**FRAUD/MISREPRESENTATION**
(Defendants Wing, Farris, OPD, and Chief)

170.     Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if

fully set forth herein.

171.     Defendants Wing and Farris knowingly and intentionally made false material and

misleading representations to the Ninth Judicial Circuit, that Plaintiffs were engaged and

had engaged in child molestation of their own minor child and they had created child

pornography with their minor child. Specifically, Defendant Wing concealed or

knowingly failed to advise the Court that there was not nor was there ever an

images/videos of any child being molested or sexually abused when she knew or should

have known of that fact based on her own exhibit produced as evidence in her sworn

probable cause affidavit.

46

172.    Defendant Wing's representations were in fact false, as there was never any
images/videos depicting a child being sexually molested or any evidence any child
pornography had ever been created.

173.    Defendant Wing, Farris, and OPD had actual knowledge based upon their training
and experience that there was no evidence of any child molestation or pornography due to
the lack of images/videos depicting such or should have known such information as there
was never any images/videos presented in Defendants own probable cause affidavit.

174.    Defendants Wing, Farris and OPD knowingly and intentionally falsely
represented to the Ninth Circuit Court that images/videos of child pornography and
molestation existed and omitted relevant information from their probable cause affidavit
that no such images/videos did or ever existed.

175.    When Defendants made these representations to the Ninth Circuit Court, both in
their probable cause affidavit and during the DCF proceedings initiated shortly thereafter,
they knowingly and intentionally concealed and withheld from the Plaintiffs, and the
public, the true facts that there was not nor had their ever been any images/videos
depicting child molestation or pornography especially not images/videos involving
Plaintiffs or their minor child.

176.    Defendants Wing, Farris and OPD had a duty to disclose to the Plaintiffs, the
Ninth Circuit Court, DCF and the public that no such images/videos ever existed
depicting the Plaintiffs engaging in child molestation or pornography as Defendants had
superior knowledge of these facts that were material to Plaintiffs innocence. The Ninth
Circuit Court and Defendant DCF reasonably and justifiably relied on the Defendants

47

concealment of the true facts and reasonably and justifiably relied upon Defendants' representations that Defendants had unequivocal proof, with 99.999% certainty, that Plaintiffs engaged in child molestation and pornography.

177.    Had the Ninth Circuit Court or Defendant DCF known of the Defendants' concealment of the true facts Plaintiffs would have never been injured nor been alienated from their 18-month-old minor.

178.    As a direct and proximate result of the Defendants' Wing, Farris and OPD's misrepresentations and concealment, Plaintiffs have suffered economic damages and losses and non-economic damages and losses, including, but not limited to, pain and suffering, impairment of their quality of life, alienation of child parent relationship and emotional distress.

WHEREFORE, Plaintiffs demand judgment against all aforementioned named Defendants and requests the following: an award of compensatory damages for personal indignity, dishonor, humiliation, damage to Plaintiffs' professional and personal reputation, mental anguish and distress, an award of lost wages and other lost employment benefits, an award of prejudgment interest, attorneys' fees and such additional or alternative relief as the Court may deem just and proper. Plaintiffs reserve the right to amend their claim for punitive damages in the future, should such a claim become viable.

## COUNT VII
## NEGLIGENT MISREPRESENTATION
(Defendants Wing, Farris and OPD)

179.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if fully set forth herein.

180.    Defendants Wing, Farris and OPD, in the course of their official capacity as law enforcement, supplied Defendants DCF, Anderson, Saunders, Thomas, Dion, Teany, Does and the Ninth Judicial Circuit Court with false information.

181.    The false information supplied by the Defendants to Defendants DCF, Anderson Saunders, Thomas, Dion, Teany, Does and the Ninth Judicial Circuit Court caused Plaintiffs' to be falsely detained, their person and property unnecessarily and unreasonably searched and seized and their minor child removed from their custody.

182.    In supplying the false information, Defendants failed to exercise reasonable care or competence in obtaining or communicating information to the Ninth Judicial Circuit Court, Defendant DCF, Plaintiffs' and their attorney.

183.    The false information obtained and communicated by Defendant Wing to the Ninth Judicial Circuit Court was material, and the Ninth Judicial Circuit Court and Defendant DCF justifiably relied in good faith on the information given to them.

184.    As a result of the intentionally negligent misrepresentations by Defendants OPD, Wing and Farris to the Ninth Judicial Circuit Court and Defendant DCF, Plaintiffs suffered injuries, damages and losses as alleged herein.

WHEREFORE, Plaintiffs demands judgment against the Defendants for compensatory damages and costs of this action and requests a jury trial on all issues so triable. Plaintiffs reserve the right to amend this claim for punitive damages in the future, should such a claim become viable.

**COUNT VIII**
**42 U.S.C. §1983**
(All Defendants)

185.     Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if fully set forth herein.

186.     Plaintiffs have the right under the Constitution of the United States to be secure from unlawful searches or unlawful restraint of their person and liberty, which may be restricted only upon due process of law under the Fourth and Fourteenth Amendments to the United States Constitution.

187.     Additionally, Plaintiffs have the right under the United States Constitution and the Constitution of the State of Florida to be free from wrongful detainment and prosecution.

188.     This claim is brought pursuant to Florida State Court's concurrent jurisdiction to entertain violations of 42 U.S.C. §1983.

189.     On August 6, 2020, Defendant Wing, under the color of law and as an employee of Defendant Chief and OPD, deprived Plaintiffs of their rights under the United States Constitution, in violation of 42 U.S.C. §1983, in that, without probable cause advanced Plaintiffs had committed a violation of law, illegally detained, handcuffed, searched and seized Plaintiffs' persons and property and caused Plaintiffs to be alienated from their 18-month-old minor child depriving them of their liberty and thereby causing Plaintiffs physical and emotional pain and suffering. Defendants OPD, Wing, Chief, Sherriff and Does had no legal right to detain or search and seize Plaintiffs' person and property. Furthermore, Defendants DCF, Anderson, Saunders, Thomas, Dion and Teany had no legal right to remove Plaintiffs' minor child from the Plaintiffs custody and alienate the Plaintiffs from their parental responsibility. Defendant Wing's actions also caused Plaintiffs to be prosecuted, before the Ninth Judicial Circuit, without probable cause and

Defendant Wing allowed the prosecution and continued in participation of the prosecution without probable cause.

190.    Additionally, Defendant Wing made false statements to the Ninth Judicial Circuit Court in order to obtain a search warrant to search, seize and detain Plaintiffs' person and property. In doing so, Defendant Wing obtained a search warrant under false pretenses.

191.    During the scope of the search, Defendant Wing went beyond the scope of the warrant and seized items, which were not included in the scope of the warrant nor were they accounted for in the inventory log, including but not limited to several brand new and unopen laptops and a firearm in Plaintiffs' vehicle. Defendant Wing had no legal right to search, seize and detain Plaintiffs' person and property.

192.    The sole purpose of the illegal and wrongful detention and unlawful restraint of Plaintiffs was to deprive and infringe upon Plaintiffs' constitutional rights. As a result, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments of the United States Constitution. Violation of these rights entitles Plaintiffs to an award of damages for loss of those rights and the damages that resulted therefrom.

193.    Defendant Wing took the actions complained of above with knowledge that the actions were in direct violation of the United States Constitution and the rights of Plaintiffs. The acts of Defendant Wing violated the clearly established constitutional rights of Plaintiffs, rights of which every reasonable member of the public or governmental entity knew or should have known.

194.    Defendant Wing knew that her actions would deprive Plaintiffs of their constitutional rights but proceeded with the unlawful actions with willful disregard for the consequences of her actions.

195.    As a direct result of Defendants Wing, Farris and OPD's actions, Plaintiffs have

suffered damages, which include physical inconvenience, physical discomfort and pain,

loss of time, loss of income, loss of personal items, mental suffering, embarrassment,

humiliation, disgrace and injury to their feelings and reputation, the emotional and

physical aspects, and all others damages associated with Plaintiffs unlawful detainment,

search, seizure and detainment of Plaintiffs' person and property and alienation of

Plaintiffs' from their minor child. These damages exist to this day and are likely to

continue into the future. Plaintiffs were forced to hire counsel to defend themselves in the

fraudulent prosecution initiated by Defendant Wing and suffered damages as a result.

196.    Plaintiffs' have suffered damages as a result of their Fourth, and Fourteenth

Amendment rights being violated.

197.    Plaintiffs' have retained the undersigned to bring this action under 42 U.S.C

§1983 and is entitled to recover from Defendants a reasonable fee for said counsel

pursuant to 42 U.S.C. §1988.

WHEREFORE, Plaintiffs respectfully requests this Court to take jurisdiction of this cause

and the parties to this action and enter an award of damages against Defendants in their

individual capacity, and to award Plaintiffs' their attorneys' fees and costs pursuant to 42 U.S.C.

§1988 and other applicable laws. Plaintiffs reserve the right to amend their claim for punitive

damages in the future, should such a claim become viable.

**COUNT IX**
**42 U.S.C. 1983 EXCESSIVE FORCE**
(Defendants OPD, Orlando, Chief, Sheriff, Wing, Farris and Does 1-50)






198.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if fully set forth herein.

199.    That at all times alleged herein, the Defendants were all acting under the color of law and violated the known and clearly established Constitutional rights of Plaintiffs to be free from the use of excessive force.

200.    Police officers are prohibited from using more force than necessary to effectuate detention.

201.    At all times relevant, Plaintiffs had a clearly established right to personal safety and bodily integrity, as well as protection from unlawful seizure, unnecessary force, unreasonable force, and excessive force pursuant to the Fourth Amendment to the United States Constitution.

202.    Defendants unlawfully seized Plaintiff Christian when they took custody of
Plaintiff by physically grabbing and dragging him out of his home at gunpoint. The
sudden grabbing, dragging, pushing and pulling of Plaintiff has caused him to sustain
severe and continued injuries.

203.    Defendants unlawfully seized Plaintiff Laurie when they took custody of Plaintiff
by physically grabbing and dragging her out of her vehicle and surrounding her vehicle at
gunpoint. The sudden grabbing, dragging, pushing and pulling of Plaintiff has caused her
to sustain severe and continued injuries.

204.    Defendants unlawfully seized Plaintiffs' minor child when they took custody of
Plaintiff by physically grabbing and dragging her out of her father's arms at her home at
gunpoint. The sudden grabbing, pulling and separating of the 18-month-old child from
her father has caused her to sustain severe and continued injuries.

205.    This use of force was objectively unreasonable because Plaintiffs, especially the
18-month-old minor child, committed no crime. Plaintiffs were not a threat to the safety
of the officers and Defendants had no objective reasonable suspicion or probable cause to
believe that Plaintiffs committed any crime, nor did they have any other lawful basis to
detain or use any force at all on Plaintiffs.

206.    Defendants used excessive force against Plaintiffs without any reasonable
suspicion or probable cause to believe that Plaintiffs were armed or involved in any crime
or posed an objectively reasonable threat of death or serious bodily harm to the officers.

207.    The above-described physical attack on Plaintiffs were without legal justification.

208.    Plaintiffs did nothing to provoke Defendants and Defendants conduct was

unreasonable under the circumstances.

209.    Defendants intentionally, knowingly, recklessly, unreasonably and negligently

detained Plaintiffs while using excessive and unnecessary force.

210.    The excessive use of force deprived Plaintiffs of their clearly established right to

be secure in their persons against excessive force by state actors in violation of Plaintiffs

clearly established constitutionally protected right to be free from punishment and

deprivation of life and liberty without due process of law under the Fourth and Fourteenth

Amendments to the United States Constitution. Defendants employed unnecessary,

unreasonable, and excessive force against Plaintiffs, thereby inflicting horrendous

personal injuries upon them.

211.    Defendants' actions constitute an excessive use of force which a reasonable police

officer would not have used, including having their guns drawn, arriving at Plaintiffs'

home with a SWAT team, surrounding Plaintiffs' home with countless officers, and

refusing to allow Plaintiffs to change the diaper or tend to their minor child.

212.    As a direct and proximate result of the Defendants willful violation of Plaintiffs

constitutionally-protected rights, Plaintiffs has suffered and will continue to suffer

damage into the future, including, but not limited to: physical pain and suffering, bodily

injuries, mental anguish, severe emotional distress, fright and shock, denial of social

pleasures and enjoyment, humiliation or mortification, medical bills and expenses for the

past, present and future and other damages properly recoverable under law.

213.     Defendants Wing, Farris, OPD, Sheriff and Does while acting under the color of

officers of Defendant Orlando and employed, participated in and/or used excessive use of

force under the circumstances acted willfully, wantonly, maliciously, and with deliberate

indifference to and callous disregard for Plaintiffs' constitutional rights, and in a manner

that shocks the conscience and offends traditional notions of decency, all of which led to

Plaintiffs' wrongful injuries.

214.     Defendant Orlando, by and through Defendant OPD implemented and/or had in

place, at all times relevant, policies and customs that violated and/or that were applied in

such a way that they violated the constitutional rights of persons that might be victims

within the city of Orlando, including the Plaintiffs, to be free from the use of excessive

force.

215.     Plaintiffs allege that the conduct of Defendants deprived them of their

Constitutional rights to life, liberty and the pursuit of happiness and caused Plaintiffs to

suffer grievous physical and mental pain, suffering, anxiety and harm.

216.      That the Defendants caused and are responsible for the unlawful conduct and

resulting harm by, inter alia, personally participating in the conduct, or acting jointly and

in concert with others who did so. By authorizing, acquiescing, or failing or refusing,

with deliberate indifference to and reckless disregard for Plaintiffs clearly established and

known rights, to initiate and maintain adequate training, supervision, and staffing. By

failing to maintain proper and adequate policies, procedures and protocols, and customs

and practices and by ratifying the unlawful conduct performed by agents and officers,

personnel, and employees under their direction, supervision, and control.

217.     At all times relevant, Defendant Orlando was responsible for the administration,

operation, and supervision of Defendant OPD, and for the promulgation, enforcement and

review of rules, regulations, policies, customs, and practices relevant thereto, and was

acting under color of law.

218.     At all times relevant, Defendant Orlando was under a non-delegable duty to

promulgate policies, practices, procedures and/or customs to ensure that residents of

Orlando were not subjected to excessive and/or unreasonable force in violation of their

Constitutional rights.

219.     At all times relevant, Defendant Orlando, OPD, Chief, Sheriff, Wing, Farris and

Does were under a non-delegable duty to refrain from using excessive and/or

unreasonable force on residents located in the City of Orlando, and to ensure that

residents and the general public were not subjected to excessive and/or unreasonable

force in violation of their Constitutional rights.

220.     At all times relevant, Defendant Chief, Wing, Farris and Does were officers

employed by Defendants Orlando and OPD and were acting within the course and scope

of their employment and under the color of law, who was directly responsible for

Plaintiffs' well-being while within the City of Orlando. Defendant Wing, Farris and Does

are sued in their official and individual capacities.

221.     Employees of Defendants Orlando and OPD reviewed Defendants Wing, Farris,

Chief, Sheriff and Does unreasonable use of force on Plaintiffs herein, and approved,

ratified and otherwise condoned Defendants excessive and unreasonable use of force on

Plaintiffs herein.

222.    The acts and omissions of the Defendants in this claim for relief, including, but

not limited to those City employees participating in the foregoing stated acts and

omissions, ordering, authorizing, directing, supervising, approving and/or ratifying the

foregoing acts and omissions, and acquiescing, failing and/or refusing to prevent the

foregoing acts and omissions, constitute conduct under the color of state law which

deprived Plaintiffs of their clearly established and known rights, privileges, and

immunities secured by the Constitution and laws of the United States.

223.    As a direct and proximate result of the foregoing stated conduct, the Defendants

in this claim for relief deprived Plaintiffs of their clearly established and known rights

under the Fourteenth Amendment of the United States Constitution. More specifically,

these Defendants deprived Plaintiffs of: (1) their right to be free from a deprivation of life

and liberty without due process of law and (2) their right to be free from the use of

excessive, outrageous, and unreasonable force, which shocks the conscience and offends

traditional notions of decency.

WHEREFORE, Plaintiffs respectfully requests this Court take jurisdiction of this cause and

the parties to this action and enter an award of damages against all Defendants in their individual

capacity, and to award Plaintiffs' their attorneys' fees and costs pursuant to 42 U.S.C. §1988 and

other applicable laws. Plaintiffs reserve the right to amend their claim for punitive damages in

the future, should such a claim become viable.

## COUNT X
### 42 U.S.C. § 1983 EXCESSIVE FORCE
(Defendants Orlando, DCF, Anderson, Saunders, Thomas, Dion, Teany, and Does)

224.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if

fully set forth herein.

225.    That at all times alleged herein, Defendants were all acting under the color of law

and violated the known and clearly established Constitutional rights of Plaintiffs to be

free from the use of excessive force.

226.    That Defendants while acting under the color of officers of Defendant DCF and

Orlando participated in and/or used excessive use of force under the circumstances, and

acted willfully, wantonly, maliciously, and with deliberate indifference to and callous

disregard for Plaintiffs' constitutional rights, and in a manner that shocks the conscience

and offends traditional notions of decency, all of which led to Plaintiffs wrongful

injuries.

227.    Defendant DCF, by and through the State of Florida implemented and/or had in

place, at all times relevant, policies and customs that violated and/or that were applied in

such a way that they violated the constitutional rights of persons within the city of

Orlando, including the Plaintiffs, to be free from the use of excessive force.

228.    Plaintiffs allege that the conduct of Defendants deprived them of their

Constitutional rights to life, liberty and the pursuit of happiness and caused Plaintiffs to

suffer grievous physical and mental pain, suffering, anxiety and harm.

229.    That Defendants named caused and is responsible for the unlawful conduct and

resulting harm by, inter alia, personally participating in the conduct, or acting jointly and

in concert with others who did so. Authorizing, acquiescing, or failing or refusing, with

deliberate indifference to and reckless disregard for Plaintiffs clearly established and

known rights, to initiate and maintain adequate training, supervision, and staffing. By

failing to maintain proper and adequate policies, procedures and protocols, and customs

and practices and by ratifying the unlawful conduct performed by agents and officers, personnel, and employees under their direction, supervision, and control.

230.    At all times relevant, Defendant DCF was responsible for the administration, operation, supervision and for the promulgation, enforcement and review of rules, regulations, policies, customs, and practices relevant thereto, and was acting under color of law.

231.    At all times relevant, Defendant DCF was under a non-delegable duty to promulgate policies, practices, procedures and/or customs to ensure that residents of Orlando were not subjected to excessive and/or unreasonable force in violation of their Constitutional rights.

232.    At all times relevant, Defendants DCF, Saunders, Anderson, Thomas, Dion, Teany and Does were under a non-delegable duty to refrain from using excessive and/or unreasonable force on residents located in the City of Orlando, and to ensure that residents and the general public were not subjected to excessive and/or unreasonable force in violation of their Constitutional rights.

233.    At all times relevant, Defendants Saunders, Anderson, Thomas, Dion, Teany and Does were employed by Defendant DCF and were acting within the course and scope of their employment with the Department, and under the color of law, who was directly responsible for Plaintiffs' well-being while within the City of Orlando. Defendant Saunders, Anderson, Thomas, Dion, Teany and Does are sued in their official and individual capacities.

234.    Employees of Defendant DCF reviewed Defendant Saunders, Anderson, Thomas, Dion, Teany and Does unreasonable use of force on Plaintiffs herein, and approved,

ratified and otherwise condoned Defendants excessive and unreasonable use of force on Plaintiffs herein.

235.     The acts and omissions of the Defendants in this claim for relief, including, but not limited to those Department employees participating in the foregoing stated acts and omissions, ordering, authorizing, directing, supervising, approving and/or ratifying the foregoing acts and omissions, and acquiescing, failing and/or refusing to prevent the foregoing acts and omissions, constitute conduct under the color of state law which deprived Plaintiffs of their clearly established and known rights, privileges, and immunities secured by the Constitution and laws of the United States.

236.     As a direct and proximate result of the foregoing stated conduct, the Defendants in this claim for relief deprived Plaintiffs of their clearly established and known rights under the Fourteenth Amendment of the United States Constitution. More specifically, these Defendants deprived Plaintiffs of: (1) their right to be free from a deprivation of life and liberty without due process of law and (2) their right to be free from the use of excessive, outrageous, and unreasonable force, which shocks the conscience and offends traditional notions of decency.

WHEREFORE, Plaintiffs respectfully requests this Court to take jurisdiction of this cause and the parties to this action and enter an award of damages against all aforementioned Defendants in their individual capacity, and to award Plaintiffs' their attorneys' fees and costs pursuant to 42 U.S.C. §1988 and other applicable laws. Plaintiffs reserve the right to amend their claim for punitive damages in the future, should such a claim become viable.

### COUNT XI
### 42 U.S.C. § 1983 FOURTH AMENDMENT - UNLAWFUL DETENTION
(Defendants OPD, Chief, Sheriff, Wing, Farris, and Does)

 

237.     Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if fully set forth herein.

238.     Pursuant to the Fourth Amendment, police officers are prohibited from effectuating a detainment unless probable cause or reasonable suspicion exists that the person committed a crime, or if there is some other lawful basis to do so.

239.     At all times relevant, Plaintiffs had a clearly established right to personal safety and bodily integrity, as well as protection from unlawful seizure, unnecessary force, unreasonable force, and excessive force pursuant to the Fourth Amendment to the United States Constitution.

240.     Defendants unlawfully seized Plaintiff Christian when they took custody of Plaintiff by physically grabbing and dragging him out of his home at gunpoint, without warning or announcement. Defendants had Plaintiffs under their physical control and in their custody and thus arrested and/or detained him.

241.      Defendants unlawfully seized Plaintiff Laurie when they took custody of Plaintiff by physically grabbing and dragging her out of her vehicle at gunpoint, without warning or announcement. Defendants had Plaintiff under their physical control and in their custody and thus arrested and/or detained her.

242.    Defendants unlawfully seized Plaintiffs' minor child when they took custody of
the child by physically grabbing and removing her out of her home at gunpoint, and out
of the arms of her father without warning or announcement. Defendants had Plaintiff
under their physical control and in their custody and thus arrested and/or detained her.

243.    Plaintiffs' seizure was unlawful because Plaintiffs committed no crime and
Defendants had no objective reasonable suspicion or probable clause that Plaintiffs
committed any crime, nor did they have any other lawful basis to detain Plaintiffs.

244.    Defendants unreasonably, painfully, unjustifiably, degradingly, and harmfully
dragged Plaintiffs out of their home and vehicle, whereby they were harmed mentally,
physically, and emotionally and detained for an unreasonably lengthy period of time
and/or manner.

245.    None of the Plaintiffs were free to leave.

246.    Plaintiffs were detained without lawful basis.

247.    Further, after Defendants knew or should have known that Plaintiffs were not
suspects, they kept them detained for an unreasonably lengthy period of time.

248.    Specifically, Defendants detained Plaintiffs Laurie and Christian outside of their
home, in their front yard and on display to their neighbors in an effort to further
embarrass Plaintiffs.

249.    Defendants had no lawful basis to detain Plaintiffs outside of their home, nor to
prevent them from tending to their minor child because they knew Plaintiffs had
committed no crime as Defendants were devoid of any evidence (images/videos) that was
Plaintiffs had engaged in child molestation and pornography.

250.     As a direct and proximate result of the individually named Defendants willful

violation of Plaintiffs constitutionally-protected rights, Plaintiffs have suffered and/or will

continue to suffer damage into the future, including, but not limited to: physical pain and

suffering, bodily injuries, loss of bodily function, mental anguish, severe emotional

distress, fright and shock, denial of social pleasures and enjoyment, humiliation or

mortification, medical bills and expenses for the past, present and future and other

damages properly recoverable under law.

WHEREFORE, Plaintiffs respectfully requests this Court to take jurisdiction of this cause

and the parties to this action and enter an award of damages against all aforementioned

Defendants in their individual capacity, and to award Plaintiffs their attorneys' fees and costs

pursuant to 42 U.S.C. §1988 and other applicable laws. Plaintiffs reserve the right to amend their

claim for punitive damages in the future, should such a claim become viable.

**COUNT XII**
**42 U.S.C. § 1983 FAILURE TO INTERVENE**
(Defendants Orlando, OPD, Chief, Sheriff, and Does)



251.     Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if

fully set forth herein.

252.     Each Defendant had a duty to intervene when other Defendants were engaging in

unlawful actions in violation of Plaintiffs' constitutional rights.

253.    Defendants OPD, Chief, Sheriff and Does had a duty to intervene in this use of excessive force and seizure of Plaintiffs because they observed and/or had reason to know that excessive force amounting to punishment was being inflicted upon Plaintiffs by Defendants and that Plaintiffs were being unlawfully seized and assaulted without a lawful basis.

254.    In violation of Plaintiffs clearly established constitutionally protected right to be free from punishment and deprivation of life and liberty without due process of law under the Fourth and Fourteenth Amendments to the United States Constitution, Defendants failed to act to prevent the unlawful seizure of Plaintiffs and the use of unnecessary, unreasonable, and excessive force against Plaintiffs.

255.    Defendants being present at the scene, had the time and opportunity to intervene when Plaintiffs were detained for no lawful basis.

256.    In violation of Plaintiffs clearly established right to be free from unlawful detainment, Defendants failed to intervene.

257.    The foregoing conduct by Defendants itself amounted to a constitutional violation of Plaintiffs' rights under the Fourth Amendment to the United States Constitution.

258.    As a direct and proximate result of the Defendants willful violation of Plaintiffs' constitutionally-protected rights, Plaintiffs have suffered and will continue to suffer damages into the future, including, but not limited to physical pain and suffering, bodily injuries, loss of bodily function, mental anguish, severe emotional distress, fright and shock, denial of social pleasures and enjoyment, humiliation or mortification, medical bills and expenses for the past, present and future and other damages properly recoverable under law.

WHEREFORE, Plaintiffs respectfully requests this Court to take jurisdiction of this cause
and the parties to this action and enter an award of damages against all Defendants in their
individual capacity, and to award Plaintiffs their attorneys' fees and costs pursuant to 42 U.S.C.
§1988 and other applicable laws. Plaintiffs reserve the right to amend their claim for punitive
damages in the future, should such a claim become viable.

**COUNT XII**
**42 U.S.C. § 1983- MUNICIPAL LIABILITY-INADEQUATE TRAINING;**
**RATIFICATION**
(Defendants Orlando and OPD)

259.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if
fully set forth herein.

260.    A municipality is liable under 42 U.S.C. §1983 if the alleged violations are
attributable to its own policies, practices, or customs.

261.    Defendants Orlando and OPD had a duty to ensure that its law enforcement
officers complied with the Florida and Federal law.

262.    At all times relevant to this complaint, Defendant Orlando acted with deliberate
indifference to Plaintiffs constitutional rights by maintaining policies, practices, and
customs that condoned and fostered Defendants OPD, Chief, Sheriff, Wing, Farris and
Does conduct.

263.    Specifically, Defendant OPD trains its officers to unlawfully obtain baseless and
fraudulent warrants in order to enter people's homes, unlawfully detain them and
unlawfully keep them detained for unreasonably lengthy periods of time and effectuate
use of excessive force.

264.    Defendant OPD reviewed and investigated the incident herein but did not discipline any of the officers for their conduct herein complained, thereby ratifying and/or approving of their conduct. This provides the quintessential stamp of approval that what they did was proper and in conformity with the Defendants Orlando and OPD's policies.

265.    In the alternative and at all times relevant to this complaint, Defendants Orlando and OPD failed to properly train Defendants Chief, Sheriff, Wing, Farris and Does and failed to supervise and discipline them thereby demonstrating deliberate indifference to Plaintiffs' rights.

266.    Defendant OPD failed to: (a) adequately supervise and train its officers and agents, thereby failing to adequately discourage further constitutional violations on the part of its officers and (b) properly and adequately monitor and discipline its officers.

267.    The need for training of officers on the proper protocol for investigating potential suspects, use of force on non-suspects, and detainment, is so obvious, and the lack of or inadequacy of such training is so likely to result in the violation of constitutional rights, that the policymakers for Defendant Orlando caused Defendants Chief, Sheriff, Wing, Farris and Does to violate Plaintiffs' constitutional rights.

268.    As a result of Defendants Orlando and OPD's willful failure to adequately train and supervise its officers, Plaintiffs were harmed and now seeks compensatory damages in addition to reasonable attorneys' fees.

WHEREFORE, Plaintiffs' respectfully requests this Court to take jurisdiction of this cause and the parties to this action and enter an award of damages against all aforementioned

Defendants in their individual capacity, and to award Plaintiffs their attorneys' fees and costs

pursuant to 42 U.S.C. §1988 and other applicable laws. Plaintiffs reserve the right to amend their

claim for punitive damages in the future, should such a claim become viable.

**COUNT XIII**
**42 U.S.C. § 1983 DEPRIVATION OF RIGHTS**
(Defendant Wing, Farris, Does)

269.     Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if

fully set forth herein.

270.     This is an action for violation of Constitutional rights pursuant to 42 U.S.C.

§1983, against Defendant Wing in her individual capacity.

271.     This is an action for violation of Constitutional rights pursuant to 42 U.S.C.

§1983, against Defendant Farris in his individual capacity.

272.     This is an action for violation of Constitutional rights pursuant to 42 U.S.C.

§1983, against Defendant Does in their individual capacity.

273.     Defendant Wing is sued in her individual capacity wherein at all times material

hereto she was acting with deliberate indifference to the rights and safety of others,

including Plaintiffs.

274.     Defendant Wing while acting under color of state law and by virtue of the

authority vested in her by Defendant OPD, the State or its agencies had actual and/or

constructive notice that Plaintiffs had not engaged in, produced or otherwise disseminated

child pornography with any child including their minor child.

275.     Plaintiffs' injuries, including the alienation of them from their minor child was a

reasonably foreseeable result and a consequence of Defendant Wing's deliberate

68

indifference and reckless disregard of her obligation to provide truthful and accurate
testimony to the Court when obtaining a search warrant.

276.    Defendant Farris failed to adequately supervise Defendant Wing's work to ensure
the accuracy of the contents contained therein as well as the physical safety of Plaintiffs'
from being subjugated to an unwarranted search, seizure and detainment by law
enforcement.

277.    Defendants, Wing, Farris and Does, while acting under color of state law and by
virtue of the authority vested in them by Defendants Orlando and OPD, the State or its
agencies acted in bad faith, with malicious purpose, in a manner exhibiting willful and
wanton disregard of human rights and safety.

278.    Defendants demonstrated reckless and/or deliberate indifference to Plaintiffs'
fundamental and clearly established Constitutional rights and evidenced an intentional
and conscious disregard and indifference to Plaintiffs' safety and welfare as:

    a.    Defendant Wing violated Plaintiffs' constitutional rights by failing to be truthful
       and accurate in her sworn probable cause affidavit for search warrant to Ninth
       Judicial Court Judge Shoemaker or the exercise of reasonable care to prevent
       injury to Plaintiffs;

    b.    Defendant Farris violated Plaintiffs' constitutional rights by failing to adequately
       supervise, review or properly monitor and screen Defendant Wing's affidavit for
       accuracy necessary in the exercise of reasonable care to prevent injury to
       Plaintiffs; and

c. Defendant Wing violated Plaintiffs' constitutional rights by falsifying her testimony in her sworn affidavit for a search warrant.

279. Defendants Wing and Farris' failure to protect Plaintiffs was so grossly incompetent and inadequate as to shock the conscience or to be intolerable to fundamental fairness.

280. Defendants Wing, Farris and Does through their actions or inactions described above, caused Plaintiffs' to be subjected to the deprivation of rights, privileges, and immunities secured by the Constitution and the laws of the United States, including:

a. The right to substantive and procedural due process protected by the Fourteenth Amendment; and

b. The right not to be subjected to cruel, unusual and excessive punishment as guaranteed by the Eighth Amendment.

281. Defendants Wing, Farris and Does knew that Plaintiffs would face a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.

282. As a direct, proximate and foreseeable result of the Constitutional violations and misconduct of the Defendants Wing, Farris and Does, as set forth above, Plaintiffs were irreparably damaged and injured.

283. As a direct, proximate and foreseeable result of the Constitutional violations of Defendants Wing, Farris and Does, Plaintiffs, hereby demands recovery of damages including any and all incurred medical expenses, moving expenses, other expenses

including attorneys' fees for having to litigate frivolous and false claims, pain and

suffering, loss of enjoyment of life, and other damages.

WHEREFORE, Plaintiffs demands judgment against Defendants Wing, Farris and Does for

the damages outlined above, attorneys' fees pursuant to 42 U.S.C. §1988 and such other and

further relief as this Court deems just and proper, and demands a trial by jury of all

claims. Plaintiffs reserve the right to amend their claim for punitive damages in the future,

should such a claim become viable.

### COUNT XIV
### 42 U.S.C. § 1983 PROCEDURAL DUE PROCESS
(Defendants OPD, Orlando, Wing, Farris and Does)

284.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if

fully set forth herein.

285.    Defendants Orlando and OPD, through their agents and employees, and acting

under color of state law, consciously engaged in acts that deprived the Plaintiffs of their

procedural due process rights, in violation of the Fifth and Fourteenth Amendments to the

United States Constitution, as enforced through 42 U.S.C. §1983.

286.    The violation of Plaintiffs' inherent right to due process was carried out as part of

the practice, policy or custom of Defendants OPD and Orlando, which seeks to abrogate

the procedural protections of its residents.

287.    Plaintiffs are law abiding, tax paying residents who were falsely accused by

Defendants OPD, Wing and Farris of child molestation and creating child pornography.

Plaintiffs had a fundamental right and, thus, were entitled to procedural due process

under the United States Constitution.

288.    The failure of the Defendants to provide Plaintiffs with notice of the allegations

against them and an explanation of any evidence it had to support those allegations, as

well as the failure to allow Plaintiffs' the opportunity to respond to those allegations and

present reasons to try and prevent their detainment, search and seizure, resulted in a

complete deprivation of Plaintiffs' due process rights.

289.    Defendants' actions constitute a violation of Plaintiffs' right to be free of adverse

actions, undertaken without notice and a meaningful opportunity to be heard.

290.    As a direct and proximate result of Defendant Wing's unlawful and perjurious

statements in her affidavit for search warrant, Plaintiffs were deprived of their Fifth and

Fourteenth Amendment right to procedural due process, causing Plaintiffs to suffer

injuries and damages, both professionally and personally.

WHEREFORE, Plaintiffs demands judgment against Defendants and requests the following:

a declaratory judgment that the Defendants conduct violated the Constitutional rights of the

Plaintiffs as enforced through 42 U.S.C. §1983; an award of compensatory damages for

deprivation of their rights, personal indignity, dishonor, humiliation, damage to their professional

and personal reputation, mental anguish and distress, an award of lost wages and other lost

benefits, an award of prejudgment interest, an award of attorneys' fees and costs and such

additional or alternative relief as the Court may deem just and proper. Plaintiffs reserve the right

to amend their claim for punitive damages in the future, should such a claim become viable.

### COUNT XV
### 42 U.S.C. § 1983 PROCEDURAL DUE PROCESS
(Defendants DCF, Anderson, Saunders, Thomas, Dion, Teany And Does)

291.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if

fully set forth herein.

292.    Defendants, through their agents and employees, and acting under color of state law, consciously engaged in acts that deprived the Plaintiffs of their procedural due process rights, in violation of the Fifth and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. §1983.

293.    The violation of Plaintiffs' inherent right to due process was carried out as part of the practice, policy or custom of Defendant DCF, which seeks to abrogate the procedural protections of its residents.

294.    Plaintiffs are law abiding, tax paying residents who were falsely accused by Defendants OPD, Wing and Farris of child molestation and creating child pornography. Plaintiffs had a fundamental right and, thus, was entitled to procedural due process under the United States Constitution.

295.    The failure of the Defendants to provide Plaintiffs with notice of the allegations against them and an explanation of any evidence it had to support those allegations, prior to removal of Plaintiffs' minor child from their custody, as well as the failure to allow Plaintiffs' the opportunity to respond to those allegations and present reasons to prevent the removal of Plaintiffs' 18-month-old minor child resulted in a complete deprivation of Plaintiffs' due process rights.

296.    Defendants' actions constitute a violation of Plaintiffs' right to be free of adverse actions, undertaken without notice and a meaningful opportunity to be heard.

297.    As a direct and proximate result of Defendants conduct Plaintiffs were deprived of their Fifth and Fourteenth Amendment right to procedural due process, causing Plaintiffs to suffer injuries and damages, both professionally and personally.

WHEREFORE, Plaintiffs demands judgment against Defendants and requests the following:
a declaratory judgment that the Defendants DCF, Anderson, Saunders, Thomas, Dion, Teany and
Does conduct violated the Constitutional rights of the Plaintiffs, as enforced through 42 U.S.C.
§1983, an award of compensatory damages for deprivation of their rights, personal indignity,
dishonor, humiliation, damage to their professional and personal reputation, mental anguish and
distress, an award of lost wages and other lost benefits, an award of prejudgment interest, an
award of attorneys' fees and costs and such additional or alternative relief as the Court may deem
just and proper. Plaintiffs reserve the right to amend their claim for punitive damages in the
future, should such a claim become viable.

**COUNT XVI**
**42 U.S.C. § 1983 FALSE IMPRISONMENT**
(Defendants Orlando, OPD, Chief, Sheriff, Wing, Farris and Does)



298.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if
fully set forth herein.

299.    Defendant OPD, through its agents and employees, and acting under color of state
law, unlawfully seized Plaintiffs by causing Plaintiffs to be detained for several hours on
August 6, 2020, by countless officers and SWAT team members acting within the scope
of their employment with Defendant OPD, even though they possessed, false and

knowingly fraudulent, documentation purporting their justification or authority for said

detention and deprived Plaintiffs of their rights under the Fourth Amendment of

the United States Constitution in violation of 42 U.S.C. §1983.

300.    On August 6, 2020, Plaintiffs were detained by the Defendant Orlando, by and

through Defendant OPD based on representations made by Defendant Wing in her sworn

probable cause affidavit.

301.    At the time Plaintiffs were detained and their persons and property searched and

seized by Defendants OPD and Sheriff, Defendant Wing alleged, under oath, in her

affidavit that:

  a.  Images/videos existed and were viewed by law enforcement depicting
      pornography, of a real child (not one computer generated) and that the child was
      under the age of 18; and

  b.  That the child depicted in the pornographic images/videos resided at Plaintiffs'
      residence and that the images/videos were created by the minor Plaintiffs' parents
      with a 99.999% certainty.

302.    In fact, NONE of these allegation were true. There were never any images/videos

that law enforcement ever viewed or inspected showing child pornography because none

ever existed. The evidence attached to Defendant Wing's sworn affidavit was just a

single chat conversation, devoid of any images/videos. While the conversation was

disturbing it was not illegal and thusly could not be the basis to obtain a search warrant.

These misrepresentations made were material and were knowingly and intentionally

falsely made by Defendant Wing in order to perpetuate the search warrant and detention

of Plaintiffs. Subsequently NO charges were ever filed against Plaintiffs regarding this

alleged, unconscionable, crime.

303.    Title 42 U.S.C. §1983 states, *inter alia:*

"Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

304.     Plaintiffs had a Fourth Amendment right to be free from unreasonable and illegal

seizures and could not have been searched, seized or detained absent probable cause that

they had committed or were committing a crime.

305.     Under the totality of the circumstances, there was no probable cause, or even any

arguable probable cause, to believe Plaintiffs had committed or was committing a crime.

306.     Because the representations made in Defendant Wing's probable cause affidavit

were knowingly false, the search warrant, seizure and detention of Plaintiffs were not

based on a valid process of the Court.

307.     The actions of Defendant Wing were taken in bad faith or with malicious purpose

or with wanton, reckless and willful disregard for both Plaintiffs rights and for the truth.

Moreover, Defendant Wing had specific, subjective knowledge that Plaintiffs had not

engaged in the conduct alleged in her affidavit. Despite this knowledge, Defendant Wing

did purposely cause Plaintiffs search, seizure and detainment to be effectuated.

308.     Freedom from unreasonable search and seizure is and was known by Defendant

Wing, and the other officers present at the time of these actions, to be a clearly

established right provided by the Fourth and Fourteenth Amendment to the United States

Constitution. By the foregoing actions, Defendant Wing knowingly violated Plaintiffs'

clearly established right to be free from unreasonable search and seizure of their property,

person and from deprivation of liberty without due process of law.

309.    Any reasonable officer in the place of Defendant Wing would have known the
foregoing conduct, perpetrating search, seizure and detainment based on a false probable
cause affidavit violated Plaintiffs' clearly established rights.

310.    Defendant Wing, acting under color of state law, subjected Plaintiffs, U.S.
citizens, to deprivation of their constitutional rights, and thereby subjected herself to a
damage recovery under 42 U.S.C. §1983.

311.    Defendants' actions, including holding Plaintiffs Christian and Laurie against
their will in the front of their home like arrestees; seizing persons and property including
their electronics, cellular phones, computer, and vehicle were done for the purpose of
confining Plaintiffs and constitute an unlawful seizure.

312.    Defendants' actions, including removing Plaintiffs' 18-month-old minor child
against her will and away from her doting parents like an arrestee; were done for the
purpose of confining the minor child Plaintiff and therefore constitutes an unlawful
seizure.

313.    Plaintiffs were, at all times pertinent, aware of this unlawful seizure and
detainment. Defendants lacked a truthful and accurate search warrant when it committed
this unlawful seizure of Plaintiffs. Further, Defendants were aware that it committed this
unlawful act.

314.    As a direct and proximate result of the false imprisonment endured by Plaintiffs
for numerous hours at the hands of Defendants, Plaintiffs were deprived of their Fourth
Amendment right to be free from an unlawful seizure, causing Plaintiffs to suffer injuries
and damages, both professionally and personally.

WHEREFORE, Plaintiffs demand judgment against Defendants and requests the following: a declaratory judgment that the Defendants conduct violated the Constitutional rights of the Plaintiffs, as enforced through 42 U.S.C. §1983, an award of compensatory damages for deprivation of their rights, personal indignity, dishonor, humiliation, damage to their professional and personal reputation, mental anguish and distress, an award of lost wages and other lost benefits, an award of prejudgment interest, an award of attorney's fees and costs and such additional or alternative relief as the court may deem just and proper. Plaintiffs reserve the right to amend their claim for punitive damages in the future, should such a claim become viable.

**COUNT XVII**
**42 U.S.C. §1983 Fourth Amendment Rights**
(Defendants OPD, Orlando, Wing, Farris and Does)

315.     Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if fully set forth herein.

316.     Defendants Wing, Orlando, Farris, and Does, officers and/or agents of Defendants Orlando and OPD, did, under color of law, deprive Plaintiffs of their Fourth Amendment right to be secure in his home, and to be free from unreasonable search and seizure in violation of 42 U.S.C. §1983.

317.     Defendant Wing violated Plaintiffs' rights when she executed a warrant based on an affidavit that was knowingly and intentionally false and/or was executed with reckless disregard for the truth, so as to render Defendant Wing and the issuing agency belief in probable cause to be unreasonable.

318.     Upon information and belief, there was no fact check review of the affidavit prior to its submission to the Court by Defendant Farris, or any other officer.

319.     Defendants Orlando and OPD, by and through its officers, agents, employees, and

representatives, failed to verify the veracity or accuracy of the information contained in

Defendant Wing's affidavit.

320.     The statements made by Defendant Wing in her search warrant affidavit were

knowingly false and were directly material to causing Plaintiffs' seizure, search and

detainment.

321.     Defendants Wing, Farris, Does, OPD and Orlando knew or should have known, as

reasonable, well-trained officers would, that the search warrant was illegal because of the

false affidavit, despite the judge's signature on the warrant.

322.     Where an officer knows, or has reason to know, that they have materially misled a

magistrate on the basis for a finding of probable cause, the shield of qualified immunity is

lost, and the officer is subject to 42 U.S.C. §1983.

323.     Further, Defendants Wing, Farris and Does are not entitled to immunity pursuant

to Section 768.28(9), Fla. Stat., which provides:

> "No officer, employee, or agent of the state or of any of its subdivisions shall be held
> personally liable in tort or named as a party defendant in any action for any injury or
> damage suffered as a result of any act, event, or omission of action in the scope of her
> or his employment or function, unless such officer, employee, or agent acted in bad
> faith or with malicious purpose or in a manner exhibiting wanton and willful
> disregard of human rights, safety, or property... The exclusive remedy for injury or
> damage suffered as a result of an act, event, or omission of an officer, employee, or
> agent of the state or any of its subdivisions or constitutional officers shall be by action
> against the governmental entity, or the head of such entity in her or his official
> capacity, or the constitutional officer of which the officer, employee, or agent is an
> employee, unless such act or omission was committed in bad faith or with malicious
> purpose or in a manner exhibiting wanton and willful disregard of human rights,
> safety, or property."

324.    Defendant Wing acted with bad faith, maliciously, wantonly, recklessly, and in a manner exhibiting wanton and willful disregard of persons and property when she filed her knowingly false affidavit asserting that law enforcement had obtained and viewed images/videos of pornography, depicting a real child, the child was under 18 and that the images/videos were created and disseminated by the Plaintiffs. Therefore, overcoming Defendant Wing, Farris or any other Defendant's claim for statutory sovereign immunity.

325.    Defendant Wing's conduct by intentionally falsifying statements in her affidavit were so outrageous in character, and so extreme in degree, they went beyond all possible bounds of decency.

326.    Defendant Wing's conduct was so outrageous in character, and so extreme in degree, it is undisputed that any reasonable person would regard it as atrocious and utterly intolerable in a civilized community.

327.    Because Defendants intentionally executed a false search warrant on Plaintiffs at their home, the search, seizure and detention of Plaintiffs was clearly unreasonable and a violation of Plaintiffs' Fourth Amendment rights.

328.    Plaintiffs suffered emotional and mental pain and suffering and continues to suffer from this pain and suffering to this day, including embarrassment, humiliation, anxiety, disgrace, injury to their feelings and reputation, loss of enjoyment of life, and all of these said injuries are permanent and/or continuing in nature.

329.    Plaintiffs are further entitled to attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, Plaintiffs demands judgment and compensatory damages against Defendants, as well as attorneys' fees and costs, costs of litigating this action and hereby

demands a jury trial of all issues so triable. Plaintiffs reserve the right to amend their claim for punitive damages in the future, should such a claim become viable.

### COUNT XVIII
### LOSS OF CONSORTIUM
(All Defendants)



330.  Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if fully set forth herein.

331.  As a direct and proximate result of the Defendants, specifically Defendant Wing, actions through its employees and agents, acting in the course and scope of their duties, Plaintiffs have and did suffer the loss of companionship with their minor child during a critical part of her childhood including services, consortium, care and comfort of her society.

332.  As a direct and proximate result of the Defendant DCF's, specifically Defendants Anderson, Saunders Thomas, Dion, Teany and Does, actions through its employees and agents, acting in the course and scope of their duties, Plaintiffs have and did suffer the loss of companionship with their minor child during a critical part of her childhood including services, consortium and care and comfort of her society.

WHEREFORE, for the foregoing reasons, Plaintiffs requests this Court to enter Judgment against Defendants, in their official capacity, for all compensable damages, costs of this action, and for such other relief as this Court deems just and proper under the circumstances. Plaintiffs

reserve the right to amend their claim for punitive damages in the future, should such a claim become viable.

## COUNT XIX
## DEFAMATION
(Defendants Wing, OPD, Chief, Sheriff, Orlando and Does)

333.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if fully set forth herein.

334.    On August 4, 2020, Defendant Wing, in her sworn affidavit to Ninth Judicial Circuit Court Judge Shoemaker published false statements about Plaintiffs in writing accusing Plaintiffs' of engaging in child molestation and pornography, despite no evidence (images/videos) supporting that no such act was ever committed or occurred.

335.    Upon information and belief, on August 6, 2020, Defendants Wing, OPD and Does made false statements about Plaintiffs' orally to third parties, including neighbors and family members of Plaintiffs', informing them that Plaintiffs were child molesters, pedophiles and that Plaintiffs had created and disseminated child pornography.[25]

336.    The specific statements published by Defendant Wing include, but are not limited to the following:

   a.   Defendant Wing had images/videos she and/or other law enforcement viewed that showed pornography, of a real child, who was under 18, created by Plaintiffs';

   b.   Upon information and belief, Defendant Wing and Does told other members of the OPD these same false statements about Plaintiffs;

---

[25] Exhibit "F"

c.  Upon information and belief, Defendant Wing, OPD and Does told Defendant

DCF and its employees (including Saunders, Anderson, Thomas, Dion, Teany and

Does) these same false statements about Plaintiffs engaging in child molestation

and pornography of their own minor child; and

d.  Upon information and belief, Defendant Wing, OPD and Does told Plaintiffs'

neighbors and family members these same false statements about Plaintiffs

engaging in child molestation and made child pornography.

337.    The above statements were fabricated, false and malicious and specifically

pertained to Plaintiffs. Defendant OPD, through its employees and agents, including, but

not limited to Defendants Wing, Farris and Does, made these statements without

reasonable care for the truth of their statements.

338.    The above allegations constitute liable per se and slander per se in that they

accuse Plaintiffs of a felonious crime and conduct that they did not perform or engage in

and caused their reputation in the community to suffer irreparable damage. In addition,

Plaintiffs were forced to move from their home and lost their good reputations as a

penalty of Defendant OPD, through its employees and agents, including, but not limited

to Defendants Wing, Farris and Does, false statements.

339.    The above statements made by Defendant OPD, through its employees and

agents, was done in bad faith and was false. Defendant Wing knew the statements were

false when made. Furthermore, there was no good motive by Defendant OPD, through its

employees and agents, for the publication of the above allegations considering no such

evidence (images/videos) ever existed that supported child pornography was created or
disseminated by Plaintiffs.

340.    The above statements had a defamatory effect on Plaintiffs' reputation, and
specifically their reputation as loving parents was irreparably damaged.

341.    The defamatory statements were published to third parties, including, but not
limited to the Ninth Circuit Court Judge Shoemaker, Defendants DCF, Anderson,
Saunders, Thomas, Dion, Teany, Does, Plaintiffs' neighbors and family members.

342.    The statements were made by Defendant OPD, through its employees and agents,
with malice, and were false intentional, willful and malicious.

343.    As a result of the above-described defamation, Defendant OPD's actions, through
its employees and agents, for which Defendant OPD and Orlando are responsible,
Plaintiffs' have suffered damages, which include physical inconvenience, physical
discomfort and pain, physical suffering, loss of time, loss of income, loss of personal
items, mental suffering, embarrassment, humiliation, disgrace and injury to their feelings
and reputation the physical and emotional aspects of which are continuing to this day and
are likely to continue in the future.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully requests this Court enter
judgment against Defendants for damages and for fees costs in the prosecution of this matter and
such other and further relief as this Court deems just and proper under the circumstances.
Plaintiffs reserve the right to amend their claim for punitive damages in the future, should such a
claim become viable.

**COUNT XX**

## SLANDER PER SE
### (Defendants OPD, Chief, Orlando, Wing and Does)

344.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if fully set forth herein.

345.    Defendant OPD, through its agents and employees, and acting under color of state law, published to members of the public false statements, in which they accused Plaintiffs of engaging in child molestation and producing child pornography. Defendants did so with reckless disregard for the truth of these statements and with an unreasonable failure to determine whether the statements were true or false.

346.    Defendant Wing published the defamatory matter with actual malice and with wrongful and willful intent to injure Plaintiffs.

347.    Defendant Wing's accusations and allegations injuriously affected the profession, business, and life of Plaintiffs subjecting them to hatred, distrust, ridicule, and disgrace, and as such are actionable *per se*.

348.    As a direct and proximate result of Defendant Wing's false and malicious actions and statements, Plaintiffs have been damaged and defamed and have been held in ridicule and disgrace, were caused to suffer immeasurable embarrassment, humiliation, and outrage, were forced to endure questions concerning the subject matter of the defamations by friends, family, colleagues and complete strangers due to the publicity and outrageousness of the defamations, were burdened by worry and concern, were caused to lose trust and respect within their community because of the public outreach of the defamations, forced Plaintiffs to seek a new residence outside of the community, suffered damage to both their reputations and names and suffered mental anguish, emotional stress and were otherwise hurt, injured and damaged.

349.     Defendants Wing and Does primary purpose in making these statements to other third parties was to indulge in ill will, hostility and intent to harm Plaintiffs. Defendants knew no such evidence existed to support their claims that Plaintiffs were child molesters who created child pornography.

350.     Notwithstanding Defendants OPD, Chief, Wing, Farris, DCF and Does comprehensive and repetitive investigations, the statements published by Defendants have been proven to be false. Additionally, the Orange County State Attorney's Office refused to bring any criminal charges against Plaintiffs after a thorough investigation failed to discover truth to these outlandish allegations and another individual in Indiana was alleged to have been arrested.

WHEREFORE, the Plaintiffs demand judgment against Defendants and requests the following: an award of compensatory damages for personal indignity, dishonor, humiliation, damage to their professional and personal reputation, mental anguish and distress, an award of lost benefits, an award of prejudgment interest and such additional or alternative relief as the Court may deem just and proper. Plaintiffs reserve the right to amend their claim for punitive damages in the future, should such a claim become viable.

## COUNT XXI
## CONVERSION
(Defendants OPD and Orlando)

351.     Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if fully set forth herein.

352.     On August 6, 2020, Defendant OPD converted, and continues to convert, various items including, but not limited to documents, personal items, including but not limited to

a legal firearm, computers, cell phones and other valuable documents, and other items

that have a value of at least Seventy-Five Thousand and 00/100 Dollars ($75,000.00).

353.    Defendant OPD converted, and continues to convert, items that were not listed on

the search warrant inventory list and attempted to have Plaintiffs' sign a document,

indemnifying Defendant OPD from harm, in order to retrieve the items that were illegally

seized from Plaintiffs' home (Plaintiffs never signed any such form nor did they receive

the items that were seized by OPD).[26]

WHEREFORE, Plaintiffs demands judgment against Defendant OPD, in their official

capacity, for compensatory damages, costs, plus any other relief the Court deems just and proper.

Plaintiffs reserve the right to amend their claim for punitive damages in the future, should such a

claim become viable.

## COUNT XXII
## INVERSE CONDEMNATION-TEMPORARY TAKINGS
(Defendants Orlando and OPD)

354.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if

fully set forth herein.

355.    Inverse condemnation is a cause of action against a governmental Defendant to

recover the value of the property which has been taken by the governmental Defendant,

even though no formal exercise of the power of eminent domain has been attempted by

the taking agency.

356.    An inverse condemnation claim is brought by a private property owner when the

government's actions have resulted in a taking of the property without full compensation.

---

[26] Exhibit "D"

357.    The types of takings that can result in an inverse condemnation claim include certain physical invasions of property.

358.    Plaintiffs asserts that Defendants Orlando and OPD took property from their residence on August 6, 2020, that has not been returned and which full compensation has not been given.

359.    Additionally, Plaintiffs asserts that in addition to property illegally seized that was not returned, Defendants Orlando and OPD physically invaded Plaintiffs' property illegally and seized several items that were not accounted for on the search warrant inventory list and were not returned.

360.    Plaintiffs are a private property owner who hereby brings this claim against governmental Defendants Orlando and OPD.

361.    Plaintiffs assert that no formal exercise of the power of eminent domain has been, or ever was, attempted by governmental Defendants Orlando and OPD.

362.    This taking of Plaintiffs' property by Defendants Orlando and OPD was in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 9, and Article X, Section 6(A) of the Florida Constitution.

363.    Plaintiffs' damages have not been shared by the public and are individual and specific to Plaintiffs.

364.    Defendants Orlando and OPD's actions therefore have resulted into a taking of Plaintiffs' property and Plaintiffs can no longer have any beneficial use of their property which was illegally seized and taken by Defendants.

365.    Plaintiffs' have not been compensated for the taking of their property.

366.    As a result of the aforementioned actions and omissions. Defendants OPD and

Orlando have taken Plaintiffs' property and will continue to do so in the future, without

paying just compensation.

WHEREFORE, Plaintiffs demands judgment against Defendants for the full value of the

property taken, compensatory damages, costs, plus any other relief the Court deems just and

proper. Plaintiffs reserve the right to amend their claim for punitive damages in the future,

should such a claim become viable.

## COUNT XXIII
### NEGLIGENCE LIABILITY PURSUANT TO 768. 28
(Defendants Orlando and OPD)

367.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if

fully set forth herein.

368.    Defendants owed a special duty of care to Plaintiffs where they, as law

enforcement officers, detained Plaintiffs and subjected them to danger in their

detainment. Defendants were directly involved in circumstances which placed Plaintiffs

within a "zone of risk" by creating or permitting dangers to exist or otherwise subjecting

them to danger.

369.    Defendants OPD, Wing, Chief, Sheriff and Does were negligent and breached

their duty when they wrongfully seized and injured Plaintiffs and failed to act to protect

Plaintiffs.

370.    Plaintiffs are in lawful possession of the subject real property which was damaged

due to the acts or omissions of Defendants.

371.    As a result of Defendants' negligence, Plaintiffs were severely injured.

372.    Defendants OPD and Orlando intentionally or negligently caused the damages to Plaintiffs' real and personal property by failing to ensuring that their officers/employees were following the law.

373.    Once Defendants undertook the responsibility of illegally raiding and seizing items from Plaintiffs' home they assumed the duty to do so with reasonable care.

374.    Defendants have a duty of care to reasonably maintain Plaintiffs' property as not to injure the subject property and failed to do so with any reasonable care.

375.    The conduct of Defendants created a foreseeable zone of risk of injury to Plaintiffs and the subject real and personal property.

376.    Defendants breached this duty by failing to reasonably monitor and control their officers/employees, warn or failing to inform surrounding property owners including Plaintiffs that their real property was a likelihood of illegal search and seizure.

377.    It was reasonably foreseeable to Defendants that an illegal search warrant, obtained by false pretenses, would cause harm and damage to Plaintiffs' real and personal property.

378.    Defendants intentionally or negligently caused Plaintiffs' home to be search, their person be seized and detained and Plaintiffs' property to be seized and failed to take any steps to warn Plaintiffs of the imminent search, seizure and taking.

379.    Plaintiffs' land, real and personal property was damaged despite reasonable notice to Defendants that Plaintiffs land was under extensive renovations as Defendant OPD had

been surveilling Plaintiffs' property prior to the illegal raid, search, seizure and

detainment as indicated in Defendant Wing's sworn affidavit.[27]

 

380.    Plaintiffs' have incurred damages to their land as a result of Defendants'

negligence, so much so that Plaintiffs were forced to sell their land as a result of

Defendants' negligence.

381.    Defendants' negligence is the legal cause of the damage to the land and personal

property of Plaintiffs.

382.    Plaintiffs' have suffered damages, and Defendants Orlando and OPD are liable for

damages resulting from the negligence of its officers/employees.

383.    Without Defendants' negligence, as well as the Defendant OPD's failure to warn,

the injury suffered by Plaintiffs would not have occurred.

---

[27] Exhibit "B" pg. 15

384.     Defendants conduct, as described above, effected a waiver of its sovereign

immunity under the Florida Tort Claims Act and Section 768.28, F.S., in that the failure

is an operational decision or activity for which Defendants are not immune from suit.

385.     Further, Defendants duty of care is not barred by the public duty doctrine because

Defendants were not simply attempting to enforce a law and/or engaged in protection of

the general public.

386.     Alternatively, Florida law has abrogated the rule that a government agent cannot

be held liable unless the duty which was breached by the employee was a duty owed to

the injured party as distinguished from a duty owed to the public; the law now is that the

agent is liable for a wrongful act or omission under circumstances in which agent, if a

private person, would be liable in accordance with the general laws of this state.

387.     A special tort duty arose as numerous and countless law enforcement officers

were directly involved in a situation that placed Plaintiffs in a zone of danger, specifically

bringing an armed SWAT team to Plaintiffs' home and having numerous guns drawn and

pointed at Plaintiffs' heads.

 

388.     Defendants acted within the scope of their employment but in bad faith, with a

malicious purpose, or in a manner exhibiting wanton or willful disregard and are thus

liable to Plaintiffs.

389.      Alternatively, Defendants Wing, OPD and Does acted within their scope of

employment and in bad faith, with a malicious purpose, or in a manner exhibiting wanton

or willful disregard and Defendants Orlando and OPD are thusly liable to Plaintiffs for

the actions of its employees.

390.     If a Plaintiff has suffered a physical impact from external force, Florida law

permits recovery for negligent infliction of emotional distress stemming from the incident

during which the impact occurred.

391.     Here, Plaintiffs have suffered severe mental anguish, emotional distress, fright,

shock, humiliation, fear of police officers and more as a result of Defendants OPD, Wing,

Chief, Sheriff and Does actions. Plaintiffs suffered physical impact and therefore is

entitled to recovery for their emotional distress.

392.     As a direct and proximate result of Defendants' negligent conduct, for which

Defendant Orlando is liable, Plaintiffs have suffered and will suffer physical pain and

suffering, bodily injuries, loss of bodily function, mental anguish, severe emotional

distress, fright and shock, denial of social pleasures and enjoyment, humiliation or

mortification, medical bills and expenses for the past, present and future and other

damages properly recoverable under law.

WHEREFORE, Plaintiffs demands judgement against Defendants for all damages allowed

by law including compensatory damages and costs, and for such other relief this Court deems

appropriate and just. Plaintiffs reserve the right to amend their claim for punitive damages in the future, should such a claim become viable.

**COUNT XXIV**
**NEGLIGENCE**
(Defendants DCF)

393.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if fully set forth herein.

394.    This count sets forth a claim against Defendant DCF for common law negligence. Defendant DCF knew or should have known that Plaintiffs were within a zone of risk related to contact with its investigators, agents, or employees.

395.    Defendant DCF owed a duty of care to Plaintiffs due to the nature of the relationship between Plaintiffs and Defendant DCF and/or Defendant DCF had a special relationship with Plaintiffs and, consequently, a duty of care was attendant thereto. Alternatively, legal duties devolved upon Defendant DCF because Plaintiffs were in the foreseeable zone of risk to be harmed by the actions thereof.

396.    Defendant DCF further breached its duty to ensure that proper decisions are made regarding investigations of child abuse, molestation and pornography and/or to properly investigate the circumstances of alleged criminal and/or tortious activity including child molestation and pornography.

397.    The actions of Defendant DCF complained of herein were "operational" functions, i.e., functions that were not necessary to or inherent in policymaking or planning, that merely reflected secondary decisions as to how policies or plans were to be implemented.

398.    As a direct and proximate cause of Defendant DCF's actions, Plaintiffs have been

damaged, which damages include mental anguish, pain and suffering, bodily injury, loss

of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost

opportunities, lost wages, and the loss of other emoluments. These damages have

occurred at present, in the past and will most likely occur in the future. Defendant is

jointly and severally liable to Plaintiffs.

WHEREFORE, Plaintiffs demands judgement against Defendant for all damages allowed by

law including compensatory damages and costs, and for such other relief this Court deems

appropriate and just. Plaintiffs reserve the right to amend their claim for punitive damages in the

future, should such a claim become viable.

## COUNT XXV
## NEGLIGENCE-OUTRAGEOUS CONDUCT
(Defendant Wing)



399.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if

fully set forth herein.

400.    This count is for a cause of action against Defendant Wing individually and in her

official capacity as an officer with Defendants Orlando and OPD.

401.    Defendant Wing failed to use due care when she knowingly and intentionally
made false statements of fact in her sworn affidavit on August 4, 2020, to Ninth Judicial
Circuit Court Judge Shoemaker.

402.    Plaintiffs' injuries are a direct and proximate result of the act of Defendant Wing
which occurred in the scope of her employment or function, and Defendant's actions
were in bad faith and/or with malicious purpose or in a manner exhibiting wanton and
willful disregard of human rights, safety, or property.

WHEREFORE, Plaintiffs demand judgement for damages against Defendant Wing, and
together with the costs of this civil action, and demands trial by jury on all issues so triable, and
such other relief as this Court deem just and appropriate. Plaintiffs reserve the right to amend
their claim for punitive damages in the future, should such a claim become viable.

### COUNT XXVI
### NEGLIGENT HIRING, RETENTION AND SUPERVISION
(Defendants Orlando, OPD, Chief and Sheriff)

403.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if
fully set forth herein.

404.    Defendants, through its agents and employees, and acting under color of state law,
were negligent in hiring, retaining, and supervising Defendants Wing, Farris and Does
who were unfit to utilize, maintain, and monitor programs and technology installed by
Defendant OPD and Orlando when they formed the ICAC task force in 1998.

405.    The actions of Defendant Orlando outlined herein do not constitute any
policymaking functions of Defendant Orlando.

406.    Defendant Orlando employed police officers that were involved in this case,
through their agency Defendant OPD.

407.    Defendant Orlando is liable for the acts of their agents and employees including
Defendant Chief, Wing Farris, Sheriff, Does and other officers, and/or servants.

408.    That at all times relevant hereto, Defendants Wing, Farris and Does were
employed by Defendant Orlando and/or Sheriff, located in Orange County, Florida and at
all times material hereto, unless otherwise specified, Defendants Wing, Farris and Does
acted within the course and scope of their employment as a police officers with
Defendant Orlando.

409.    Defendant Orlando delegated statutory and Constitutional duties to Defendant
OPD and Sheriff through their agents, employees, and servants. In delegating these
duties, Defendant Orlando knew that its employees would be interacting with the public
of which Plaintiffs are a member. Defendant Orlando had a duty to supervise their
employees' use of this delegated authority as it pertains to the public, and more
specifically, the Plaintiffs.

410.    Defendant Orlando had a duty to supervise the conduct of its employees
surrounding the preparations and investigations made by his employees. Defendant
Orlando, OPD and Sheriff had a duty to insure a reasonable preparation and investigation
into the facts and circumstances surrounding the execution of a search warrant, including
entry into a home where civilians, such as Plaintiffs, were present.

411.    Defendant Chief and Sheriff had actual or apparent final authority on behalf of
Defendant Orlando as to all personnel matters, including the hiring, firing, and

supervision of employees. As such the Defendants had a duty to use reasonable care to
ensure that all employees were fit for their positions and able to perform the job duties
that they were hired to do, so as to prevent their employees from creating harm to
members of the public or to other employees of Defendant Orlando.

412.    At some point during Defendant Wing's investigation of Plaintiffs, the
investigation was supported by Defendant's supervisor Defendant Farris, who also signed
Defendant Wing's perjurious and false sworn affidavit for search warrant.[28]

413.    The allegations made against Plaintiffs, as described herein, came directly from
Defendant Wing.

414.    At the time Defendant Wing was hired by Defendant OPD, in the exercise of
reasonable care, Defendant OPD should have known that Defendant Wing had falsified
her statements in her sworn affidavit as it was obvious on the face of the affidavit that no
pornography by any resident within the jurisdiction of Defendant OPD or Orlando had
occurred.

415.    During the course of Defendant Wing's employment, Defendants Orlando, OPD,
Chief and Farris knew or, in the exercise of reasonable care should have known that
Defendant Wing had provided false statements in her sworn affidavit for search warrant
to the Ninth Judicial Circuit Court. Defendants OPD, Chief and Farris in failing to
properly supervise Defendant Wing left her in the position to cause further harm to
Plaintiffs.

416.    Defendants OPD, Chief and Farris placed Defendant Wing in a position where
she was in charge of investigating crimes of sexually related or internet-based and had the

---

[28] Exhibit "B"

authority to obtain warrants related to such crimes. Defendants failed to adequately supervise Defendant Wing while she was in this position and failed to ensure that Defendant Wing was equipped to meet her job duties and accurately supervise her.

417.    Defendants Orlando, OPD, Chief, and Farris knew or, in the exercise of reasonable care should have known that Defendant Wing was unfit to provide testimony accurately and honestly in her affidavit and failed to properly supervise the contents of her affidavit and technology used to corroborate her statements in her affidavit.

418.    Defendants Farris, Chief and OPD were aware that they were in superior positions and failed to take the necessary steps to prevent harm from the unfitness of their employee, Defendant Wing.

419.    Defendants Chief and OPD negligently hired, retained and supervised Defendant Wing and Farris, who were unfit to accurately implement and maintain proper measures adequately to ensure that such detrimental errors did not occurred.

420.    As the direct and proximate cause of Defendants Orlando and OPD's negligent hiring, retention and supervision, Plaintiffs have suffered injuries and damages, both professionally and personally.

421.    Defendants Orlando and OPD, through its agents and employees, and acting under color of state law, were negligent in supervising its employees by instructing its employees, specifically Defendant Wing and Farris, to commit criminal activity by falsifying sworn affidavits to the Court.

422.    Defendants Orlando and OPD knew, or in the exercise of reasonable care, should have known, that their officers, acting within the course and scope of their employment,

committed the criminal acts of perjury, falsifying statements in a sworn affidavit, false

detainment and imprisonment.

423.    Defendants Orlando and OPD failed to use reasonable means and due care when

supervising its employees, and as a direct result, an improper and unnecessary search,

seizure and detainment was executed and due care was not exercised in providing for the

safety of Plaintiffs herein.

424.    Defendants OPD and Orlando, had a duty to properly train its officers to establish

and enforce reasonable and appropriate procedures for the interaction between officers

and persons they come into contact with in obtaining legal search warrants and/or during

the execution of a search warrant for sexual based crimes.

425.    Additionally, Defendants Orlando and OPD, had a duty to properly train its

officers on the proper use of force.

426.    The conduct of the Defendants Orlando and OPD fell grossly below the standard

of care required with respect to maintaining their police force, and such conduct

constitutes negligence.

WHEREFORE, Plaintiffs demand judgment against Defendants and requests the following:

an award of compensatory damages for personal indignity, dishonor, humiliation, damage to her

professional and personal reputation, mental anguish and distress, an award of lost benefits, an

award of prejudgment interest and such additional or alternative relief as the Court may deem

just and proper. Plaintiffs reserve the right to amend their claim for punitive damages in the

future, should such a claim become viable.

## COUNT XXVII

### NEGLIGENT HIRING RETENTION AND SUPERVISION
(Defendant DCF)

427.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if
fully set forth herein.

428.    Defendant DCF, through its agents and employees, and acting under color of state
law, were negligent in hiring, retaining, and supervising Defendants Anderson, Saunders,
Thomas, Dion, Teany and Does fit to utilize, maintain, and monitor programs and
technology installed by Defendant DCF.

429.    Defendant DCF had actual or apparent final authority on behalf of the State of
Florida as to all personnel matters, including the hiring, firing, and supervision of
employees. As such the Defendant had a duty to use reasonable care to ensure that all
employees of DCF are fit for their positions and able to perform the job duties that they
were hired to do, so as to prevent his employees from creating harm to members of the
public or to other employees within DCF.

430.    Defendant DCF's employees/agents were called by Defendant OPD and/or Sheriff
on August 6, 2020 in relation to a search warrant being executed on Plaintiffs' residence.

431.    The allegations made against Plaintiffs, as described herein, came directly from
Defendant Wing's sworn affidavit for search warrant.

432.    Defendant DCF, in the exercise of reasonable care, should have known that
Defendant Wing had falsified her statements in her sworn affidavit as it was known on
the face of the affidavit there was never any evidence (images/videos) depicting child
molestation or pornography by any resident within the jurisdiction of Defendant DCF.

433.    During the course of its investigation, Defendant DCF knew or, in the exercise of
reasonable care should have known, that Defendant Wing had provided false statements

in her sworn affidavit for search warrant to the Ninth Judicial Circuit Court. However,

Defendant DCF and its agents/employees failed to do their own independent

investigation and blindly believed the statements advanced by Defendants causing harm

to Plaintiffs.

434.    Defendant DCF placed Defendants Anderson, Saunders, Thomas, Dion, Teany

and Does in positions where they were in charge of investigating crimes of a sexual

nature against children. Defendant DCF failed to adequately supervise Defendants while

they were in their position and failed to ensure that Defendants were equipped to meet

their job duties.

435.    Defendant DCF knew or, in the exercise of reasonable care should have known,

that Defendants Anderson, Saunders, Thomas, Dion, Teany and Does were unfit to

investigate the claims advance and independently and failed to properly supervise their

agents/employees during their involvement with Plaintiffs' matter.

436.    Defendant DCF was aware that it was in superior positions and failed to take the

necessary steps to prevent harm from the unfitness of their employees.

437.    Defendant DCF negligently hired, retained and supervised Defendants Anderson,

Saunders, Thomas, Dion, Teany and Does who were unfit to accurately implement and

maintain proper measures adequate to ensure that such detrimental errors never occurr.

438.    As the direct and proximate cause of Defendant DCF's negligent hiring, retention

and supervision, Plaintiffs have suffered injuries and damages, both professionally and

personally.

WHEREFORE, Plaintiffs demand judgment against Defendant and requests the following:

an award of compensatory damages for personal indignity, dishonor, humiliation, damage to

their professional and personal reputation, mental anguish and distress, an award of lost benefits,

an award of prejudgment interest and such additional or alternative relief as the Court may deem

just and proper. Plaintiffs reserve the right to amend their claim for punitive damages in the

future, should such a claim become viable.

**COUNT XXVIII**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
(Defendant Wing)

439.      Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if

fully set forth herein.

440.      This count sets forth a claim against Defendant Wing for negligent infliction of

emotional distress. For the purpose of this claim, Defendant Wing was acting outside the

course and scope of her employment with Defendant OPD. This claim is pled in the

alternative.

441.      Defendant Wing had a duty to act in a reasonable and prudent manner.

442.      Defendant Wing breached the duties owed by behaving in an unreasonable

manner, including targeting Plaintiffs with a predetermined goal in mind and an

unwillingness to properly investigate the circumstances surrounding serious allegations

of child molestation and pornography. Defendant Wing's actions were extreme and

outrageous in nature and not tolerable in a civilized society.

443.      Upon information and belief, Defendant Wing behaved in an unreasonable

manner for the purpose of advancing her career with law enforcement, which she was

successful.

444.      Defendant Wing's conduct set forth herein, included several instances of

misstatements of facts and mistreatment of Plaintiffs. This conduct by Defendant Wing

constituted extreme and outrageous conduct that would shock the conscience of a

reasonable person and goes beyond all bounds of decency. Defendant's conduct was the

proximate cause of Plaintiffs' emotional distress and Plaintiffs' emotional distress was

severe. Defendant Wing's conduct constitutes the actionable tort of negligent infliction of

emotional distress.

445.    Defendant Wing negligently and/or recklessly caused Plaintiffs' emotional

distress by making false statements to the Ninth Judicial Circuit Court and by using her

personal relationship with other officers and Defendant DCF to cause Plaintiffs to be

unjustifiably subjected to search, seizure, detainment, prosecution, and removal of their

18-month-old child. These actions by Defendant Wing were made in bad faith and with a

malicious purpose and with a willful disregard for Plaintiffs' rights.

446.    As a direct and proximate result of the above unlawful acts and omissions,

Plaintiffs were injured and sustained economic damages, including lost prestige, lost

potential employment and good standing in the community, they have lost the capacity

for the enjoyment of life, sustained severe emotional pain, anguish, humiliation, insult,

indignity, loss of self-esteem, inconvenience and hurt because of Defendant Wing's

actions and are therefore entitled to compensatory damages. Plaintiffs' damages are

continuous they have occurred in the past, are occurring in the present, and will continue

to occur in the future.

WHEREFORE, Plaintiffs demand judgment against Defendant Wing and requests the

following: an award of compensatory damages for personal indignity, dishonor, humiliation,

damage to their professional and personal reputation, mental anguish and distress, an award of

lost benefits, an award of prejudgment interest and such additional or alternative relief as the

Court may deem just and proper. Plaintiffs reserve the right to amend their claim for punitive

damages in the future, should such a claim become viable.

## COUNT XXIX
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
(Defendants Anderson, Saunders, Thomas, Dion, Teany and Does)

447.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if

fully set forth herein.

448.    This count sets forth a claim against Defendants Anderson, Saunders, Thomas,

Dion, Teany and Does for negligent infliction of emotional distress. For the purpose of

this claim, Defendants were acting outside the course and scope of their employment with

Defendant DCF. This claim is pled in the alternative.

449.    Defendants had a duty to act in a reasonable and prudent manner.

450.    Defendants breached their duties by behaving in an unreasonable manner,

including targeting Plaintiffs with a predetermined goal in mind and an unwillingness to

properly investigate the circumstances surrounding serious allegations of child

molestation and pornography. Defendants' actions were extreme and outrageous in nature

and not tolerable in a civilized society.

451.     Upon information and belief, Defendants behaved in an unreasonable manner

because they are unfit to property and independently investigate claims on their own

accord.

452.    Defendants conduct set forth herein, included several instances of misstatements

of facts and mistreatment of Plaintiffs which aided in the removal of Plaintiffs' minor

child from their custody and further alienation of Plaintiffs from their minor child for a

prolonged period of time. This conduct by Defendants constituted, extreme and

outrageous conduct that would shock the conscience of a reasonable person and goes

beyond all bounds of decency. Defendants conduct was the proximate cause of Plaintiffs'

emotional distress and Plaintiffs' emotional distress was severe. Defendants conduct

constitutes the actionable tort of negligent infliction of emotional distress.

453.    Defendants negligently and/or recklessly caused Plaintiffs' emotional distress by

using their personal relationship with the Ninth Judicial Circuit Court by making false

statements that were not supported by any investigation or independent corroboration

causing Plaintiffs to be unjustifiably subjected to proceedings to regain custody of their

18-month-old child and further subjected them to intrusive supervision by Defendant

DCF's agents and employees. These actions by Defendants were made in bad faith and

with a malicious purpose and with a willful disregard for Plaintiffs' rights.

454.    As a direct and proximate result of the above unlawful acts and omissions,

Plaintiffs were injured and sustained economic damages, including lost prestige, lost

potential employment and good standing in the community, they have lost the capacity

for the enjoyment of life, sustained severe emotional pain, anguish, humiliation, insult,

indignity, loss of self-esteem, inconvenience and hurt, because of Defendants actions, and

are therefore entitled to compensatory damages. Plaintiffs' damages are continuous they

have occurred in the past, are occurring in the present, and will continue to occur in the

future.

WHEREFORE, Plaintiffs demand judgment against Defendants and requests the following:

an award of compensatory damages for personal indignity, dishonor, humiliation, damage to

their professional and personal reputation, mental anguish and distress, an award of lost benefits,

an award of prejudgment interest and such additional or alternative relief as the Court may deem

just and proper.

**COUNT XXX**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
(All Defendants)

455.     Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if

fully set forth herein.

456.     Defendants, through their agents and employees, and acting under color of state

law, intentionally and deliberately inflicted emotional distress on Plaintiffs by interfering

with their civil rights, by searching, seizing, detaining them and removing their 18-

month-old child from their custody all on the basis of false allegations. Further,

Defendants defamed and publicly humiliated Plaintiffs and by maliciously prosecuted

them. Defendants knew or should have known that emotional distress was the likely

result of their conduct.

457.     Defendants actions, included falsely accusing Plaintiffs of molesting and creating

child pornography, unlawfully entering Plaintiffs' home and illegally seizing them,

detaining Plaintiffs in the front of their home surrounded by countless law enforcement

officers, seizing Plaintiffs property unlawfully, denying Plaintiffs access to any

communication with anyone, including their legal counsel, each other and their minor

child for the entirety of the unlawful entry, search, seizure and detainment of Plaintiffs

and informed Plaintiffs' neighbors that Plaintiffs' were child molesters who produced

child pornography constitutes conduct which is outrageous, beyond all bounds of

decency, and utterly intolerable in a civilized community.

458.    The emotional distress sustained by Plaintiffs was severe, still continues to be and
has a high probability of always being emotionally distressing. Defendants illegal and
tortious actions are the direct and proximate cause of Plaintiffs emotional distress. The
conduct of Defendants in causing Plaintiffs' emotional distress was intentional and
outrageous.

WHEREFORE, Plaintiffs demand judgment against Defendants and requests the following:
an award of compensatory damages for personal indignity, dishonor, humiliation, damage to
their professional and personal reputation, mental anguish and distress, an award of lost benefits,
an award of prejudgment interest, attorneys' fees and such additional or alternative relief as the
Court may deem just and proper. Plaintiffs reserve the right to amend their claim for punitive
damages in the future, should such a claim become viable.

### COUNT XXXI
### VICARIOUS LIABILITY
(Defendants Orlando, Sheriff and OPD)

459.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if
fully set forth herein.

460.    Defendants Orlando, Sheriff and OPD through its employees, staff, borrowed
servants, and agents providing law enforcement services owed its residents, including
Plaintiffs, a duty of care.

461.    Defendants Wing, Farris and Does were an agent, borrowed servants, or
employees of Defendant OPD, Sheriff and Orlando at the time of these events.
Specifically, Defendant Wing was a detective in the Special Victims Unit of the OPD and
Defendant Farris was her supervisor.

462.    At all times material, Defendants OPD, Sheriff and Orlando exercised control over Defendants Wing, Farris and Does by enacting bylaws, rules and regulations, and policies and procedures that governed the enforcement of laws among citizens of the City of Orlando.

463.    Defendants Orlando, Sheriff and OPD provided Defendants Wing, Farris and Does with badges and authority that they were law enforcement officers sworn to uphold the laws of the State of Florida and United States Constitution. The Ninth Judicial Circuit Court acted in reliance of Defendants Orlando and OPD's representation that Defendants Wing and Farris were officers who knew and would uphold the laws and were under the ultimate direction, supervision, and control of Defendants Orlando and OPD.

464.    Defendants Orlando, Sheriff and OPD's agents, employees, and borrowed agents, breached their duty by failing to provide law enforcement to Plaintiffs in a competent and non-negligent manner and instead provided negligent treatment to Plaintiffs as recited herein and throughout this complaint.

465.    As a direct and proximate result of the foregoing actions, inactions, errors, and omissions by Defendants Orlando, Sheriff and OPD, Plaintiffs suffered severe injuries including the loss of their minor child from their custody, illegal detainment, search and seizure of their person and property.

466.    As a direct and proximate result of the foregoing negligence, Plaintiffs pursuant to section 768.28, Fla. Stat. are, therefore, entitled to damages pursuant to section 768.21, Fla. Stat., including but not limited to loss of their child's support and services, loss of their child's companionship during the time their child was illegally removed from their custody and protection and for mental pain and suffering from the date of injury, future

care and medical expenses. Plaintiffs suffered and will continue to suffer loss in the past

and into the future.

WHEREFORE, Plaintiffs demand judgment for damages against Defendants together with

prejudgment interest on expenses accrued by the Plaintiffs, costs, and such other and further

relief as this Court may deem proper. Plaintiffs reserve the right to amend their claim for

punitive damages in the future, should such a claim become viable.

**COUNT XXXII**
**VICARIOUS LIABILITY**
(Defendant DCF)

467.     Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if

fully set forth herein.

468.     Defendant DCF through its employees, staff, borrowed servants, and agents

providing services and aid owed its residents, including Plaintiffs', a duty of care.

469.     Defendants Anderson, Saunders, Thomas, Dion, Teany and Does were an agent,

borrowed servants, or employees of Defendant DCF at the time of these events.

Defendant Anderson was a Child Protective investigator, Defendants Saunders, Thomas,

Dion and Does were field investigators and Defendant Teany was general legal counsel

of DCF.

470.     At all times material, Defendant DCF exercised control over Defendants

Anderson, Saunders, Thomas, Dion, Teany and Does by enacting Bylaws, Rules and

Regulations, and Policies and Procedures that governed the Department among citizens

of the City of Orlando.

471.     Defendant DCF provided Defendants with authority that they were agents of the

Department and had authority to act on behalf of the Department including removing

minor children from the care and custody of parents within their jurisdiction. The Ninth

Judicial Circuit Court acted in reliance of Defendant DCF's representation that

Defendants Anderson, Saunders, Thomas, Dion, Teany and Does were employees who

knew and would uphold the laws and were under the ultimate direction, supervision, and

control of Defendant DCF.

472.    Defendant DCF's agents, employees, and borrowed agents breached their duty by

failing to conduct any independent and proper investigation into claims of child

molestation or pornography or any supporting evidence to justify removal of an 18-

month-old child from their parents' custody and control, in a competent and non-

negligent manner and instead provided negligent treatment to Plaintiffs by the negligence

recited herein and throughout this complaint.

473.    As a direct and proximate result of the foregoing actions, inactions, errors, and

omissions by Defendant DCF, Plaintiffs suffered severe injuries including the loss of

their minor child from their custody.

474.    As a direct and proximate result of the foregoing negligence, Plaintiffs pursuant to

section 768.28, Fla. Stat. are, therefore, entitled to damages pursuant to section 768.21,

Fla. Stat., including but not limited to loss of their child's support and services, loss of

their child's companionship during the time their child was illegally removed from their

custody and protection and for mental pain and suffering from the date of injury, future

care and medical expenses. Plaintiffs suffered and will continue to suffer loss in the past

and into the future.

WHEREFORE, Plaintiffs demand judgment for damages against Defendant DCF, together

with prejudgment interest on expenses accrued by the Plaintiffs costs and such other and further

relief as this Court may deem proper. Plaintiffs reserve the right to amend their claim for

punitive damages in the future, should such a claim become viable.

**COUNT XXXIII**
**GOVERNMENTAL INTRUSION**
(Defendants Orlando, OPD and DCF)

475.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if
fully set forth herein.

476.    Defendants Orlando, OPD and DCF, through its agents and employees, and acting
under color of state law, intentionally and deliberately intruded into Plaintiffs private
activities and decisions. The acts, practices, and procedures of Defendants constituted
state action.

477.    Under Article I, § 23 of the Florida Constitution, all Floridians are guaranteed the
right to be left alone from governmental intrusion.

478.    Defendants, by way of officers and employees acting within the scope and course
of their employment, seriously invaded Plaintiffs fundamental right to privacy by
unlawfully entering Plaintiffs private home, unlawfully detaining Plaintiffs, unlawfully
searching Plaintiffs' person and personal property, unlawfully seizing Plaintiffs' person
and personal property and failing to account for items seized during the unlawful seizure
and unlawfully removing Plaintiffs' minor 18-month-old child from the Plaintiffs'
custody. These actions subjected Plaintiffs to an unlawful seizure, search, detainment and
denial of custodial rights.

479.    Defendants seriously invaded Plaintiffs' fundamental right to privacy by releasing
personal information to Plaintiffs' neighbors and family members, resulting in public
scrutiny of Plaintiffs' private life.

480.     Defendants seriously invaded Plaintiffs' fundamental right to privacy by

removing personal property from Plaintiffs' home and removing their 18-month-old

minor child from their custody and forcing the child to undergo unnecessary medical

exams including stripped naked, photographed and examined without a parent or

guardian present and against the will and consent of the Plaintiffs' and the minor child.

481.     Without any compelling reason to do so, as the face of the affidavit proved no

crime occurred or was committed, Defendants intruded into aspects of Plaintiffs' lives in

which they have a legitimate expectation of privacy.

482.     As the direct and proximate cause of Defendants' intrusion, Plaintiffs have

suffered injuries and damages, both professionally and personally.

WHEREFORE, Plaintiffs demand judgment against Defendants and requests the following:

an award of compensatory damages for personal indignity, dishonor, humiliation, damage to her

professional and personal reputation, mental anguish and distress, attorneys' fees, an award of

lost benefits, an award of prejudgment interest and such additional or alternative relief as the

Court may deem just and proper. Plaintiffs reserve the right to amend their claim for punitive

damages in the future, should such a claim become viable.

## COUNT XXXIV
## TRESPASS
(Defendants OPD, Orlando and DCF)



483.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if
fully set forth herein.

484.    Plaintiffs are in lawful possession of the subject real and personal property which
was damaged due to the acts or omissions of Defendants regarding the illegal search,
seizure, detainment and removal of Plaintiffs' minor child from their home.

485.    Defendant's failure to properly supervise and train their employees caused
damage to the Plaintiffs' property.

486.    Defendants intentionally or negligently caused the illegal raid, search, seizure,
detainment and removal of Plaintiffs' 18-month-old minor child.

487.    Defendants had reasonable notice of an imminent harm to Plaintiffs when they
filed a falsified warrant.

488.    Plaintiffs did not license or authorize Defendants to enter their land, remove
property from their land or remove their minor child from their custody.



489.    By negligently causing damage to personal and real property by failing to provide
accurate and truthful information to the Ninth Judicial Circuit Court, Defendants
trespassed and encroached upon Plaintiffs' lands and wrongfully interfered with and
disturbed the rightful possession, use, and enjoyment of the subject property.

490.    Plaintiffs are entitled to damages for Defendants' trespass and their negligent and

unlawful encroachment upon Plaintiffs' land, and for Defendants' wrongful interference

with Plaintiffs' right to use and enjoy these lands.

491.    Plaintiffs have suffered damages, and Defendants Orlando, OPD and DCF are

liable for damages resulting from their negligence.

492.    Defendants undertook and assumed a duty to Plaintiffs to exercise reasonable

care.

493.    Defendants' conduct effected a waiver of its sovereign immunity under the

Florida Tort Claims Act and Section 768.28, F.S., in that their actions were an

operational decision or activity for which Defendants are not immune from suit.

494.    Additionally, Plaintiffs have suffered damages and will continue to suffer future

damages due to the Defendants actions.

WHEREFORE, Plaintiffs demand judgment for damages against Defendants Orlando, OPD,

and DCF together with prejudgment interest on expenses accrued by the Plaintiffs, costs, and

such other and further relief as this Court may deem proper. Plaintiffs reserve the right to amend

their claim for punitive damages in the future, should such a claim become viable.

### COUNT XXXV
### INVASION OF PRIVACY
(All Defendants)

495.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if

fully set forth herein.

496.    Defendants, through their agents and employees, and acting under color of state

law, intentionally and deliberately invaded Plaintiffs privacy by publicizing private and

false salacious facts about Plaintiffs lives.

497.    Defendants published to individuals of Plaintiffs' family members and neighbors'
private facts of Plaintiffs lives, falsely, including but not limited to, allegations of
Plaintiffs being child molesters and creators of child pornography.

498.    The private facts of Plaintiffs lives and ludicrous allegations made public by
Defendants are those which would be offensive and objectionable to a reasonable person
and were not a matter of public concern at the time Defendants made them public.

499.    Prior to Defendants actions, Plaintiffs lived free from the eye of public scrutiny.

500.    As the direct and proximate cause of the invasion of Plaintiffs' privacy, Plaintiffs
have suffered, and continues to suffer injuries and damages, both professionally and
personally.

WHEREFORE, Plaintiffs demand judgment against Defendants and requests the following:
an award of compensatory damages for personal indignity, dishonor, humiliation, damage to her
professional and personal reputation, mental anguish and distress, an award of lost benefits, an
award of prejudgment interest, attorneys' fees and such additional or alternative relief as the
Court may deem just and proper. Plaintiffs reserve the right to amend their claim for punitive
damages in the future, should such a claim become viable.

**COUNT XXXVI**
**BATTERY**
(Defendant Does)



501.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if
fully set forth herein.

502.    This count is for a cause of action against Defendant Does individually.

503.    On August 6, 2020, Defendants did unlawfully touch Plaintiffs against Plaintiffs'

will.

504.    Defendants intended to cause and did cause a harmful contact with Plaintiffs'

person.

505.    Plaintiffs did not consent to Defendants act.

506.    As a direct and proximate result of Defendants conduct Plaintiffs suffered injuries

including but not limited to extreme mental anguish and physical pain.

WHEREFORE, Plaintiffs demand judgment for damages against Defendants together with

the costs of this civil action and demands trial by jury on all issues so triable, and such other

relief as this Court may deem just and appropriate. Plaintiffs reserve the right to amend their

claim for punitive damages in the future, should such a claim become viable.

## COUNT XXXVII
## BATTERY
(Defendants Anderson, Saunders, Thomas, Dion, Does)

507.    Plaintiffs realleges and reavers paragraphs 1 through 107 of this complaint as if

fully set forth herein.

508.    This count is for a cause of action against Defendants Anderson, Saunders,

Thomas, Dion and Does individually.

509.    On August 6, 2020, Defendants did unlawfully touch Plaintiffs' minor child

against Plaintiffs' and the minor child's will and subjected the child to unnecessary

medical exams including taking photographs of her naked body against the will and

consent of the minor child and her parents.

510.    Defendants intended to cause and did cause a harmful contact with Plaintiffs'

minor child's person.

511.    Plaintiffs did not consent to Defendants act.

512.    As a direct and proximate result of Defendants conduct Plaintiffs suffered injuries including but not limited to extreme mental anguish and physical pain.

WHEREFORE, Plaintiffs demand judgment for damages against Defendants together with the costs of this civil action and demands trial by jury on all issues so triable and such other relief as this Court may deem just and appropriate. Plaintiffs reserve the right to amend their claim for punitive damages in the future, should such a claim become viable.

## COUNT XXXVIII
## EXCESSIVE USE OF FORCE
### (Defendants OPD and Sheriff)

513.    Plaintiffs realleges and reavers Paragraphs 1 through 107 of this complaint as if fully set forth herein.

514.    The conduct of Defendants OPD and Sheriff's officers towards Plaintiffs, as fully set forth herein, constitutes a battery, assault, aggravated assault, aggravated battery, and excessive use of force.

515.    In acting against the Plaintiffs, Defendants OPD and Sheriff's officers pointed countless firearms and deadly weapons at the heads of Plaintiffs while they were unarmed, handcuffed, physically restrained, or otherwise made contact with Plaintiffs person, without consent or lawful authority and against the will of the Plaintiffs.

516.    Defendants owed a common law duty to the Plaintiffs not to commit any crimes against the Plaintiffs unlawfully or use excessive force against them.

517.    The unlawful touching by Defendants OPD and Sheriff officers breached that duty.

518.    The amount of force used by Defendants OPD and Sheriff officers were in

excess.



519.    The excessive force used against the Plaintiffs resulted, as reasonably should have

been foreseen and was without legal justification.

520.    As a direct and proximate result of the acts described throughout this complaint,

Plaintiffs have suffered, have been brought into public scandal with great humiliation,

suffered mental suffering, physical suffering and damaged reputation.

521.    As a further direct and proximate result of the conduct of Defendants OPD and

Sheriff officers, Plaintiffs suffered bodily injury and resulting pain and suffering, mental

anguish, loss of earnings, loss of capacity for the enjoyment of life, medical care and

treatment. Plaintiffs' losses are either permanent or continuing and Plaintiffs will suffer

the losses in the future and in perpetuity.

WHEREFORE Plaintiffs demands judgement for damages against Defendants together with

the costs of this civil action and demands trial by jury on all issues so triable and such other relief

as this Court may deem just and appropriate. Plaintiffs reserve the right to amend their claim for

punitive damages in the future, should such a claim become viable.


## DEMAND FOR JURY TRIAL

Pursuant to Rule 1.430(a), Florida Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury for all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully prays that:

a. The Court enter judgment in favor of Plaintiffs on the claim(s) in an amount to be proved at trial;

b. Plaintiffs recover from Defendants its costs and expenses, including reasonable attorneys' fees incurred in pursuing this claim pursuant to 42 U.S.C. §1988;

c. Plaintiffs recover damages including prior attorneys' fees from malicious prosecution and any and all other incurred expenses;

d. Plaintiffs recovers damages including any and all expenses, pain and suffering, loss of enjoyment of life;

e. Plaintiffs recovers damages pursuant to 42 U.S.C. §1983;

f. Plaintiffs recover damages including loss of support and services of their minor child for the time the minor child was removed from Plaintiffs' custody and for the time Plaintiffs were subjected to intrusive scrutiny by Defendant DCF, past pain and suffering and future pain and suffering;

g. Plaintiffs recover all other damages recoverable pursuant to *Florida Statutes §§ 768 et seq.*;

h. This action be tried by a jury; and

i. Plaintiffs recover any such other and further relief as the Court deems just and proper.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via

U.S. mail to the Orlando Police Department at 1250 West South Street, Orlando, FL 32805; City

Attorney City of Orlando at 400 South Orange Avenue, Orlando, FL 32801; Orange County

Sherriff's Office at P.O. Box 1440, Orlando, FL 32802; Department of Children and Families at

400 West Robinson Street, Suite 1106, Orlando, FL 32801 and 2415 North Monroe Street, Suite

400, Tallahassee, FL 32303; and the Orange County Attorney's Office at 201 S, Rosalind Ave, 5th

Floor, Orlando, FL 32801 this 3rd day of September 2024.

*Ariel E. Mitchell-Kidd, Esq*
Ariel E. Mitchell-Kidd, Esq.
Florida Bar No. 125714
P.O. Box 12864
Miami, FL 33101
(305) 903-5835
ariel@arielesq.com

# Exhibit
## "A"



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

Orlando, FL 32805

Certified Mail Fee  $4.35    0650    29
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $ $0.00
☐ Return Receipt (electronic)      $ $0.00
☐ Certified Mail Restricted Delivery $ $0.00
☐ Adult Signature Required         $ $0.00
☐ Adult Signature Restricted Delivery $ $0.00
Postage  $0.66
Total Postage and Fees  $5.01
Postmark Here    AUG 5 2023    08/05/2023

Sent To  Orlando Police Dept /Chief of Blue
Street and Apt. No., or PO Box No.  256 West South St
City, State, ZIP+4®  Orlando FL 32805

PS Form 3800, January 2023    See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

Orlando, FL 32801

Certified Mail Fee  $4.35    0650    29
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $ $0.00
☐ Return Receipt (electronic)      $ $0.00
☐ Certified Mail Restricted Delivery $ $0.00
☐ Adult Signature Required         $ $0.00
☐ Adult Signature Restricted Delivery $ $0.00
Postage  $0.66
Total Postage and Fees  $5.01
Postmark Here    AUG -5 2023    08/05/2023

Sent To  City Attorney/City of Orlando
Street and Apt. No., or PO Box No.  400 South Orange Ave
City, State, ZIP+4®  Orlando, FL 32801

PS Form 3800, January 2023    See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

Orlando, FL 32802

Certified Mail Fee  $4.35    0650    29
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $ $0.00
☐ Return Receipt (electronic)      $ $0.00
☐ Certified Mail Restricted Delivery $ $0.00
☐ Adult Signature Required         $ $0.00
☐ Adult Signature Restricted Delivery $ $0.00
Postage  $0.66
Total Postage and Fees  $5.01
Postmark Here    AUG -5 2023    08/05/2023

Sent To  Orange County Sheriff/John Mina
Street and Apt. No., or PO Box No.  PO Box 1440
City, State, ZIP+4®  Orlando, FL 32802

PS Form 3800, January 2023    See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

Orlando, FL 32801

Certified Mail Fee  $4.35    0650    29
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $ $0.00
☐ Return Receipt (electronic)      $ $0.00
☐ Certified Mail Restricted Delivery $ $0.00
☐ Adult Signature Required         $ $0.00
☐ Adult Signature Restricted Delivery $ $0.00
Postage  $0.66
Total Postage and Fees  $5.01
Postmark Here    AUG -5 2023    08/05/2023

Sent To  Department of Children & Families
Street and Apt. No., or PO Box No.  400 West Robinson St 5110b
City, State, ZIP+4®  Orlando, FL 32801

PS Form 3800, January 2023    See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

Orlando, FL 32801

Certified Mail Fee  $4.35
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $ $0.00
☐ Return Receipt (electronic)      $ $0.00
☐ Certified Mail Restricted Delivery $ $0.00
☐ Adult Signature Required         $ $0.00
☐ Adult Signature Restricted Delivery $ $0.00
Postage  $0.66
Total Postage and Fees  $5.01
Postmark Here    AUG -5 2023    08/05/2023

Sent To  Orange County Attorney's Office
Street and Apt. No., or PO Box No.  Rosalind Ave, 5th Floor
City, State, ZIP+4®  Orlando, FL 32801

PS Form 3800, January 2023    See Reverse for Instructions

## THE LAW OFFICE OF ARIEL E. MITCHELL, P.A.

P.O. Box 12864
Miami, FL 33101
ariel@arielesq.com
rio@arielesq.com
305-903-5835(tel)
August 4, 2023

### VIA OVERNIGHT MAIL

RE:    2020-221714
       Christian Campbell, Laurie Campbell and Iseabail Campbell
       Date of incident: August 6, 2020

Please be advised that this firm has been retained to represent Christian Campbell, Laurie Campbell and, minor child, Iseabail Campbell regarding claims for violation of constitutional and civil rights and various torts. Please accept this letter as formal notice pursuant to Florida Statute 768.28 of a claim against the several government agencies regarding an incident which occurred on August 6, 2020 at approximately 9:30 AM.

On August 6, 2020 my clients, Christian Campbell and minor child Iseabail Campbell, were inside of their homes when an illegal and fraudulent search warrant was executed upon their residence. My other client, Laurie Campbell was kidnapped, held hostage and seized from her vehicle approximately a mile away from the home at the same time. Orlando Police had guns pointed at both the father and child, specifically pointed at the heads of the father and child, in my client's homestead residence. Orlando Police had guns pointed at Laurie when they initiated a false traffic stop to seize her person and property, namely her i-phone. The Orlando Police then gained unauthorized access to her seized personal property, by coercion, duress and false pretenses.

The minor child was seized and kidnapped illegally into custody by the Department of Children and Families. The minor child was seized and kidnapped illegally because the Department of Children and Families was working in concert and in conspiracy with Orlando Police Department, and Detective Jennifer Wing as well as other law enforcement, including the Orange County Sheriff's Department. Due to the conspiracy of law enforcement and DCF my clients, Christian and Laurie, were forced to sign an emergency plan placing their minor child, Iseabail, into the care of alternative guardians under duress, without due process and without being given time to consult with legal counsel.

My clients have experienced several violations of their constitutional and civil rights, most notably illegal search and seizures and due process. In addition to the gratuitous civil rights violations, several torts were committed by the Orlando Police Department including defamation, false imprisonment, kidnapping, theft, loss of consortium, tort of outrage, conspiracy, negligence, gross negligence, intentional and negligent infliction of emotional distress and additional torts that may be named therein.

## THE LAW OFFICE OF ARIEL E. MITCHELL, P.A.

P.O. Box 12864
Miami, FL 33101
ariel@arielesq.com
rio@arielesq.com
305-903-5835(tel)

Pursuant to Florida, Statute 768.28(6). I submit the following information:

1.  Claimant's post office address is 3023 Helen Ave. Orlando, FL 32804.

2.  Notices concerning this claim should be sent to Claimant's attorney, Ariel Mitchell Esq., P.O. Box 4221, Marietta, GA 30061, also by email at ariel@arielesq.com.

3.  The date and place of the incident giving rise to this claim derived from a fraudulently obtained warrant, with false information, executed by Orlando PD SWAT on August 6, 2020 at 9:30 am at 3023 Helen Ave. Orlando, FL 32804.

4.  The circumstances giving rise to this claim are as follows:

Detective Jennifer Wing, through perpetrating fraud on the court, obtained an illegal search warrant of my clients homestead. Claimant contends if Detective Wing had not perpetrated fraud on the court no such warrant would have been issued. The fraud used to obtain the warrant accused my clients, Christian and Laurie, of producing, and transmitting child pornography based on a tip that was submitted to the National Center for Missing and Exploited Children on March 24, 2020.

The affiant, Detective Wing, falsely stated to the court that the Detective had "found and located computers within the court's jurisdiction" that contained P2P software with child pornography images. The affiant, Detective Wing, continues to falsely stated that the images had been "previously identified as either suspected or known images of child pornography" and the "images of video are ones in which the child victim in the image is actually known to law enforcement due to a reported case of abuse, or the image has been viewed by other members of law enforcement who are able to confirm by training and expertise that the content of the image or video is pornographic, that the child depicted is a real child (not generated by computer technology) and that the child and the image is clearly and obviously under the age of 18." Using these fraudulent statements proffered by Detective Wing, the court issued an illegal warrant.

The illegally and fraudulently obtained warrant was granted on August 4, 2020 and executed on my clients private, homestead, residence at 3023 Helen Ave. Orlando, FL 32804 on August 6, 2020 at 9:30a.m. During the illegal entry, search and seizure of my client's home the Department of Children and Families then illegally removed the minor child, Iseabail, against the will of the parents. My clients, Christian and Laurie, were forced under duress, without due process and without time to seek legal counsel into signing an emergency plan with the Department of Children and Families where the eighteen-month-old minor child was taken from her parents, the parents only child, and DCF remanded the minor child, claimant Iseabail, to her grandparents custody for several month.

To add insult to injury, members of the Orlando Police went door to door and told neighbors of my clients that my clients were pedophiles who made child porn and were sexual criminals.

**THE LAW OFFICE OF ARIEL E. MITCHELL, P.A.**

P.O. Box 12864
Miami, FL 33101
ariel@arielesq.com
rio@arielesq.com
305-903-5835(tel)

My clients' lives will forever be negatively impacted by this illegal and intentional criminal act by the Orlando Police in obtaining a search warrant by perpetrating fraud on the court and labeling my clients pedophiles who make child porn with their own child.

Additionally, the Orlando Police failed to take proper inventory of seized personal property and failed to return seized property after my client's case was quietly and unceremoniously dropped after, allegedly, the real perpetrator was apprehended by the FBI in another state. My client's home was destroyed and forever tarnished. My clients have been constructively evicted from their homestead as a result of the trauma of the fraudulent and illegal raid, search and seizure of their persons, things and minor child on August 6, 2020 by the Orlando Police Department, Orange County Sheriff's Department and Department of Children and Families in concert.

5. Claimant's injuries are continuous and varying.

6. The names of the public employees causing the Claimant's injuries are:

| | |
|---|---|
| John Does 1-100: | Individuals who were apart of Orlando PD SWAT and Orange County Sheriff who executed the illegally obtained warrant and violated claimants' constitutional rights on August 6, 2020 and any other unnamed individuals with or on behalf of the Department of Children and Families who acted in removal of the minor child from the parents on the date of the incident. |
| Detective Jennifer Wing (19104): | Affiant in search warrant. |
| Skyler Saunders: | CPI Supervisor DCF, Case No. DP20-433 |
| Jennifer Thomas: | Case Manager, Case No. DP20-433 |
| Amanda Dion: | Case Manager Supervisor, Case No. DP20-433 |

7. Claimant requests that the Orlando Police Department pay this claim in the amount of **$ 10,000,000** for both torts and violations of constitutional and civil rights. This figure is based on the following:

| | |
|---|---|
| Medical Expenses to Date: | $300,000 |
| Estimated Future Medical Expenses: | $2,500,000 |
| Moving Expenses: | $900,000 |
| Loss of Wages: | $1,300,000 |
| Aggregate Damages: | $5,000,000 |

## THE LAW OFFICE OF ARIEL E. MITCHELL, P.A.

P.O. Box 12864
Miami, FL 33101
ariel@arielesq.com
rio@arielesq.com
305-903-5835(tel)

**TOTAL**                                    **$10,000,000**

8.  The Claimant's date and place of birth and social security numbers are as follows:

| | | | |
|---|---|---|---|
| Christian Campbell | Charlottesville, Virginia | 8/17/1975 |  |
| Laurie Campbell | Houston, Texas | 9/27/1978 | |
| Iseabail Campbell | Orlando, Florida | 1/11/2019 | |

There are no unpaid prior adjudicated claim in excess of $200 owed by Claimants to the State of Florida or any of its agencies, officers, or subdivisions.

Namaste,

Ariel E. Mitchell, Esq.
Counsel for Claimants

# Exhibit
# "B"

**IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT IN AND
FOR ORANGE COUNTY, FLORIDA**

**STATE OF FLORIDA**
**COUNTY OF ORANGE**

OPD Case #:  2020-221714
Clerk's Case #: _____
☒ Electronic Warrant
☐ Emergency Warrant

## AFFIDAVIT FOR SEARCH WARRANT

**BEFORE ME**, the undersigned Judge, in and for Orange County, Florida, submitted via a secure electronic file transfer system, your Affiant, **Detective Jennifer Wing (19104),** a member of the Orlando Police Department, who being first duly sworn, deposes and says that Affiant has probable cause to believe that certain evidence, to wit:

Electronic Evidence:
Device and owner information, contact lists, call history, photographic images stored as single photographs or video formats, text and chat messages including message content, email with content, notes, calendar data, any and all other user generated data including but not limited to Internet history, bookmarks and WebPages visited, GPS data, mapping information, spreadsheet, database or text based information, any electronic data processing and/or storage devices, computers and computer systems which also includes central processing units, random access memory (RAM), internal and peripheral storage devices such as fixed discs, internal/external hard drives, removable disks such as Blu-ray, DVD and CD, floppy diskettes, Flash memory cards or drives, USB drives, smart media cards, micro drives, SD cards, and any other diskettes, tape drives and tapes, optical storage devices, or other storage devices, peripheral input/output devices such as keyboards, printers, video display monitors, optical readers, scanners and related communications devices such as modems, network adapters, hubs, routers, switches; any computer system, GPS devices, magnetic card readers, digital cameras, cellular telephones, and components, which also includes electronic processing units, internal storage devices, Subscriber Identity Modules (SIM cards), and other devices such as Flash memory cards, or other electronic system; together with system documentation, any passwords, passcodes, Personal Identification Numbers (PIN), PIN Unblocking Key (PUK) codes, encryption keys, operating logs and documentation, appropriate cables and connecters, and software instruction manuals, programs, data, or files containing all of the above records, whether stored on paper, on magnetic media such as hard disk drive, tape, cassette, cartridge, disk, diskette, flash media or on memory storage devices or media such as optical disks, programmable instruments such as telephones, answering machines, "electronic address books", portable data assistants, tablets, laptop computer systems, desktop computer systems, calculators, or any other storage media where data can be stored, together with indicia of use, ownership, possession, or control of such records, which is evidence of a felony violation of the laws of Florida, or which is contraband per se and evidence of a violation of the laws of Florida, to wit:

Florida State Statute(s):    847.0135(3)-2, Obscene Communication- Misrep Age Use Computer
Solicit Lure Seduce
827.071(5), Poss. Mat. Depicting Sexual Perf. by a Child

which is being kept in and on certain premises and the curtilage thereof in Orange County, Florida.  These premises are described as follows:

3023 Helen Avenue, Orlando, Florida, Orange County, FL 32804 (target premises). The target premises is a one-story building, single family home, white in color with white trim.

Directions to the target premise:

Start out going west on W South St toward S Orange Blossom Trl/US-17 S/US-17 N/US-92 E/US-92 W/US-441 S/US-441 N. Take the 1st right (northbound) onto S Orange Blossom Trl/US-17 N/US-92 E/US-441 N. Turn right (eastbound) onto W Colonial Dr/US-17 N/US-92 E/FL-50. Turn left (northbound) onto N Garland Ave. Merge onto Interstate 4 eastbound (I-4 E) via the ramp on the left toward Daytona Beach███████████████████████████

████████████████████████████████████████████████████

This being the premises occupied by and under the control of **Christian Clay Campbell and Laurie Ann Campbell**.

The facts tending to establish the grounds for this application and the probable cause of Affiant believing that such facts exist are as follows: Your Affiant, Jennifer Wing, has been with the Orlando Police Department since May 29, 2012.Your affiant is a certified law enforcement officer by the state of Florida pursuant to Section 943.14(1)(2) of Florida State Statutes and Section 11B-7, Florida Administrative Code relating to Standards and training.

In 2007, Your Affiant obtained her Bachelor's Degree from the University of Central Florida in Criminal Justice with a certificate in Criminal Profiling. In 2009, Your Affiant obtained her Master's Degree from University of Central Florida in Criminal Justice. In January of 2011, Your Affiant attended the TECO Criminal Justice Academy for basic certification as a law enforcement officer. Your Affiant studied laws of the State of Florida pertaining to Battery, Assault, Burglary, Grand Theft, Petit Theft, Dealing in Stolen Property, Robbery, Homicide, Controlled Substances, Child Abuse and Sex Crimes. Upon graduating the law enforcement academy in November of 2011, Your Affiant began the Field Training Program with the Orlando Police Department in May of 2012. Upon completion of the Field Training Program, Your Affiant was assigned to West, East and North Patrol Divisions from December 2012 to March 2019. While in West, East and North Patrol, Your Affiant made several arrest pertaining to burglaries, batteries, thefts, and drugs. In April 2019, Your Affiant was assigned to the Criminal Investigation Division as a Property Detective. While in the Criminal Investigation Division, Your Affiant has written multiple arrest and search warrants pertaining to property related crimes, and has assisted with multiple search warrant executions for drug related and property related crimes. In January 2020, Your Affiant was assigned to the Special Victims Unit, Internet Crimes Against Children (ICAC) Task Force, where Your Affiant has investigatived over 220 sexually related or internet-based crimes.

During Your Affiant's career with the Orlando Police Department, Your Affiant has successfully completed advanced training in the following courses: Interviews and Interrogations, Sex Crimes Investigations, Advanced Human Trafficking Investigations, Crisis Response in Child Abuse/Victim Assault Cases, Advanced Interviewing, Universal Interviewing Tactics for Patrol Officers, Detecting Truthfulness, Forensic Interviewing, ICAC Investigation of Cybertips, Offenders of Children and Child Sexual Abuse Imagery, ICAC Program Overview, and A Walk Through of ICAC Standards. Your Affiant has also investigated or assisted in investigations of crimes against children including: Sexual Battery, Lewd or Lascivious Battery and Molestation, Kidnapping, Homicide, and Child Abuse. Your Affiant is a current member of the Internet Crimes Against Children Task Force (ICAC). As a member of the ICAC Task Force, Your Affiant has had the opportunity to consult with numerous experts at the local, state and national levels in the areas of child pornography, internet child solicitation and computer forensics. On a daily basis, members of the ICAC Task

Force work as a team an share their expertise on various topics. Your Affiant has executed and assisted with several other search warrants regarding internet child exploitation; these search warrants have yielded lawful arrests and investigations

FILE SHARING RECOGNITION TECHNOLOGY:

From training and experience with Peer-to-Peer file (hereinafter referred to as "P2P") sharing networks, your Affiant, Detective Jennifer Wing learned that computer users can choose to install publicly available software, such as Limewire, BearShare and others, that facilitates the trading of images, videos and other electronic files. Sendvid.com is another file sharing program. Upon installing the client software, the user chooses which files or folders he or she wants to share with the rest of the file sharing network. When the user connects to the network, the software submits information about the files the user is sharing to an index server. The index server is a computer on the network that has been selected to assist other users in locating files. On the Gnutella network, this server is referred to as an ultrapeer and on the eDonkey network, it is simply referred to as a "server."

The software, when installed, allows the user (peer) to search for pictures, videos, movies and other digital files by entering text as search terms. That text search is sent to an ultrapeer or server. Based upon the data submitted to it by other users, the ultrapeer or server determines whether any of the computers included in its index contain files that meet the search term submitted. Once relevant files have been located, the ultrapeer or server returns a list of files that are consistent with the search term to the requesting computer (peer). The user of that computer can then choose which of the files they want to download. When the user clicks on a file or files he wants to download, a direct connection is established with the computer/s that contains all or part of that file and the transfer process begins. These users can receive the selected file from numerous sources at once. The software can balance the network load and recover from network failures by accepting pieces of the file from different users and then reassembling the file on the local computer.

P2P networks can only succeed in reassembling the file from different parts if the parts all come from the same original file. Multiple persons sharing one file can deliver different pieces of that file to the local software and the local software can insure that a complete and exact copy can be made from the parts. Your Affiant has been able to confirm from use of the software that different copies of the same file can be named differently.

P2P computer software has different methods to insure that two files are exactly the same. Your Affiant, Detective Jennifer Wing knows from training and experience that the method used by file sharing on the Gnutella network involves a compressed digital representation method called Secure Hash Algorithm Version 1 or SHA1. The Secure Hash Algorithm (SHA) was developed by the National Institute of Standards and Technology (NIST), along with the National Security Agency (NSA), for use with the Digital Signature Standard (DSS) as specified within the Secure Hash Standard (SHS). The United States of America has adopted the SHA1 hash algorithm described herein as a "Federal Information Processing Standard".

Your Affiant, Detective Jennifer Wing knows that digital files can be processed by this SHA1 standard resulting in a digital signature. By comparing these signatures your Affiant can conclude that two files are or are not identical with a precision that greatly exceeds 99.9999 percent certainty. Your Affiant knows through the computer forensic community that there has never been a documented occurrence of two different files being found on the Internet having different contents while sharing the same SHA1 value.

The use of SHA1 compressed digital representations for the matching of movies and images have proven to be extremely reliable. Your Affiant has never found two files with different contents but the same SHA1

value. Your Affiant, Detective Jennifer Wing has consulted with law enforcement officers with great levels of experience in this area and none of those consulted has ever found two files with different contents but the same SHA1 value.

Your Affiant, Detective Jennifer Wing knows that files shared on the eDonkey network work in a similar manner, but use an MD4 hash system, instead of Gnuttella, to verify the contents of files. The MD4 hash is not as accurate as the SHA1, but is considered extremely reliable for most practical purposes. The eDonkey network relies on the MD4 hash in order to function smoothly on a daily basis. Additional systems utilize the MD5 hash system for file identification.

Your Affiant, Detective Jennifer Wing knows that the P2P network uses the MD4 digital signature to verify the unique identity of individual files. Users attempting to trade files on a P2P file-sharing network can place files from their local computer in a shared file directory. If that user then starts the P2P software that local computer calculates the MD4 signature for each shared file and provides that information to other users wishing to trade files. When a user downloads a file from the eDonkey network, the MD4 value of the file being downloaded is immediately transferred to the user's computer and this MD4 value assists the software in locating other users that are sharing files with the same MD4 value. A user can also participate in sharing a file that has only been partially downloaded onto his computer.

Entering search terms in the P2P software results in a list of SHA1 or MD4 digital signatures and file names that your Affiant, Detective Jennifer Wing can choose for download. By using this type of search, your Affiant, Detective Jennifer Wing compares the offered SHA1, MD4 and MD5 signatures with signatures known to belong to movies or images of child pornography. Your Affiant, Detective Jennifer Wing confirms these hash values as belonging to child pornography by examining the files from previous investigations with the matching hash value.

This method has proven to be extremely reliable, working just like software used by end users around the world in locating and downloading precise files. Once the download of child pornography is initiated your Affiant, Detective Jennifer Wing receives a list of download candidates that are participating in the possession, such as the Sendvid.com software did in detecting the child pornography associated with this case through receipt and/or distribution of child pornography. This feature allows your Affiant, Detective Jennifer Wing to conduct undercover operations that involve images of child sexual abuse being traded on peer-to-peer networks.

Internet computers identify each other by an Internet Protocol or "IP" address. When a computer connects to the Internet, the Internet Service Provider ("ISP") providing the Internet connection assigns that computer a specific numerical identifier called an IP address. The IP address allows the computer to communicate with the Internet. ISPs control blocks of IP addresses and only assign a given IP address to one customer at a time. Your Affiant, Detective Jennifer Wing knows that these IP addresses can assist law enforcement in finding a particular computer on the Internet. Once an IP address is known, a subpoena can be issued to the appropriate ISP for business records related to the subscriber assigned to that IP address at a particular time and date. The ISP will typically provide information concerning the name, address and other identifying information of the subscriber using the particular ISP. This process has proven to be very reliable in identifying suspects using the Internet.

When a user submits a search term using P2P software, he is presented with a list of IP addresses and individual files that have been reported as available for download with specific digital signatures. The files listed may be either completed downloads or partial downloads.

These computers are referred to as download candidates. A download candidate is a computer or electronic device that was reported by an ultrapeer or server as a source for the file listed by hash value. In almost every known case the download candidate serves those files to P2P users across the Internet.

Computers from throughout the world can download files from download candidates without regard to geographic location. Your Affiant knows that the files located on P2P download candidates are quickly available throughout the world due to the distributed sharing model of P2P networks.

Your Affiant, Detective Jennifer Wing knows that cooperating police agencies pool their information to assist in identifying criminal conduct and build probable cause to further criminal investigations. Investigators around the country and world use a software program called the Child Protection System ("CPS") to facilitate locating child pornography on the Gnutella and eDonkey networks. Investigators licensed and trained to use CPS to search for child pornography on the Gnuttella or eDonkey network automatically submit their search results to a centralized law enforcement controlled database located in Boca Raton, Florida. The servers on which this data is stored are owned and controlled by the State Attorney's Office for the 15th Judicial Circuit. The data submitted by investigators includes the SHA1, MD4 and MD5 value of child pornography images as well as the IP address where that image was observed. With this pooled information police get a better understanding of the global information available about a suspect that resides in their area or jurisdiction. The information is valuable when trying to regionalize a suspect to a certain jurisdiction, given the global scope of the Internet. Investigators from around the world gather and log information, which can be used by an investigator to build probable cause on one specific case.

Licensed and trained users of the CPS are authorized to view images and videos and attach labels to them that are reflective of their content. These labels are then available to other users of the database to facilitate finding child pornography. Since different jurisdictions may have different definitions of child pornography, instructors use the term "child notable" to label files they believe meet the definition of child pornography in their own jurisdictions..

By examining a list of IP addresses contained within this database, your Affiant, Detective Jennifer Wing can locate computers that are reported to be in your Affiant's jurisdiction. By comparison of the digital signatures your Affiant can conclude that a computer, originating from an IP address known to be in this jurisdiction, has P2P software installed on it and contains complete or partial images or videos of child pornography. Information in the database contains data concerning the time and date a hash value known to contain child pornography was observed at a specific IP address. With this information, a request can be made to the Internet service provider to identify the specific physical address related to the user of P2P software in the exchange of child pornography. Your Affiant, Detective Jennifer Wing is aware from training, consultations with other investigators and personal experience that hundreds of search warrants around the country have been obtained by using the above method of investigation. This method has proven to be extremely reliable in determining the location of computers that were involved in the P2P facilitated trading of child pornography.

Your Affiant, Detective Jennifer Wing has been involved in search warrants of this type and has consulted with many experienced investigators who have used this method of investigation. Nearly every case was verified through the following means:

1) Evidence of child pornography was found on the computer.

2) If no images of child pornography were found on the computer, interviews of persons using those computers verified that child pornography had been present at one time but, had been deleted or the computer with the child pornography had been removed from the premises. In rare cases, it was determined that the

suspect accessed the customer's unsecured wireless router and thereby downloaded child pornography using his IP address. In such cases, the unsecured wireless router was an instrumentality of the crime subject to seizure in that it aided in the receipt and distribution of child pornography and potentially contained data logs.

3) Images were moved from a computer and stored on other media.

SUSPECTED OR KNOWN IMAGES OF CHILD PORNOGRAPHY:

Your Affiant, Detective Jennifer Wing knows from training and experience that there is a database list of unique SHA-1 values that are known to law enforcement to correspond to specific images of child pornography. These images have previously been identified as either suspected or known images of child pornography and were catalogued by the National Center for Missing and Exploited Children (NCMEC) and/or the Wyoming Internet Crimes Against Children Task Force. To be considered as suspected or known, the images/videos are either one in which the child victim in the image is actually known to law enforcement due to a reported case of abuse or the image has been viewed by other members of law enforcement who are able to confirm by training and experience that the content of the image or video is pornographic (containing a lewd exhibition of a child's genitals, or a graphic sex act involving a child), that the child depicted is a real child (not generated by computer technology, but either a movie or an image that predates the capacity for photo manipulation), and that the child in the image is clearly and obviously under the age of eighteen (which is ensured by selecting children who are very obviously young or pre-teen). Knowing the SHA-1 associated with these suspected or known child pornography files allows law enforcement to locate the files when they are made available on file sharing programs and on networks like the Gnutella network.

INTERNET PROTOCOL (IP) ADDRESS VERIFICATION:

Your Affiant, Detective Jennifer Wing knows from training and experience that computers or digital media capable of connecting to the Internet, are assigned an Internet Protocol address or IP address. Your Affiant knows that the IP address can assist law enforcement in finding the physical location of a particular computer or digital media. The IP address leads your Affiants to a particular Internet Service Provider (ISP) or company who holds or uses that specific IP address. Given the exact date and time when the IP address was used, the ISP can typically identify the account holder assigned that IP address at that specific date and time and provide the name and physical address of the account holder. Your Affiant, Detective Jennifer Wing knows from training and experience that an IP address assigned to a particular physical address at one point in time will often be the same for months or, in some cases, a year or more, especially if the subscriber has a high speed Internet connection.

Your Affiant, Detective Jennifer Wing knows from training and experience that computer software or hardware exists that allows persons to share Internet access over wired or wireless networks allowing multiple persons to appear on the Internet from the same IP address. The most common form of this is a router. Examination of these items can reveal information about the unauthorized or criminal use of the Internet connection at or through the residence.

On March 24, 2020, the National Center for Missing and Exploited Children (NCMEC) received Cybertip #66460350 regarding solicitation and possible distribution of child pornography. MAPA Breelle Hunter of the Federal Bureau of Investigation (FBI) was assigned the case for further investigation (FBI case #305A-HQ-3852150-SBP). The Cybertip was initiated by a member of the public (complainant) and provided chats between the complainant and suspect(s), believed to be husband and wife. The Cybertip contained a Fetlife.com account (https://fetlife.com/users/11282990?sp=1) and multiple Kik conversations, where the suspect(s) ("Kristina Slut") and complainant discussed the suspect(s) having sexual intercourse ███████████████████████ sexual acts with children. The suspect(s)

describes a video that they have of the suspect (wife) performing cunnilingus ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the adult suspect (wife). The suspect(s) offer to
send this video to the complainant. The suspect(s) also solicited the complainant to send a video of her
performing a sexual act ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The chats are as follows:

OPD Case Number: 2020-221714



OPD Case Number: 2020-221714



OPD Case Number: 2020-221714





OPD Case Number: 2020-221714



11:30

Kristina Slut >

**SAINT JOSEPH'S COLLEGE**
OF MARIAN UNIVERSITY
INDIANAPOLIS

Work or College?
Why not Both?

this chat

Ok I'm going to delete you unless you reply I'm sorry to sound mean

Im processing all this

What do you mean

You really did that ▬▬▬
▬▬▬

We do it all the time she loves it

She asks for it

Are you going to do it or not

Answer now or I'm sorry I'll have to block you

Ok bye

Sorry

Type a message...

I reviewed the Fetlife account, https://fetlife.com/users/11282990?sp=1, user name: "HumanPocketPussy". The account had an image of a white adult female, completely nude, with a reported age of 24 years old. The complainant originally stated that the chats began on Fetlife.com and moved over to a chatting application Kik. A search of investigative resources revealed a Kik account with the name "HumanPocketPussy". The account is in the name of "Kristina Slut". The chats provided by the complainant showed the name "Kristina Slut".

MAPA Hunter obtained a US Department of Justice/Federal Bureau of Investigation Subpoena for Kik.com/MediaLab (HumanPocketPussy). The results of the subpoena are as follows:

Kik.com/MediaLab, Inc- Subpoena #598618 was issued on April 15, 2020. On June 23, 2020, Kik.com/MediaLab Inc provided subscriber information as "Kristina Slut", email address "christianccampbell@gmail.com", and user name as "HumanPocketPussy". The Kik account was registered using "christianccampbell@gmail.com" from an Android device over the AT&T Mobility network.

After receiving the Kik.com/MediaLab, Inc subscriber results, a US Department of Justice/Federal Bureau of Investigation Subpoena was obtained by FBI MAPA Hunter for the Google Gmail account from Kik.com/MediaLab, Inc, "christianccampbell@gmail.com". The results of the subpoena are as follows:

Google-Subpoena #614348 was issued on June 24, 2020 for email account "christianccampbell@gmail.com". On June 29, 2020, Google provided Subscriber information as Christian Campbell, email address: "ccampbell%threefishgroup.com@gtempaccount.com" and alternate email addresses: "threefishgroup@gmail.com" and "christian.c.campbell@gmail.com", recovery phone number: 321-578-2527. Google also provided IP activity from the account from 12/10/2019 to 6/23/2020. Several IP addresses were chosen from the IP activity log by FBI MAGA Hunter provided by Google. The following IP addresses and electronic service providers were sent US Department of Justice/Federal Bureau of Investigation Subpoenas:

**AT&T- Subpoena #617193**
*2600:1700:4cbb:902f:fdf4:c50a:55c:21f on 6/18/2020 at 12:59:22 UTC
*2600:1700:4cbb:902f:4193:9f6a:9f6a:d6bc:9b18 on 6/23/2020 13:07:47 UTC
*69.109.232.225 on 3/25/2020 03:37:37 UTC
-Subpoena #617193 was issued on July 8, 2020. On July 10, 2020, AT&T provided Subscriber name and address as Laurie Campbell, ████████████████████████ with a phone number listed as 321-297-8799. The email address on the account is laurie_portella@yahoo.com.

**Charter Communications-Subpoena #617190**
*2603:9001:f08:b808:8831:3fcc:b505:4d0e on 12/10/2019 at 03:21:21 UTC
*2603:9001:f08:b808:a836:1e78:4aed:2da5 on 1/16/2020 at 013:43:47 UTC
*142.196.175.105 on 1/9/2020 at 22:34:55 UTC
-Subpoena #617190 was issued on July 8, 2020. On July 15, 2020, Charter Communications provided subscriber name and address as Laurie Campbell, ████████████████████ ████ with a phone number listed as 321-297-8799.

**Comcast- Subpoena #617192**
*2601:5c6:8000:1571:f5c3:b301:b0ae:da08 on 2/23/2020 at 07:40:25 UTC
*2601:5c6:8000:1571:3d60:b47c:268e:87e8 on 3/15/2020 at 02:49:33 UTC

-Subpoena #617192 was issued July 8, 2020. On July 10, 2020, Comcast provided the subscriber name and address as Terry Arnold, 2934 Rivermont Avenue Apt 10, Lynchburg, VA 24503 with a phone number of 434-384-2766. Email user ID's include oonalove@comcast.com, TerryMayPrice@comcast.com, Vonpiano@comcast.com, and booking.oonalove@comcast.com were also provided. A search of investigative resources revealed that Terry Arnold (previously Terry Price) is Christian Campbell's mother.

The address of ▮▮▮▮▮▮▮▮ was determined to be in the City of Orlando jurisdiction and the case was re-entered back into the Internet Crimes Against Children Data System (IDS) and reassigned to the Orlando Police Department.

On July 16, 2019, I, Detective J. Wing (19104) was assigned the case for further investigation. I reviewed the chats logs, case file, subpoenas and subscriber information uploaded to the Cybertip.

During August 2020, The Orlando Utilities Commission (OUC) confirmed the service at this target address to be in the name of Laurie A. Portella, DOB: 09/27/78, with service that began on 4/14/2014. An authorized person on the account is Christian Campbell and is listed as her spouse. The phone number associated with the account is 321-297-8799. This is the same phone number listed for Laurie Campbell with Charter and AT&T. A search of investigative resources revealed that Laurie Portella is the maiden name of Laurie Campbell.

Through investigative research, the phone numbers associated with the IP addresses subpoena results are believed to belong to Laurie Campbell and Christian Campbell. This information is reflected in Accurint. Further research into occupants of the home revealed three (3) adults ▮▮▮▮▮▮▮▮. Below is a list of all potential occupants:

1. Christian Clay Campbell, W/M, DOB: 08/17/1975, FLDL: C514-103-75-297-0, SSN: ▮▮▮▮▮
2. Laurie Anne Campbell, W/F, DOB: 09/27/1978, FLDL: C514-521-78-847-0, SSN: ▮▮▮▮▮
3. Robert John Hingston, W/M, DOB: 11/01/1985, FLDL: H523-770-85-401-0, SSN: ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮nce of the target address showed two (2) vehicles: a 2003 Green Honda Element, bearing Florida tag ▮▮▮▮ According to the Driver and Vehicle Information Database (DAVID), the vehicle is registered to Laurie Anne Campbell. The second vehicle is a 2015 Silver Jeep Wrangler, bearing Florida tag ▮▮▮▮ According to the Driver and Vehicle Information Database (DAVID), the vehicle is registered to Christian Clay Campbell and Laurie Anne Campbell. Both vehicles are registered to the target address.

Per the Orange County Property Appraisers website, the address of ▮▮▮▮▮▮▮▮ is owned by Christian Campbell.

A search of social media also revealed multiple pictures with Laurie Campbell, Christian Campbell ▮▮▮▮
▮▮▮▮▮▮▮▮. Other videos/pictures on social media included ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮ The chat conversations on Kik discuss having sexual intercourse with the ▮▮▮▮▮▮▮. It is believed that the chat conversations are referring to the sexual exploitation ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Surveillance of the target residence will continue until the search warrant is executed.

OPD Case Number: 2020-221714

Your affiant is familiar that computer systems can be used as an instrument in a criminal act or the fruit of a crime. Computer systems can store information in internal or peripheral storage devices, including but not limited to fixed disks, external hard disks, floppy diskettes, tape drives, optical storage devices, and numerous other data storage devices.

Also, based on your affiant's training and experience, and personal use of computer systems, your affiant knows that users of computer systems often save information or create files to storage devices/media. This data is often present on the disk even after the file is deleted. Data may also be converted to other file formats to conceal it through encryption or password protection.

Your affiant requests the authorization to seize, for later analysis, any electronic data processing and/or storage devices, computers and computer systems which also includes central processing units, random access memory (RAM), internal and peripheral storage devices such as fixed discs, internal/external hard drives, removable disks such as Blu-ray, DVD and CD, Flash memory cards or drives, USB drives, smart media cards, micro drives, SD cards, and any other diskettes, tape drives and tapes, optical storage devices, or other storage devices, peripheral input/output devices such as keyboards, printers, video display monitors, optical readers, scanners and related communications devices such as modems, network adapters, hubs, routers, switches; any computer system, GPS devices, magnetic card readers, digital cameras, cellular telephones, and components, which also includes electronic processing units, internal storage devices, Subscriber Identity Modules (SIM cards), and other devices such as Flash memory cards, or other electronic system; together with system documentation, any passwords, passcodes, Personal Identification Numbers (PIN), Personal Unlock Key (PUK) codes, encryption keys, operating logs and documentation, appropriate cables and connecters, and software instruction manuals, programs, data, or files containing all of the above records, whether stored on paper, on magnetic media such as hard disk drive, tape, cassette, cartridge, disk, diskette or on memory storage devices or media such as optical disks, programmable instruments such as telephones, answering machines, "electronic address books", portable data assistants, laptop computer systems, desktop computer systems, calculators, or any other storage media where data can be stored, together with indicia of use, ownership, possession, or control of such records. Other property of relevance to this incident includes video cameras (digital, analog or any other format), still photo cameras (digital, analog, or any other format), paper printouts from the printers (e-mails, chat logs, written passwords/login names), and Internet access documents. The actual analysis of any seized digital evidence will be conducted at a later time due to the protracted time necessary for a computer forensics investigation.

Your Affiant or his designee will take custody of the computer system, computer media, and/or the articles needed for analysis after all exhibits are properly logged. The exhibits will be physically examined, documented, the storage devices forensically imaged or copied (if necessary), and later examined for evidence of these crimes. The results of the examination will be presented by your affiant or designee and later forwarded to the Office of the State Attorney. The RETURN portion of this warrant will reflect the actual seizure of articles. The forensic examination will exceed ten days or more based on the high volume of data to be processed and examined, but all results will be submitted as evidence at a later date.

When records or evidence are stored on magnetic media such as tape, diskette, hard drive, etc., it is common to find that specific records authorized to be seized are inextricably mixed and inseparable from other records, programs, or files (similar to a bound-volume book containing financial records, addresses, a diary, and notes, for example). Current technology also allows the storage of sounds, images and video "movies" as digital files on a diskette or chip in a recording device, as well as on different formats of magnetic tape. The storage medium containing records or evidence relating to the crime under investigation will be seized for analysis, but only those items authorized to be seized by the warrant will be printed out, disclosed, stored on an

evidence disk, or otherwise copied for evidence purposes. Any other innocuous data or items that can be separated out from such evidence will be returned upon completion of the forensic analysis.

**WHEREFORE**, Affiant makes this affidavit and prays the issuance of a Search Warrant in due form of law for the search of the above described premises for the said property heretofore described, and for the seizure and safe keeping thereof, subject to the Order of a Court having jurisdiction thereof, by the duly constituted officers of the law. Your Affiant also requests the use of a drone to assist officers during the pre-execution surveillance and execution of the warrant.

Detective Jennifer Wing #19104   /s

_____
**AFFIANT**

**SWORN TO AND SUBSCRIBED** before me in the County and State aforesaid this 04 day of August, 2020.

Sergeant Steven Farris #10688      /s

_____
**Supervisor**

IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT IN AND
FOR ORANGE COUNTY, FLORIDA

**STATE OF FLORIDA**  
**COUNTY OF ORANGE**

OPD Case #: 2020-221714

Clerk's Case #:_____

## SEARCH WARRANT

TO: **JOHN W. MINA, SHERIFF OF THE COUNTY OF ORANGE, STATE OF FLORIDA, AND ANY OF HIS DEPUTIES OR AGENTS THEREOF, AND ORLANDO ROLÓN, CHIEF OF THE ORLANDO POLICE DEPARTMENT AND ANY OF HIS LAW ENFORCEMENT OFFICERS OR AGENTS THEREOF, AND TO ANY LAW ENFORCEMENT OFFICER, STATE OR FEDERAL**

**WHEREAS**, complaint on oath and in writing supported by affidavit, having been made this day before the undersigned;

**WHEREAS**, said facts made known to me have caused me to certify and find that there is probable cause to believe that certain evidence, to wit:

Electronic Evidence:

Device and owner information, contact lists, call history, photographic images stored as single photographs or video formats, text and chat messages including message content, email with content, notes, calendar data, any and all other user generated data including but not limited to Internet history, bookmarks and WebPages visited, GPS data, mapping information, spreadsheet, database or text based information, any electronic data processing and/or storage devices, computers and computer systems which also includes central processing units, random access memory (RAM), internal and peripheral storage devices such as fixed discs, internal/external hard drives, removable disks such as Blu-ray, DVD and CD, floppy diskettes, Flash memory cards or drives, USB drives, smart media cards, micro drives, SD cards, and any other diskettes, tape drives and tapes, optical storage devices, or other storage devices, peripheral input/output devices such as keyboards, printers, video display monitors, optical readers, scanners and related communications devices such as modems, network adapters, hubs, routers, switches; any computer system, GPS devices, magnetic card readers, digital cameras, cellular telephones, and components, which also includes electronic processing units, internal storage devices, Subscriber Identity Modules (SIM cards), and other devices such as Flash memory cards, or other electronic system; together with system documentation, any passwords, passcodes, Personal Identification Numbers (PIN), PIN Unblocking Key (PUK) codes, encryption keys, operating logs and documentation, appropriate cables and connecters, and software instruction manuals, programs, data, or files containing all of the above records, whether stored on paper, on magnetic media such as hard disk drive, tape, cassette, cartridge, disk, diskette, flash media or on memory storage devices or media such as optical disks, programmable instruments such as telephones, answering machines, "electronic address books", portable data assistants, tablets, laptop computer systems, desktop computer systems, calculators, or any other storage media where data can be stored, together with indicia of use, ownership, possession, or control of such records, which is evidence of a felony violation of the laws of Florida, or which is contraband per se and evidence of a violation of the laws of Florida, to wit:

Florida State Statute(s):    847.0135(3)(b)
Obscene Communication- Misrep Age Use Computer Solicit Lure
Seduce

827.071(5), Poss. Mat. Depicting Sexual Perf. by a Child

which is being kept in and on certain premises and the curtilage thereof in Orange County, Florida. These premises are described as follows:

██████████████████████████████ (target premises). The target premises is a one-story building, single family home, white in color with white trim.

Directions to the target premise:

Start out going west on W South St toward S Orange Blossom Trl/US-17 S/US-17 N/US-92 E/US-92 W/US-441 S/US-441 N. Take the 1st right (northbound) onto S Orange Blossom Trl/US-17 N/US-92 E/US-441 N. Turn right (eastbound) onto W Colonial Dr/US-17 N/US-92 E/FL-50. Turn left (northbound) onto N Garland Ave. Merge onto Interstate 4 eastbound (I-4 E) via the ramp on the left toward Daytona Beach. ██████████████████████

██████████████████████

This being the premises occupied by and under the control of **Christian Clay Campbell and Laurie Ann Campbell**.

**AND WHEREAS**, the facts establishing the grounds for this application being set forth in the affidavit of **Detective Jennifer Wing (19104)**, a member of the Orlando Police Department

**NOW, THEREFORE**, you or either of you, with such lawful assistance as may be necessary, are hereby commanded, in the daytime, nighttime or on Sunday as the exigencies of the situation may require, to enter and search the aforesaid premises together with the yard and curtilage thereof, and any and all outbuildings and vehicles thereon, and any persons thereon reasonably believed to be connected with the said illegal activity, by any lawful means, including the use of a drone, for the property described in this warrant, and if the same or any part thereof be found, you are hereby authorized to seize and secure same, giving proper receipt therefor and delivering a completed copy of this warrant to the person in charge of the premises, or in the absence of any such person, leaving a completed copy where the property is found, and making a return of your doings under this warrant within ten (10) days of the date hereof, and you are further directed to bring said property so found and also the bodies of the person or persons in possession thereof before the Court having jurisdiction of this offense to be disposed of according to the law.

OPD Case Number: 2020-221714

The court further authorizes such examination and analysis of any electronic data processing and/or storage devices. The court specifically authorizes this examination and analysis to occur beyond the ten days for the return, and authorizes the analysis and examination to be conducted within such time frame as is reasonably necessary under the circumstances. The seizing agent(s) shall file a return within 10 days, setting forth all property seized under this warrant. The seizing agent(s) shall file supplemental return(s) describing the nature of electronic data seized pursuant to analysis.

WITNESS my hand and seal this 04 day of August, 2020.

_____
Judge

_____
Judge's Name

OPD Case Number: 2020-221714

**INVENTORY AND RECEIPT**

**DATED** this _____ day of _____, 20___.

_____
**OFFICER**

**RETURN**

**STATE OF FLORIDA**
**COUNTY OF ORANGE**

       Received this Search Warrant on the _____ day of _____, 20___, and executed the same in Orange County, Florida, on the _____ day of _____, 20___, by searching the premises described therein and by taking into custody the property described in the above Inventory and Receipt and by having read and delivered a copy of this Search Warrant and Inventory and Receipt to _____.

_____
**OFFICER**

      I, _____, the officer by whom the Warrant was executed, do swear that the above Inventory and Receipt contains a true and detailed account of all of the property taken by me on said Warrant.

_____
**OFFICER**

SWORN TO and SUBSCRIBED before me
this _____ day of _____, 20_____

_____
(Notary Public) (Deputy Court Clerk) (Law Enforcement Officer)

☐   Affiant personally known; or

☐   provided ID: _____

# Exhibit
## "C"

# KIK's GUIDE FOR LAW ENFORCEMENT

Thanks for checking out our law enforcement guide. We take the safety of our users very seriously, and we hope this guide will be a useful tool for you. It includes information about our app; the features and functions we offer to help keep our users safe; and how we can work with you if you're investigating a case that involves a Kik user.

If you have questions that aren't answered in our guide, you can reach us at lawenforcement@kik.com.



KIK's GUIDE FOR LAW ENFORCEMENT

## Table of Contents

What is Kik? ........................................................................................................................ **3**

Age Rating ......................................................................................................................... **3**

Kik's philosophy/approach ................................................................................................ **3**

Safety features on Kik ....................................................................................................... **3**
    Kik usernames ...........................................................................................................3
    Blocking users ............................................................................................................4
    Blocking in groups .....................................................................................................4
    New People .................................................................................................................4

Kik username ..................................................................................................................... **4**
    Locating a Kik username .............................................................................................4

Submitting an Order to Kik ................................................................................................ **5**
    Data that may be available pursuant to a valid Order: ..............................................6

Emergency Disclosure Requests ........................................................................................ **7**
    Submitting an Emergency Disclosure Request: .........................................................7

Preservation Requests ....................................................................................................... **7**
    Submitting a Preservation Request: ...........................................................................7

Reporting to Police ............................................................................................................ **8**

Impersonation reports ...................................................................................................... **8**

Charges and Convictions ................................................................................................... **8**

Contacting the Kik Law Enforcement Operations team .................................................... **8**




KIK's GUIDE FOR LAW ENFORCEMENT

## What is Kik?

Kik is a smartphone messenger application that lets users connect with their friends and the world around them through chat. Users can send text, pictures, videos and more – all with the app.

Kik is available for download through the iOS App Store and the Google Play store on most iOS (iPhone, iPod, iPad), Android (including Kindle Fire) and Windows 7 devices. Users may also be using Kik on their Symbian-based or BlackBerry 4.6-7 phone, however, as of May, 2014, it's no longer possible to download or register new accounts on these devices.

Kik is free to download and uses an existing Wi-Fi connection or data plan to send and receive messages.

## Age Rating

Kik is rated 12+ in the iTunes Store and Teen in the Google Play store, and a user must enter their birthdate and be 13 years of age or older in order to register a Kik account.

Children under the age of 13 are prohibited from having a Kik account, by the Kik Terms of Service. If Kik obtains knowledge that a user is under the age of 13, it's our policy to permanently deactivate their account and delete their personal information, unless otherwise notified by law enforcement.

## Kik's philosophy/approach

We believe that Kik users need to feel safe and respected when they use our services, and we need to be good corporate citizens in providing our service. To be sure of this, we will follow three principles:
- We will comply with applicable law;
- We will protect our users' privacy; and
- We will promote user safety on Kik.

Kik Interactive is located in Ontario, Canada, and as such is governed by Canadian law.

## Safety features on Kik

**Kik usernames**
Unlike many other smartphone instant messengers, which are based on a users' phone number, we use usernames to identify our users. By using usernames instead of phone numbers as the unique identifier on Kik, users' personal information like cell phone numbers and email addresses are never shared by Kik.
- If a Kik user is an active user of other social apps and sites, they might choose to share their username on those sites to connect with their followers from there. Posting their Kik username somewhere like Twitter or Instagram, or on a Kik optimized webpage, will make it publicly available. This means that people they don't know may be able to send messages to them.




KIK's GUIDE FOR LAW ENFORCEMENT

## Blocking users

The "Block" feature allows our users to block all contact with another user, without revealing to the other user that they've been blocked. Blocking someone means that messages from the blocked user will be hidden, and all conversations with this person will be deleted from the blocker's Kik app. The blocked user's username will no longer appear in the blocker's list of contacts in Kik.

## Blocking in groups

If someone a user has blocked adds them to a group, or is in a group with them, messages from them will appear as ***Blocked Message***.

## New People

The 'New People' feature gives users full control over who they talk to. With the latest version of Kik, this safety feature puts messages from new people into a separate section called 'New Chats'. In messages from new people, the profile pictures are blurred along with pictures or content messages they may have sent. A user has the option to either start a chat with them or to delete, block, or report as spam.

## Kik username

Kik Username
- 100% unique
- Can never be replicated
- Can never be changed
- May include lower and upper case letters, numbers and/or periods and underscores.
- Will never contain spaces, emoticons or special characters

A Kik username is the only unique identifier in our system, and the only way we can identify a unique Kik account. Information like a phone number, first and last name (display name), or an email address will not allow us to identify a user in our system. We must be provided with the exact Kik username to do any type of search in our system.

## Locating a Kik username

'My Profile'
Open the Kik app on the user's device, the main conversation screen will appear > tap     the cogwheel

*Example screenshot to the right:*
*Display Name: Leo Test*
*Username: leo*




-4-



**KIK's GUIDE FOR LAW ENFORCEMENT**

---

<u>'Friend's Profile'</u>
Open the Kik app on the user's device, the main screen will appear > tap the chat conversation > tap the double circle icon in top right corner

*Example screenshot to the right:*
*Display Name: Emily S*
*Username: jessica.lauren.d*



<u>'Block List'</u>
Open the Kik app on the user's device, the main screen will appear > tap 'chat   settings' > tap 'Block List'

*Example screenshot to the right:*
*Display Name: Emily S*
*Username: jessica.lauren.d*



## Submitting an Order to Kik

Kik Interactive, Inc. is located in Ontario, Canada, so we're governed by Canadian law. That means we'll need a valid Order (i.e., a subpoena or warrant issued or an order made by a court, person or body with jurisdiction to compel the production of information) before we're able to consider releasing user data.

**Preparing your Order:**
All Orders must include the following:
- Addressed to 'Kik Interactive, Inc.'
- Contain a valid Kik username(s). *Please see page 4-5 for details on locating the username*
- Contain a specific list of user data that you're requesting

---



KIK's GUIDE FOR LAW ENFORCEMENT

- Signed and dated
- The way in which the disclosed data should be delivered to law enforcement
- Orders can be emailed to lawenforcement@kik.com using the subject line "LAW ENFORCEMENT ORDER"

We disclose account records in accordance with our terms of service and applicable law. That means that we must receive an Order to allow us to consider disclosing basic subscriber data, content, and/or historical data.

Agencies outside of Canada may need to submit a Mutual Legal Assistance Treaty (MLAT) request through the proper legal authorities in order to obtain any user data from us.

Requests for information should be specific in nature. Overly broad requests will cause significant delays in responding, and in some cases may mean we are not able to respond to your request.

**Data that may be available pursuant to a valid Order:**
Subscriber data, *this information isn't verified by Kik, meaning we don't have any way to know if it's accurate.*

- Basic subscriber information provided by the user, such as first and last name and email address
- Link to the most current profile picture
- Device related information
- Account creation date and Kik version
- Birthdate (new registrations after November 2014)
- User location information, including most recent IP address (after November 2013)

Content and/or Historical User Data:

- Photographs and/or videos sent or received by the Kik user, depending on the version of Kik that the user is using. Photographs and videos are not accessible to our Law Enforcement Operations team, and are automatically deleted within a short period after they are sent
- Historical IP addresses used by the Kik user. *Please note that these IP addresses are provided by a third party, not by us*
- Transactional chat log timestamps, these are similar to call detail records available from wireless carriers and will never include the text of the conversation or the phone numbers of the individuals involved
- Roster log is a record showing who the user has added and/or blocked

NOTE: We don't have access to the text of Kik conversations.  For some versions of Kik, conversations are ONLY stored on the phones of the Kik users involved in the conversation. For other versions of Kik (which allows users to access their message history after logging out and then back in to their Kik account), the text of recent conversations is temporarily stored by us in a format that we can't read.

**PLEASE NOTE: We reserve the right pursuant to applicable law to refuse to provide information.**



KIK's GUIDE FOR LAW ENFORCEMENT

## Emergency Disclosure Requests

For emergency cases involving the imminent threat of death or serious physical injury to any person, we have established an Emergency Disclosure Request process to allow the release of limited basic subscriber data.

**Submitting an Emergency Disclosure Request:**
Our Emergency Disclosure Request form, (along with instructions for completing and submitting the form correctly) can be downloaded from our Resource Center at http://kik.com/lawenforcement. To ensure quick processing of your Emergency Disclosure Request, please submit the request to lawenforcement@kik.com using the email subject line "EMERGENCY DISCLOSURE REQUEST".

Once we receive your completed form, we'll review and acknowledge receipt of your Emergency Disclosure Request. If the investigation meets our emergency criteria, we'll provide the investigating officer with a Glossary of Terms along with the data response if there's data available.

> TIP: If you don't use **EMERGENCY DISCLOSURE REQUEST** in the subject line of your email, our Law Enforcement Operations team won't be notified of your request, and won't be able to respond to your request on an expedited basis.

**PLEASE NOTE: We always recommend that Kik users who are aware of an emergency situation immediately contact their local law enforcement agency for help.**

## Preservation Requests

We understand that obtaining a judicial order occasionally takes time. If an Order isn't yet available, we may voluntarily preserve information once we receive a formal preservation request from a law enforcement agency. We accept preservation requests from any law enforcement agency globally.

**Submitting a Preservation Request:**
Our Preservation Request form (along with instructions for completing and submitting the form correctly) can be downloaded from our website at http://kik.com/lawenforcement.

Completed Preservation Request forms can be emailed to the Law Enforcement Operations team at lawenforcement@kik.com. Please include the words "Preservation Request" in the subject line. Once we receive your completed form, Kik will review and acknowledge receipt of the preservation request.

We'll preserve all data pursuant to a Preservation Request for a period of 90 days. Should you need us to preserve data for an additional 90 days, please submit a preservation extension request approximately one week before your original request expires. Please complete a new Preservation Request form and check off the 'extension box'. If the preservation request expires, we can't confirm that data still exists in our system.



KIK's GUIDE FOR LAW ENFORCEMENT

If we receive a preservation request with an invalid username, or a request that doesn't include a Kik username, unfortunately we won't be able to preserve any information. In that situation, we'll let you know, and will request an updated preservation request form with the correct information. Please see pages 4-5 for details on locating a Kik username.

## Reporting to Police

If we have reasonable grounds to believe that Kik has been used to commit a child pornography offence, we'll file a report with our local law enforcement agency.

## Impersonation reports

Kik users are encouraged to contact our Kik Support team if they feel they are being impersonated on Kik. The Support team will investigate the report, and take action as appropriate. They may remove the profile picture from an account, and/or deactivate the impersonating account. In the event that the Kik Support team isn't able to investigate or make a determination about an impersonation report, they may recommend that the user contact law enforcement for additional help. The Kik Support team can be reached at support@kik.com.

**PLEASE NOTE: Law enforcement can email the Trust & Safety team if they'd like an account permanently deactivated.**

## Charges and Convictions

Please let us know as soon as possible if the individual associated with the Kik username identified in your request is convicted of an offence that involves unlawful or inappropriate use of our products or services. By notifying us, we'll be in a position to take appropriate steps under our Terms of Service. In most (if not all), cases, we will remove the individual's account from our platform.

We also invite you to let us know if the individual is charged with an offence that involves unlawful or inappropriate use of our products or services. Upon receiving this information we'll be in a position to undertake an internal review of the individual's use of Kik and determine if removing the individual's account from our platform is warranted prior to the prosecution proceeding to court.

## Contacting the Kik Trust & Safety Team

Our team is small, and we do everything we can to ensure that we respond quickly to urgent inquiries from law enforcement. To help us do so, please direct all inbound inquiries and/or orders to the Trust & Safety team at lawenforcement@kik.com. Our system will only allow emails submitted from government agency email addresses. All non-agency email addresses are blocked.

- Our mailing address is 420 Weber St North, Suite I, Waterloo ON N2L 4E7 CANADA
- We are unable to accept inquiries by fax



KIK's GUIDE FOR LAW ENFORCEMENT

TIP: Be sure to ask your IT team to "allow" emails from our lawenforcement@kik.com email address, so our replies aren't filtered as spam.

# Exhibit
# "D"

Orlando PD Case #: 2020-221714

## Search Warrant Inventory and Return

Page ___ of ___

| Location | Found By | Item(s) |
|---|---|---|
| 1- on desk | Maria Angeli | Mac Desktop |
| 1- kitchen | Luke | Black tablet |
| 3- sink wall | Ferris | Purple cell phone - missing |
| 4- bedroom | Crater | Tablet - Black case |
| 4- bedroom | Crater | Tablet - pink case |
| 1- on bed | Merra | iPad - Phone pink case |
| | Phone | |
| | Manello | Apple laptop |
| bed left | Merra | iPad - black case |
| back left | Merra | iPad - Kate spade case |
| | Hardyard | hard drive |
| | Hardyard | Apple laptop |
| | Hardyard | Air Jet Apple |
| | Tyler | keyboard Apple |
| Desk | Tyler | mouse Apple |
| bedroom | Ning | Dell laptop |
| | | |
| | | |
| | | |
| | | |

Received this Search Warrant on the __4__ day of __August__, __2020__, and executed the same in Orange County, Florida, on the __6__ day of __August__, __2020__, by searching the premises described therein and by taking into custody the property described in the above inventory and by having read and delivered a copy of this Search Warrant and Inventory to __Christian Cardell__.

I, the undersigned officer by whom the warrant was executed, do swear that the above inventory contains a true and detailed account of all property taken by me on said Warrant.

_____   1807
(Officer making return)          (Witness)

**STATE OF FLORIDA**
**COUNTY OF ORANGE**

Sworn to and subscribed before me, the undersigned Authority, this __6__ day of __August__, __2020__
☐ Notary Public        ☐ Law Enforcement Officer, Emp # 12559

OPD Form #421 Rev. 11/09/10     Original - Clerk of the Court     Yellow – Investigator     Pink - Property Custodian

# Exhibit "E"

**ORLANDO**
POLICE DEPARTMENT

**RELEASE**

In consideration of the City of Orlando, Orlando Police Department, returning to me, **LAURIE ANN CAMPBELL, a SIG SAUER pistol S#52B337045,** from Orlando Police Case **2020-221714** held in the Orlando Police Department's Property and Evidence Unit, I do hereby swear or affirm that I, the above-named person, am the owner of said weapon. I, the above-named person, hereby indemnify and save harmless the City of Orlando, Orlando Police Department, its employees and agents from and against all risk of personal injury or death and property damage or loss from whatever causes arising from the release of this weapon. I, as the owner of the above-described weapon, will keep said weapon secure from others.

Dated this _____ day of _____, 2021 at Orlando, Florida.

_____
Signature                         Date

_____
Name

_____
Street Address

_____
City and State

(_____)_____
Telephone Number

ORLANDO POLICE DEPARTMENT
PROPERTY & EVIDENCE UNIT
P O BOX 913
ORLANDO, FLORIDA 32802-0913
PHONE 407-246-2445 • FAX 407-246-2594

# Exhibit
# "F"



**Chelsea Thomas** • College Park

So I've heard on what I consider to be good authority that it was related to "sex crimes/child porn." Not to cause a panic—I know it's a super sensitive topic. However, if this is the case, I know it's something i would want to be made aware of.

Again, I have no firsthand knowledge. Just someone else's account. I do not know the person whose house was raided. But if this is true, its certainly not what came to mind when I heard "white collar."

Not wanting to spread falsities—in fact, I'd appreciate more details from someone who may know.

Edited 2 days ago        **Thank**        **Reply**                 3

 **Jeannie Clarke** • College Park

Maybe the person who told you should tell us.

1 day ago        **Thank**        **Reply**

 **Chelsea Thomas** • College Park

Jeannie Clarke I do not believe they have next door and I don't really feel comfor attaching their name to it, considering. But yes, I hope someone does know that sees this